# EXHIBIT 1

DocuSign Envelope ID: 4A838171-A7DF-4ED3-A690-5A56BA591856

EXECUTION COPY                                                 VCI-Change 2305-B

MORTGAGE SERVICING RIGHTS PURCHASE AND SALE AGREEMENT

(GOVERNMENT MORTGAGE LOANS)


Dated as of

June 29, 2023


By and between,

VILLAGE CAPITAL & INVESTMENT LLC,

as the Purchaser

and

CHANGE LENDING, LLC DBA CHANGE HOME MORTGAGE,

as the Seller

<u>MORTGAGE SERVICING RIGHTS PURCHASE AND SALE AGREEMENT</u>

This MORTGAGE SERVICING RIGHTS PURCHASE AND SALE AGREEMENT, is entered into and effective on and as of June 29, 2023 (the "<u>Effective Date</u>"), by and between VILLAGE CAPITAL & INVESTMENT LLC, a limited liability company organized pursuant to the laws of the State of Delaware (together with its successors and permitted assigns collectively, the "<u>Purchaser</u>"), and CHANGE LENDING, LLC DBA CHANGE HOME MORTGAGE, a limited liability company organized pursuant to the laws of the State of California (together with its successors and permitted assigns collectively, the "<u>Seller</u>").

WHEREAS, the Purchaser desires to purchase from the Seller on the terms and subject to the conditions set forth herein, and the Seller desires to sell to the Purchaser on the terms and subject to the conditions set forth herein, all right, title, and interest of the Seller in, to, and under the Servicing Assets related to each Mortgage Loan identified in the Mortgage Loan Schedule.

NOW, THEREFORE, in consideration of the mutual premises and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller (each, a "<u>Party</u>" and collectively, the "<u>Parties</u>") agree as follows:

SECTION 1.    <u>DEFINITIONS; GENERAL INTERPRETIVE PRINCIPLES</u>.

Subsection 1.01.        <u>Definitions</u>.

Each capitalized term used but not defined elsewhere in this Agreement shall have the meaning ascribed thereto in this Subsection 1.01.

"<u>Accepted Servicing Practices</u>": With respect to any Mortgage Loan or the related Servicing Assets, the Servicing practices and procedures that (a) comply with all Applicable Laws to which the Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, (b) conform with applicable Agency Requirements and MERS Requirements to which the Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, and (c) are consistent with the practices and procedures customarily followed by prudent mortgage lenders which regularly service residential mortgage loans of the same type as the Mortgage Loan in the ordinary course of business in the same jurisdiction where the Mortgaged Property is located.

"<u>Action</u>": Any formal or informal arbitration, examination, inquest, investigation, lawsuit, litigation, mediation, or other administrative, judicial, non-judicial, or quasi-judicial proceeding.

"<u>Affiliate</u>": With respect to any specified Person, any other Person that directly or indirectly Controls, is Controlled by, or is under common Control with the specified Person. For all purposes hereof, the term "<u>Control</u>" and each variant thereof shall mean the direct or indirect possession by any Person of the power to direct or cause the direction of the management or policies of any other Person, whether by contract, the ownership of voting securities, or otherwise.

"<u>Agency</u>": Each of (a) the Consumer Financial Protection Bureau ("<u>CFPB</u>"), (b) the Federal Housing Administration ("<u>FHA</u>"), a division of HUD, (c) the Government National Mortgage Association ("<u>GNMA</u>"), also known as Ginnie Mae, (d) Rural Development ("<u>RD</u>") and the Rural Housing Service ("<u>RHS</u>"), each a mission of USDA, (e) the United States Department of Housing and Urban Development ("<u>HUD</u>"), (f) the United States Department of Agriculture ("<u>USDA</u>"), (g) the United States Department of Veterans Affairs ("<u>VA</u>"), and (h) any Regulatory Authority. For purposes hereof, the phrase "applicable Agency" shall mean, (a) with respect to any Mortgage Loan or the related Servicing Assets, GNMA and

each Regulatory Authority, (b) with respect to any FHA Mortgage Loan or the related Servicing Assets, FHA and HUD, (c) with respect to any USDA Mortgage Loan or the related Servicing Assets, USDA, RD, and RHS, and (d) with respect to any VA Mortgage Loan or the related Servicing Assets, VA.

"Agency Delivery File": With respect to any Mortgage Loan, (a) a complete GinnieNET Single Family Import File with Pool Record Layouts M01, M02, M03, M04, M05, M06, M07, M08, M09, M10, M11, P01, P02, P03, P04, P05, P06, (b) a HUD Form 11705 and HUD Form 11706 for every Mortgage Pool, and (c) a Lender's Notice of Value ("NOV") for every VA Mortgage Loan. The format, contents, and delivery method of the Agency Delivery File shall be satisfactory to the Purchaser in its sole discretion.

"Agency Requirement": With respect to any Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in any CFPB Requirement, FHA Requirement, GNMA Requirement, HUD Requirement, USDA Requirement, VA Requirement, or other Regulatory Requirement to which such Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject.

"Agreement": This Mortgage Servicing Rights Purchase and Sale Agreement, together with (a) each attachment, exhibit, schedule, and supplement hereto, (b) each agreement, certificate, instrument, and other document executed in connection herewith, and (c) each amendment, extension, modification, novation, and restatement hereof.

"Ancillary Income": With respect to any Mortgage Loan, (a) all charges and fees (other than Servicing Fees) attributable to or derived from the Servicing of such Mortgage Loan, including all assumption fees, autopay fees, convenience fees, foreclosure fees, incentive fees, insurance fees, late fees, loss mitigation fees, modification fees, reconveyance fees, reinstatement fees, release fees, returned check fees, subordination fees, workout fees, and similar incidental charges and fees, and (b) all interest paid by the depository institution on Mortgage Loan Proceeds held in the Custodial Account, except to the extent of any amount required to be released to the Mortgagor pursuant to Applicable Law.

"Applicable Law": With respect to any Person or thing, each Law to which such Person (or its property) or thing is or, at any relevant time, was subject, including all Regulatory Requirements.

"Applicable Requirement": With respect to any Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) any Agency Requirement, Applicable Law, or MERS Requirement to which the Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, (b) the Mortgage Loan Documents or any other agreement, arrangement, or contract by any Covered Person and to which the Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, and (c) the terms of this Agreement or any other Purchaser Requirement to which the Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject.

"Business Day": Any day other than (a) a Saturday or a Sunday, or (b) a day on which branches of the Federal Reserve System or banks located in Nevada or New York are permitted or required to be closed. If the deadline for any Party to remit any payment or to perform any action pursuant hereto occurs on a day that is not a Business Day, then such deadline shall be deemed extended until the next succeeding Business Day.

"Calculation Date": June 27, 2023, or any other Business Day and time that is mutually agreed upon by both Parties in writing.

"CFPB Requirement": With respect to any Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) any Order, settlement, stipulation, or other agreement by or between any Covered Person and CFPB and to which such Mortgage Loan or the related Servicing

Assets is or, at any relevant time, was subject, or (b) any announcement, bulletin, circular, directive, guide, handbook, instruction, mandate, manual, notice, Order, policy, regulation, rule, or similar material issued by CFPB, and to which such Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the CFPB Mortgage Servicing Final Rules, as they may be amended from time to time.

"<u>Claim</u>": Any claim, counter-claim, cross-claim, defense, demand, dispute, or other grievance arising at law or in equity, whether by contract, in tort, or otherwise.

"<u>Collateral File</u>": With respect to any Mortgage Loan, the physical compilation of all related Mortgage Loan Documents, which in all cases shall include a wet-ink original or, only to the extent permitted by applicable GNMA Requirements under the circumstances, a certified copy (or, only to the extent permitted by applicable GNMA Requirements under the circumstances, a non-certified copy), of (a) the related Mortgage Note, and each subsequent indorsement thereof as necessary to evidence (i) a complete and unbroken chain of valid indorsements of such Mortgage Note from the original payee to the Seller, and (ii) an indorsement "in blank" by the Seller, (b) the related Mortgage Instrument with evidence of recording thereon, and each subsequent assignment thereof as necessary to evidence, (i) if such Mortgage Loan is a MERS Mortgage Loan, a complete and unbroken chain of recorded assignments of such Mortgage Instrument from the original mortgagee to MERS, or (ii) if such Mortgage Loan is a Non-MERS Mortgage Loan, a complete and unbroken chain of recorded assignments of such Mortgage Instrument (A) from the original mortgagee to the Seller, and (B) an assignment "in blank" by the Seller, (c) the related Government Guaranty Certificate or Government Insurance Certificate, as applicable, (d) the lender's policy of title insurance relating to such Mortgage Loan, (e) each power of attorney executed by the related Mortgagor or any other Person in connection with the origination or modification of such Mortgage Loan, (f) each assumption, consolidation, extension, guaranty, modification, or similar agreement relating to such Mortgage Loan, and (g) all other documents (i) required to be held by the Document Custodian pursuant to applicable Agency Requirements, or (ii) necessary for the Purchaser (A) to request or receive "Final Certification" or "Recertification," as those terms are defined pursuant to applicable GNMA Requirements, of the related Mortgage Pool in accordance with applicable GNMA Requirements, (B) to claim or receive any Government Backstop proceeds from the applicable Agency in the greatest amount and to the greatest extent permitted by applicable Agency Requirements, (C) to commence or complete any Foreclosure Action or Loss Mitigation activity in accordance with Applicable Requirements, and in the same manner and on the same timeframe as mortgage loans of the same type as the Mortgage Loans, or (D) to perform the Servicing of such Mortgage Loan in accordance with Applicable Requirements.

"<u>Consumer Information</u>": Any communication, document, or information that constitutes, contains, or is derived from (a) any "nonpublic personal information," as that term is defined pursuant to 15 U.S.C. § 6809 or 16 C.F.R. § 313.3, (b) any "consumer information," "customer information," "personal identifier," "personally identifiable financial information," or similarly designated information for purposes of any Privacy Laws, or (c) any other information that can be used, either by itself or together with other information, to distinguish, identify, or trace the identity of any Person.

"<u>Corporate Advance</u>": With respect to any Mortgage Loan, any advancement, expenditure, or other payment of funds (other than Escrow Advances and P&I Advances) by or on behalf of the Servicer in connection with the Servicing of such Mortgage Loan, including for (a) the inspection, management, marketing, maintenance, preservation, protection, restoration, or sale of the related Mortgaged Property, (b) the investigation, prosecution, defense, or appeal of any Foreclosure Action, Insolvency Proceeding, or other Action or Claim relating to such Mortgage Loan, or (c) the payment of any amounts (other than principal or interest) due or payable to the applicable Agency in connection with such Mortgage Loan.

"<u>Covered Person</u>": With respect to any Mortgage Loan, (a) the Seller, its Affiliates, and its and their respective Representatives, (b) the Mortgagor, its Affiliates, and its and their respective

Representatives, and (c) each other Person (other than the Purchaser, its Affiliates, and its or their respective Representatives) that, at any time on or before the Transfer Date, (i) held any right, title, or interest in, to, or under such Mortgage Loan or the related Servicing Assets, whether as a mortgagee, participant, pledgee, servicer, subservicer, or otherwise, (ii) performed any "origination service," "settlement service," "title service" or "servicing" function in connection with the "application," "settlement," "refinancing," or "servicing" of such Mortgage Loan, as those terms are defined pursuant to 12 C.F.R. § 1024.2, or (iii) was (A) a "loan originator" or "servicer" of such Mortgage Loan, as those terms are defined pursuant 12 C.F.R. § 1024.2, or (B) a "depositor," "issuing entity," "servicer," or "sponsor" of such Mortgage Loan or any asset-backed security relating thereto, as those terms are defined pursuant to 17 C.F.R. § 229.1101.

"<u>Custodial Account</u>": With respect to any Mortgage Loan, each depository account designated by the Servicer for the deposit of any Custodial Funds or Escrow Funds related to such Mortgage Loan.

"<u>Custodial Funds</u>": With respect to any Mortgage Loan, all Mortgage Loan Proceeds received by or on behalf of the Servicer in connection with such Mortgage Loan or the related Government Backstop.

"<u>Default</u>": With respect to any Mortgage Loan, any non-monetary breach, default, event of acceleration, or event of default under any related Mortgage Loan Documents.

"<u>Defect</u>": With respect to any Mortgage Loan or the related Servicing Assets, the failure of any representation or warranty made by the Seller in this Agreement to be accurate, complete, correct, or true on and as of any date such representation or warranty was made, including the failure of such Mortgage Loan or the related Servicing Assets to conform with any representation or warranty made by the Seller in this Agreement on or as of any date such representation or warranty was made, in each case without regard to any knowledge or materiality qualification of such representation or warranty.

"<u>Delinquent</u>" or "<u>Delinquency</u>": With respect to any Mortgage Loan, the failure of the Servicer to receive payment in full of any Monthly Payment before close of business on the related Due Date of the Monthly Payment. For purposes of this Agreement, delinquency calculations shall be made in accordance with the methodology used by the Mortgage Bankers Association. Using this methodology, each Due Date shall be deemed to occur on the first (1st) day of the calendar month and a Mortgage Loan shall be considered "30 days or more Delinquent" if the Servicer fails to receive payment in full of any Monthly Payment before close of business on the day immediately preceding the related Due Date of the next succeeding Monthly Payment. Accordingly, and by way of example, if the related Due Date of a Monthly Payment is January 1st, then (a) the Mortgage Loan would be considered "30 days or more Delinquent" in the event the Servicer fails to receive payment in full of the Monthly Payment before close of business on January 31st, (b) the Mortgage Loan would be considered "60 days or more Delinquent" in the event the Servicer fails to receive payment in full of the Monthly Payment before close of business on February 28th, and (c) the Mortgage Loan would be considered "90 days or more Delinquent" in the event the Servicer fails to receive payment in full of the Monthly Payment before close of business on March 31st.

"<u>Delinquent Mortgage Loan</u>": As defined in Exhibit A.

"<u>Document Custodian</u>": Deutsche Bank National Trust Company, in its capacity as document custodian for the Purchaser.

"<u>Document Exception</u>": With respect to any Mortgage Loan, each Mortgage Loan Document or other document that is required to be contained in the related Collateral File or Loan File and that the Purchaser or its designee determines is missing, incomplete, incorrect, or otherwise fails to comply with Applicable Requirements.

"Document Exception Report": As defined in Subsection 3.01(d)(i).

"Due Date": With respect to any Monthly Payment, the scheduled date on which payment in full of the Monthly Payment is due and payable pursuant to the Mortgage Note, exclusive of any cure period or grace period and without regard to any Loss Mitigation.

"Effective Date": As defined in the preamble hereto.

"Eligible Mortgage Loan": Any Mortgage Loan that is not an Excluded Mortgage Loan.

"Eligible Servicing Assets": The Servicing Assets related to any Eligible Mortgage Loan.

"Encumbrance": Any charge, Claim, covenant, easement, encumbrance, lien, option, participation, pledge, restriction, servitude, or other right, title, or interest of any type or kind in, to, under, or upon any specified tangible or intangible real or personal property.

"Escrow Advance": With respect to any Mortgage Loan, any advancement, expenditure, or other payment of funds by or on behalf of the Servicer for the payment of any Escrow Items.

"Escrow Funds": With respect to any Mortgage Loan, all Custodial Funds (including accrued interest thereon) received by or on behalf of the Servicer for the payment of Escrow Items in connection with such Mortgage Loan.

"Escrow Interest": With respect to any Mortgage Loan, the aggregate earned but undisbursed interest on related Escrow Funds deposited in the escrow account as of the Settlement Date, but only to the extent of the amount required to be disbursed to the related Mortgagor pursuant to Applicable Requirements.

"Escrow Items": With respect to any Mortgage Loan, all homeowners' association charges, ground rents, insurance premiums, leasehold payments, municipal assessments, property taxes, sewer rents, water charges, and other amounts, including any penalties and interest incurred as a result of the late payment thereof, (a) that are required to be escrowed by the related Mortgagor pursuant to the Mortgage Loan Documents, or (b) that, if not timely paid, would or reasonably could be expected (i) to result in an Encumbrance upon the Mortgaged Property or a lapse of insurance coverage thereon, or (ii) to have a material adverse effect upon the habitability, marketability, use, or value of the Mortgaged Property.

"Estimated Purchase Price": With respect to any Servicing Assets, the dollar amount equal to (a) the Purchase Price Percentage, multiplied by (b) the unpaid principal balance of the related Mortgage Loan as of the Calculation Date.

"Exception Mortgage Loan": Any Mortgage Loan that, as of the Settlement Date, is of a type specified in Exhibit A hereto but has been (a) approved for purchase by the Purchaser in writing on or before the Settlement Date, and (b) identified by the Seller in the Mortgage Loan Schedule as an "Exception Mortgage Loan."

"Exception Servicing Assets": The Servicing Assets related to any Exception Mortgage Loan.

"Excluded Mortgage Loan": Any Mortgage Loan that, as of the Settlement Date, (a) is not a Government Mortgage Loan, or (b) is of a type specified in Exhibit A hereto; provided however, an Exception Mortgage Loan shall not be deemed an Excluded Mortgage Loan; provided further, that the

determination of whether a Mortgage Loan is a Delinquent Mortgage Loan shall be made as of June 30, 2023.

"Excluded Servicing Assets": The Servicing Assets related to any Excluded Mortgage Loan.

"FEMA": The Federal Emergency Management Agency, including its successors and assigns.

"FHA Mortgage Loan": Any Mortgage Loan that is covered by Government Insurance issued by FHA or HUD.

"FHA Requirement": With respect to any FHA Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) the applicable Servicing Agreement or any other agreement, arrangement, or contract by and between any Covered Person and FHA or HUD, and to which such FHA Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the related Government Insurance Certificate, or (b) any announcement, bulletin, circular, directive, guide, handbook, instruction, mandate, manual, notice, Order, policy, regulation (including those codified in Title 24 of the Code of Federal Regulations), rule, or similar material issued by FHA or HUD, and to which such FHA Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the FHA Single Family housing Policy Handbook and all HUD Requirements, as they may be amended from time to time.

"First Notice Or Filing": Any "first notice or filing" or "foreclosure referral," as those terms are defined pursuant to or interpreted for purposes of 12 C.F.R § 1024.41.

"Flood Determination": With respect to any Mortgage Loan, a fully paid and freely transferrable life-of-loan flood determination that is written on the FEMA Standard Flood Hazard Determination form (FEMA Form 086-0-32) and is issued and certified by Lereta, LLC for the Mortgage Loan and the related Mortgaged Property.

"Foreclosure Action": With respect to any Mortgage Loan, (a) any purchase, sale, or other transfer by or on behalf of the mortgagee or the applicable Agency of any right, title, or interest in, to, or under the related Mortgaged Property, irrespective of whether such purchase, sale, or transfer is accomplished by judicial foreclosure, non-judicial foreclosure, Foreclosure Alternative, or otherwise, (b) any action taken or caused to be taken by or on behalf of the mortgagee or the applicable Agency in connection with the preparation or making of any First Notice Or Filing relating to such Mortgage Loan, or (c) any Action or Claim seeking or relating to any of the foregoing.

"Foreclosure Alternative": With respect to any Mortgage Loan, any foreclosure prevention or home retention option available to the Mortgagor, including any compromise claim, deed-in-lieu of foreclosure, forbearance agreement, loan assumption, loan modification, private sale, reinstatement payment, repayment plan, short sale, or similar foreclosure alternative.

"Funding Schedule": A written schedule in the form appended as Schedule D.3 hereto that is executed by an officer of each Party and that appends the Mortgage Loan Schedule as Schedule D.4 thereto.

"GNMA Requirement": With respect to any Mortgage Loan, the related Servicing Assets, or the related Mortgage Pool, each obligation imposed by or requirement specified in (a) the applicable Servicing Agreement or any other agreement, arrangement, or contract by and between any Covered Person and GNMA, and to which such Mortgage Loan, the related Servicing Assets, or the related Mortgage Pool is or, at any relevant time, was subject, or (b) any announcement, bulletin, circular, directive, guide, handbook, instruction, mandate, manual, notice, Order, policy, regulation (including those codified in Title 24 of the

Code of Federal Regulations), rule, or similar material issued by GNMA, and to which such Mortgage Loan, the related Servicing Assets, or the related Mortgage Pool is or, at any relevant time, was subject, including the Ginnie Mae Mortgage-Backed Securities Guide (the "GNMA MBS Guide"), as it may be amended from time to time.

"Government Backstop": With respect to any Mortgage Loan, any Government Guaranty or Government Insurance that has been issued by the applicable Agency in connection with such Mortgage Loan.

"Government Guaranty": With respect to any Mortgage Loan, any guaranty available from by RD, RHS, USDA, or VA to cover certain losses incurred or sustained by the mortgagee in connection with such Mortgage Loan.

"Government Guaranty Certificate": With respect to any Government Guaranty, the loan guaranty certificate, mortgage guaranty certificate, or similar document or instrument issued by the applicable Agency as evidence of the existence and terms of such Government Guaranty.

"Government Insurance": With respect to any Mortgage Loan, any insurance available from FHA or HUD to cover certain losses incurred or sustained by the mortgagee in connection with such Mortgage Loan.

"Government Insurance Certificate": With respect to any Government Insurance, the loan insurance certificate, mortgage insurance certificate, or similar document or instrument issued by the applicable Agency as evidence of the existence and terms of such Government Insurance.

"Government Mortgage Loan": Any FHA Mortgage Loan, USDA Mortgage Loan, or VA Mortgage Loan.

"Governmental Authority": Any (a) administration, agency, authority, board, bureau, commission, council, court, department, division, office, tribunal, or other instrumentality of the executive, judicial, or legislative branch of the United States or any commonwealth, district, municipality, state, territory, or other political subdivision of any of the foregoing, including each Agency and other Regulatory Authority, (b) "government corporation," as that term is defined pursuant to 31 C.F.R § 9101, (c) "government sponsored enterprise," as that term is defined pursuant to 12 C.F.R. § 1277.1, or (d) quasi-governmental, non-governmental, or self-governing organization empowered to regulate or supervise the Purchaser's or any Covered Person's activities in connection with any Mortgage Loan.

"Holdback Funds": As defined in Subsection 3.01(d).

"HUD Requirement": With respect to any Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) the applicable Servicing Agreement or any other agreement, arrangement, or contract by and between any Covered Person and HUD, and to which such Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, or (b) any announcement, bulletin, circular, directive, guide, handbook, instruction, mandate, manual, notice, Order, policy, regulation (including those codified in Title 24 of the Code of Federal Regulations), rule, or similar material issued by HUD, and to which the Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including any HUD Mortgagee Letter, as it may be amended from time to time.

"In-Flight Modification": With respect to any Mortgage Loan, any loan modification that is committed at any time on or before the Transfer Date and is completed at any time on or after the Calculation Date.

"Indemnified Purchaser Losses": As defined in Subsection 11.03(a).

"Indemnified Seller Losses": As defined in Subsection 11.03(b).

"Insolvency Proceeding": With respect to any Person, any voluntary or involuntary Action commenced by or against such Person (a) pursuant to the United States Bankruptcy Code or other Law affecting the rights of debtors and creditors generally, or (b) relating to (i) the assignment or marshalling of assets for the benefit of such Person's creditors, (ii) the appointment of an administrator, conservator, custodian, liquidator, monitor, receiver, sequestrator, trustee, or similar official with respect to such Person, or (iii) the dissolution, liquidation, reorganization, termination, or winding-up of such Person.

"Insurance Proceeds": With respect to any Mortgage Loan, any proceeds of any policy of flood insurance, hazard insurance, mortgage insurance, pool insurance, title insurance, or other type of insurance relating to such Mortgage Loan or the related Mortgaged Property.

"Insurer": With respect to any Mortgage Loan, any Person that issues (a) any policy of flood insurance, hazard insurance, mortgage insurance, pool insurance, title insurance, or other type of insurance relating to such Mortgage Loan or the related Mortgaged Property, or (b) any fidelity bond, surety bond, letter of credit, or policy of insurance relating to any Covered Person's activities in connection with such Mortgage Loan, or (c) the applicable Agency that issued the related Government Backstop.

"Interim Servicing Fee": As defined in Subsection 7.09(d).

"Interim Servicing Period": With respect to any Mortgage Loan, the period of time that begins at 12:01 a.m. Eastern Time on the Settlement Date and ends at 12:01 a.m. Eastern Time on the Transfer Date.

"Knowledge": With respect to any Person, the "Knowledge" of or receipt of "Notice" by such Person, as each of those terms are defined pursuant to Section 1-202 of the New York Uniform Commercial Code.

"Law": Any code, common law, constitution, Order, ordinance, Permit, pronouncement, regulation, requirement (including all Regulatory Requirements), rule, statute, or treaty issued by any Governmental Authority, including all administrative interpretations, executive orders, and judicial decisions relating to any of the foregoing.

"Limited POA": A written instrument in the form appended as Exhibit E hereto that is executed by an officer of the Seller.

"Loan File": With respect to any Mortgage Loan, the electronic compilation of all documents relating to the application, underwriting, closing, and Servicing of such Mortgage Loan, which in all cases shall include digital images of all documents set forth in Exhibit B hereto.

"Loss" and "Losses": All charges, claims, costs, curtailments, damages, deficiencies, expenses, fees (including attorneys' fees and servicing fees), fines, forfeitures, judgments, liabilities, obligations (including Recourse Obligations), penalties, Uncovered Losses, and other losses (including hedging and pair-off losses) incurred or sustained by any Purchaser Indemnitee.

"Loss Mitigation": With respect to any Mortgage Loan, (a) any charge-off, deferral, extension, forbearance, modification, reamortization, reinstatement, restructuring, variance, waiver, or similar indulgence relating to the Mortgage Loan, including any foreclosure prevention, home retention, or loss

mitigation option available from the Servicer or the applicable Agency, or (b) any Foreclosure Alternative relating to the Mortgage Loan.

"Market Change Event": Any circumstance that, with or without notice or the lapse of time or both, would or reasonably could be expected to result in (a) the interruption or limitation of securities trading or transaction settlement on the New York Stock Exchange or banking activities or clearance services in the United States, (b) the disruption or suspension of services by common carriers, electricity providers, internet providers, telephone providers, or public utilities in any jurisdiction where any Party is located, or (c) any civil commotion or riots, heath epidemic or pandemic, labor dispute or stoppage, natural disaster or act of god, military hostility or war, terrorist act or threat, or similar occurrence, including the declaration by any Governmental Authority of a state of emergency in anticipation of or in response to any of the foregoing.

"Material Adverse Effect": As determined by the Purchaser in its sole but good faith and reasonable discretion, (a) a material adverse effect upon the value of any Mortgage Loan, any Servicing Rights, or the Purchaser's or the applicable Agency's respective interests therein, or (b) any adverse effect upon (i) the business operations, commercial prospects, corporate existence, financial condition, or legal rights of the Purchaser or the Seller, (ii) the validity of this Agreement or its enforceability by the Purchaser or against the Seller, (iii) the ability of the Purchaser or the Seller to perform any of its respective agreements, covenants, duties, obligations, responsibilities, or undertakings required to be performed by it pursuant to this Agreement in accordance with all Applicable Requirements, or (iv) the ability of the Purchaser (A) to request or receive "Final Certification" or "Recertification," as those terms are defined pursuant to applicable GNMA Requirements, of any Mortgage Pool in accordance with applicable GNMA Requirements, (B) to claim or receive any Government Backstop proceeds from the applicable Agency in the greatest amount and to the greatest extent permitted by applicable Agency Requirements, (C) to commence or complete any Foreclosure Action or Loss Mitigation activity in accordance with Applicable Requirements, and in the same manner and on the same timeframe as mortgage loans of the same type as the Mortgage Loans, or (D) to perform the Servicing of any Mortgage Loan in accordance with Applicable Requirements.

"Material Defect": Any Defect that the Purchaser determines, in its sole but good faith and reasonable discretion, is one that would or reasonably could be expected to have (a) a material adverse effect upon the value of any Mortgage Loan, any Servicing Rights, or the Purchaser's or the applicable Agency's respective interests therein, or (b) any adverse effect upon the Purchaser's ability (i) to receive "Final Certification" or "Recertification," as those terms are defined pursuant to applicable GNMA Requirements, of any Mortgage Pool in accordance with applicable GNMA Requirements, (ii) to claim or receive any Government Backstop proceeds from the applicable Agency in the greatest amount and to the greatest extent permitted by applicable Agency Requirements, (iii) to perform the Servicing of any Mortgage Loan in accordance with Applicable Requirements, or (iv) to commence or complete any Foreclosure Action or Loss Mitigation activity in accordance with Applicable Requirements, and in the same manner and on the same timeframe as mortgage loans of the same type as the Mortgage Loans.

"MERS": Mortgage Electronic Registration Systems, Inc., or any successor thereto.

"MERS Mortgage Loan": Any Mortgage Loan that has been (a) registered on the MERS System, or (b) secured by a Mortgage Instrument which identifies MERS as (i) the mortgagee or assignee of the Mortgage Instrument, or (ii) the designee or nominee of the lender or mortgagee named in the Mortgage Instrument.

"MERS Requirement": With respect to any Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) any agreement, arrangement, or contract by and between any Covered Person and MERS, and to which such Mortgage Loan or the related Servicing Assets

DocuSign Envelope ID: 4A838174-A7DF-4EB2-A699-FA56BA591856

is or, at any relevant time, was subject, or (b) any announcement, bulletin, circular, directive, guide, handbook, instruction, manual, notice, policy, regulation, or rule issued by MERS and to which such Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the MERS Procedures Manual, as it may be amended from time to time.

"MERS System": The electronic registry maintained by MERS for purposes of registering and reporting changes in the ownership and servicing of mortgage loans.

"Monthly Payment": With respect to any Mortgage Loan, any scheduled payment of principal, interest, Escrow Items, or other amounts due, payable, or paid by or on behalf of the related Mortgagor in connection with such Mortgage Loan each month or upon maturity.

"Mortgage Instrument": With respect to any Mortgage Loan, any deed of trust, financing statement, mortgage, pledge agreement, security deed, and other written instrument, including each subsequent assignment of any of the foregoing, that purports to grant or assign a lien upon any right, title, or interest in, to, or under all or any part of the related Mortgaged Property as security for such Mortgage Loan.

"Mortgage Loan": Each mortgage loan identified in the Preliminary Mortgage Loan Schedule.

"Mortgage Loan Document": With respect to any Mortgage Loan, each document required to be contained in the related Collateral File, including (a) each attachment, endorsement, exhibit, rider, schedule, and supplement thereto, and (b) each amendment, extension, modification, novation, and restatement thereof.

"Mortgage Loan Proceeds": With respect to any Mortgage Loan, all funds due or payable to, or otherwise received by or on behalf of, the Purchaser or any Covered Person in connection with such Mortgage Loan or the related Government Backstop, including (a) all Monthly Payments and other scheduled and unscheduled payments and prepayments of principal, interest, Escrow Items, or other amounts due or payable by the Mortgagor in connection with such Mortgage Loan, (b) all cash and non-cash proceeds due or payable by any Person in connection with (i) any Government Backstop relating to such Mortgage Loan, (ii) any policy of flood insurance, hazard insurance, mortgage insurance, pool insurance, title insurance, or other type of insurance relating to such Mortgage Loan or the related Mortgaged Property, (iii) any Foreclosure Action relating to such Mortgage Loan, or the subsequent sale or use of any real or personal property acquired as a result thereof, or (iv) any Action or Claim seeking or relating to the condemnation, possession, or taking of all or any part of the related Mortgaged Property by any Governmental Authority, and (c) all Ancillary Income, Servicing Fees, and other amounts due or payable to the Purchaser or any Covered Person in connection with the Servicing of such Mortgage Loan.

"Mortgage Loan Repurchase Price": With respect to any Mortgage Loan, the dollar amount equal to (a) all principal, interest (including shortfall interest), fees, penalties, and other amounts paid or payable by the Purchaser to the applicable Agency in connection with the buyout of such Mortgage Loan from the related Mortgage Pool or repurchase of such Mortgage Loan from the applicable Agency, plus (b) the Servicing Assets Reimbursement Amount for the related Servicing Assets.

"Mortgage Loan Schedule": A written schedule that includes, on a loan level basis as of the Settlement Date, all information specified on Exhibit C hereto with respect to each Mortgage Loan. The format, contents, and delivery method of the Mortgage Loan Schedule shall be satisfactory to the Purchaser in its sole discretion.

"Mortgage Note": With respect to any Mortgage Loan, the promissory note or other evidence of the indebtedness owed by the related Mortgagor in connection with such Mortgage Loan.

"Mortgage Pool": With respect to any Mortgage Loan, the pool of mortgage loans into which such Mortgage Loan has been or will be pooled and securitized into mortgage-backed securities guaranteed by GNMA.

"Mortgaged Property": With respect to any Mortgage Loan, all real and personal property purportedly encumbered by the lien of the related Mortgage Instrument, including all accessions and improvements thereon, all replacements and substitutions thereof, and all cash and non-cash proceeds therefrom.

"Mortgagor": With respect to any Mortgage Loan, each Person who is (a) a borrower, guarantor, surety, or other obligor of the indebtedness evidenced by the related Mortgage Note, or (b) a grantor, mortgagor, or other provider of collateral as security for the indebtedness secured by the related Mortgage Instrument.

"Non-MERS Mortgage Loan": Any Mortgage Loan that is not a MERS Mortgage Loan.

"Officer's Certificate": A written instrument in the form appended as Exhibit F hereto that is executed by an officer of the Seller.

"Order": Any assessment, award, decision, decree, directive, injunction, judgment, mandate, order, ruling, subpoena, verdict, writ, or other determination or finding issued by any Governmental Authority or arbitral tribunal.

"P&I Advance": With respect to any Mortgage Loan, any advancement, expenditure, or other payment of funds by or on behalf of the Servicer for the payment of principal or interest pursuant to the applicable Servicing Agreement.

"Permit": Any approval, authorization, certification, consent, exemption, license, permit, qualification, registration, variance, or other right issued by any Governmental Authority.

"Permitted Encumbrance": As defined in clause (e) of Section 5.

"Person": Any (a) natural person, (b) company, corporation, joint venture, partnership, syndicate, trust, or other type of juridical entity or non-juridical association through which any activity is conducted, or (c) Governmental Authority.

"Preliminary Funding Schedule": A written schedule in the form appended as Schedule D.1 hereto that is executed by an officer of each Party and that appends the Preliminary Mortgage Loan Schedule as Schedule D.2 thereto.

"Preliminary Mortgage Loan Schedule": A written schedule that includes, on a loan level basis as of the Calculation Date, all information specified on Exhibit C hereto with respect to each Mortgage Loan for which the Parties have purchased and sold the related Servicing Assets pursuant to this Agreement. The format, contents, and delivery method of the Preliminary Mortgage Loan Schedule shall be satisfactory to the Purchaser in its sole discretion.

"Privacy Law": Each obligation imposed by or requirement specified in any Law relating to the privacy, preservation, or protection of a Person's financial, personal, or other nonpublic information, including (a) the Gramm-Leach-Bliley Act (15 U.S.C. Chapter 94) and each regulation and rule promulgated thereunder, (b) the Regulations and Statement of General Policy regarding Privacy of Consumer Financial Information (12 C.F.R. Part 332), and (c) the Interagency Guidelines Establishing Standards for Safeguarding Customer Information (12 C.F.R. Part 364).

DocuSign Envelope ID: 4A838174-A7DF-4EB2-A699-FA56BA591856

"<u>Purchase Confirmation</u>": A written instrument in the form appended as <u>Exhibit D</u> hereto that is executed by an officer of each Party.

"<u>Purchase Price</u>": With respect to any Servicing Assets, the dollar amount equal to (a) the Purchase Price Percentage, multiplied by (b) the unpaid principal balance of the related Mortgage Loan as of the Settlement Date.

"<u>Purchase Price Percentage</u>": The product of (a) three and 55/100 (3.55), multiplied by (b) the weighted average base servicing fee that is payable to the Servicer by GNMA for the Mortgage Loans pursuant to the applicable Servicing Agreement, less the amount of any guaranty fees, insurance premiums, or other items that are deducted, offset, payable, or withheld from such base servicing fee pursuant to applicable Agency Requirements; provided however, the Purchase Price Percentage for the Servicing Assets related to each Exception Mortgage Loan and each Excluded Mortgage Loan shall be zero and 00/100 percent (0.00%).

"<u>Purchaser</u>": As defined in the preamble hereto.

"<u>Purchaser Advance</u>": With respect to any Mortgage Loan, any Servicing Advance that has not previously been recovered by or reimbursed to the Purchaser and was (a) included in the Purchase Price for the related Servicing Assets, (b) reimbursed by the Purchaser to the Seller pursuant to this Agreement or otherwise, or (c) made by or on behalf of the Purchaser to any Person in connection with the Servicing of such Mortgage Loan on or after the Settlement Date.

"<u>Purchaser Indemnitee</u>": As defined in Subsection 11.03(a).

"<u>Purchaser Requirement</u>": With respect to any Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) this Agreement or any other agreement, arrangement, or contract by and between the Seller, its Affiliates, or its or their respective Representatives, and the Purchaser, its Affiliates, or its or their respective Representatives, and to which such Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, or (b) any directive or instruction issued by the Purchaser, its Affiliates, or its or their respective Representatives, to the Seller, its Affiliates, or its or their respective Representatives, and to which such Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the Transfer Instructions, as they may be amended from time to time.

"<u>Reconciliation Payment</u>": As applicable, the Purchaser Reconciliation Payment (as defined in Subsection 3.01(b)) or the Seller Reconciliation Payment (as defined in Subsection 3.01(b)).

"<u>Reconstitution</u>": Any transaction whereby the Purchaser or any Subsequent Transferee assigns, conveys, securitizes, or otherwise transfers to any other Person any right, title, or interest in, to, or under this Agreement, any Mortgage Loan, or any Servicing Assets.

"<u>Recourse Obligation</u>": With respect to any Mortgage Loan or the related Servicing Rights, any current or contingent liability, obligation, or requirement of the Purchaser or the Servicer to buyout such Mortgage Loan from the related Mortgage Pool, to repurchase such Mortgage Loan or the related Servicing Rights from any Person, to make financial assurances (including any bond, guaranty, indemnification, or letter of credit) to any Person in connection with such Mortgage Loan or the related Servicing Rights, or to provide any other compensatory, punitive, or other monetary or non-monetary recourse, relief, or remedy to any Person in connection with such Mortgage Loan or the related Servicing Rights, in each case except as a result of the Purchaser's gross negligence or willful misconduct.

"<u>Regulatory Authority</u>": Any Governmental Authority or non-governmental, quasi-governmental, or self-governing organization empowered to regulate or supervise any Person's activities in connection with any Mortgage Loan, including CFPB and each Agency.

"<u>Regulatory Requirement</u>": With respect to any Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) any agreement, arrangement, or contract by and between any Covered Person and any Regulatory Authority, and to which such Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, or (b) any announcement, bulletin, circular, directive, guide, handbook, instruction, mandate, manual, notice, Order, policy, regulation, rule, or similar material issued by any Regulatory Authority and to which such Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject.

"<u>Reimbursable Seller Advance</u>": With respect to any Mortgage Loan, any Seller Advance (excluding any P&I Advance) that (a) was made by or on behalf of the Seller in accordance with Accepted Servicing Practices and applicable Agency Requirements, (b) is allowable by and eligible for reimbursement from the applicable Agency pursuant to applicable Agency Requirements, (c) is substantiated by customary documentation which has been provided to the Purchaser and which evidences, to the Purchaser's reasonable satisfaction, the loan number, payment date, payment amount, payment purpose, payment status, payor name, payee name, recovered/reimbursed amount (if any), recovery/reimbursement date (if applicable), recovery/reimbursement source, and any other information reasonably requested by the Purchaser relating to such Seller Advance, and (d) has not previously been paid to, recovered by, or reimbursed to the Seller.

"<u>Representative</u>": With respect to any specified Person, any other Person that is an accountant, administrator, agent, attorney, banker, director, employee, manager, member, officer, partner, shareholder, or other designee of the specified Person. For all purposes hereof, neither Party, nor its Affiliates, nor its or their respective Representatives, shall be deemed a Representative of the other Party, its Affiliates, or its or their respective Representatives.

"<u>Seller</u>": As defined in the preamble hereto.

"<u>Seller Advance</u>": With respect to any Mortgage Loan, any unrecovered Servicing Advance paid by the Seller to any Person in connection with the Servicing of such Mortgage Loan before the Transfer Date.

"<u>Seller Indemnitee</u>": As defined in Subsection 11.03(b).

"<u>Servicer</u>": With respect to any Mortgage Loan, the Person that is contractually obligated to service such Mortgage Loan for the applicable Agency pursuant to applicable Agency Requirements.

"<u>Servicing</u>": With respect to any Mortgage Loan, the loan administration, collection, servicing, and other post-origination activities permitted or required to be performed by the Servicer pursuant to applicable Agency Requirements or Accepted Servicing Practices, including the activities identified in Item 1122(d) of Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100-229.1123 ("<u>Regulation AB</u>").

"<u>Servicing Advance</u>": With respect to any Mortgage Loan, any Corporate Advance, P&I Advance, or Escrow Advance made by or on behalf of the Servicer in connection with the Servicing of such Mortgage Loan.

"Servicing Agreement": With respect to any Mortgage Loan, any agreement, arrangement, or contract (including all pooling agreements, servicing agreements, waiver agreements, custodial agreements, and other agreements or arrangements) by and between the Servicer and the applicable Agency relating to such Mortgage Loan or the related Government Backstop, together with (a) each attachment, exhibit, schedule, and supplement thereto, (b) each agreement, certificate, instrument, and other document executed in connection therewith, and (c) each amendment, extension, modification, novation, and restatement thereof.

"Servicing Agreement Consent": With respect to any Servicing Assets, each approval, authorization, or consent required to be received from the applicable Agency pursuant to applicable Agency Requirements in order for any Party to consummate the transactions contemplated by this Agreement with respect to such Servicing Assets or the related Mortgage Loan, in each case without being in breach of, default under, or in violation of, applicable Agency Requirements and without any adverse effect upon or modification to the Purchaser's rights, obligations, or liabilities with respect to such Servicing Assets or the related Mortgage Loan.

"Servicing Assets": With respect to any Mortgage Loan, individually and collectively (a) the Servicing Rights related to such Mortgage Loan, (b) the Custodial Funds and Escrow Funds related to such Mortgage Loan, (c) the Collateral File and Loan File related to such Mortgage Loan, and (d) all Consumer Information and other data and information relating to such Mortgage Loan or the past, present, or future Servicing thereof.

"Servicing Assets Reimbursement Amount": With respect to any Servicing Assets, the dollar amount equal to (a) the Purchase Price paid by the Purchaser for such Servicing Assets, plus (b) all Purchaser Advances, Interim Servicing Fees, and other amounts (including shortfall interest) paid or payable by the Purchaser to any Agency, the Seller, or any other Person in connection with such Servicing Assets or the related Mortgage Loan, plus (c) all Losses incurred or sustained by any Purchaser Indemnitee in connection with the purchase, repurchase, or Servicing of such Servicing Assets or the related Mortgage Loan, plus (d) an administrative fee of one thousand five hundred and 00/100 dollars ($1,500.00), less (e) the amount of any unreleased Holdback Funds attributable to such Servicing Assets.

"Servicing Fees": With respect to any Mortgage Loan, all compensation due or payable by the applicable Agency to the Servicer as consideration for Servicing such Mortgage Loan pursuant to the applicable Servicing Agreement.

"Servicing File": With respect to any Mortgage Loan, the electronic compilation of all documents, instruments, and information relating to the Servicing of the Mortgage Loan by any Covered Person, which in all cases shall include (a) a ledger reflecting (i) all Mortgage Loan Proceeds due, payable, or received in connection with the Mortgage Loan at any time on or before the Transfer Date, (ii) all Escrow Funds and Holdback Funds disbursed in connection with the Mortgage Loan at any time on or before the Transfer Date, and (iii) all Servicing Advances made in connection with the Mortgage Loan at any time on or before the Transfer Date, and (b) a copy of all correspondence delivered to or received from the Mortgagor or any Governmental Authority, Insurer, or Agency relating to the Mortgage Loan at any time on or before the Transfer Date.

"Servicing Rights": With respect to any Mortgage Loan, all benefits, duties, obligations, powers, privileges, responsibilities, and rights arising under, incidental to, relating to, or resulting from the Servicing of such Mortgage Loan, including the exclusive right (a) to collect and recover (and, to the extent required, remit to the applicable Agency) all Mortgage Loan Proceeds due or payable in connection with such Mortgage Loan or the related Government Backstop, (b) to hold and invest all Custodial Funds and Escrow Funds received in connection with such Mortgage Loan or the related Government Backstop, (c) to earn

DocuSign Envelope ID: 4A838174-A7DE-4EB2-A699-EA56BA591856

and retain all Servicing Fees and Ancillary Income attributable to or derived from the Servicing of such Mortgage Loan, (d) to recover and be reimbursed for all Servicing Advances paid by any Servicer in connection with such Mortgage Loan, (e) to conduct and manage each Foreclosure Action and other Action or Claim relating to such Mortgage Loan, (f) to possess and control the Collateral File, the Loan File, and the Servicing File related to such Mortgage Loan, including all Mortgage Loan Documents and other documents, instruments, and information relating to such Mortgage Loan or the past, present, or prospective Servicing thereof, (g) to own and use all Consumer Information relating to such Mortgage Loan, including all of the Seller's rights to commercialize the Mortgagor relationship and to solicit the Mortgagor for any purpose, and (h) to exercise and enforce all other benefits, powers, privileges, and rights arising under, incidental to, relating to, or resulting from any of the foregoing.

"Settlement Date": June 29, 2023, or any other Business Day that is mutually agreed upon by both Parties in writing.

"Settlement Payment": As defined in Subsection 3.01(a).

"Subsequent Transferee": Any Person that is an initial transferee from the Purchaser, or an immediate or mediate transferee from such initial transferee, of any right, title, or interest in, to, or under this Agreement, any Mortgage Loan, or any Servicing Assets.

"Tax Contract": With respect to any Mortgage Loan, a fully paid and freely transferrable life-of-loan tax service contract that is issued and monitored by Lereta, LLC for the Mortgage Loan and the related Mortgaged Property.

"Termination Date": As defined in Subsection 10.02.

"Transfer Date": August 2, 2023, or any other Business Day that is mutually agreed upon by both Parties in writing, subject to Servicing Agreement Consent from GNMA.

"Transfer Instructions": Any commercially reasonable transfer instructions provided by the Purchaser or its designated subservicer.

"Transfer Payment": As defined in Subsection 3.01(c).

"Transfer-Related Obligation": With respect to any Mortgage Loan or the related Servicing Assets, any agreement, covenant, duty, obligation, responsibility, or undertaking of the Seller that this Agreement or the Transfer Instructions requires to be performed on the Transfer Date, within a specified number of days before or after the Transfer Date, or otherwise in connection with the transfer of the Servicing of such Mortgage Loan to the Purchaser.

"Uncovered Losses": With respect to any Mortgage Loan, any Losses incurred or sustained in connection with or relating to (a) the curtailment, deduction, disallowance, or reduction by the applicable Agency of all or part of any principal, interest (including payment of interest at a rate other than the note rate), Government Backstop proceeds, Servicing Advances, or other amounts as a result of any error, action, inaction, misstatement, or omission by or on behalf of any Covered Person in connection with such Mortgage Loan, or (b) the assessment, imposition, recoupment, or other recovery by any Governmental Authority of any charges, costs, expenses, fees, fines, penalties, or other amounts as a result of any error, action, inaction, misstatement, or omission by or on behalf of any Covered Person in connection with such Mortgage Loan.

"USDA Mortgage Loan": Any Mortgage Loan that is covered by a Government Guaranty issued by RD, RHS, or USDA.

"USDA Requirement": With respect to any USDA Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) the applicable Servicing Agreement or any other agreement, arrangement, or contract by and between any Covered Person and RD, RHS, or USDA, and to which such USDA Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the related Government Guaranty Certificate, or (b) any announcement, bulletin, circular, directive, guide, handbook, instruction, mandate, manual, notice, Order, policy, regulation (including those codified in Title 7 of the Code of Federal Regulations), rule, or similar material issued by RD, RHS, or USDA, and to which such USDA Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the RD Single Family Housing Guaranteed Loan Program Technical Handbook, as it may be amended from time to time.

"VA Mortgage Loan": Any Mortgage Loan that is covered by a Government Guaranty issued by VA.

"VA Requirement": With respect to any VA Mortgage Loan or the related Servicing Assets, each obligation imposed by or requirement specified in (a) the applicable Servicing Agreement or any other agreement, arrangement, or contract by and between any Covered Person and VA, and to which such VA Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the related Government Guaranty Certificate, or (b) any announcement, bulletin, circular, directive, guide, handbook, instruction, mandate, manual, notice, Order, policy, regulation (including those codified in Title 38 of the Code of Federal Regulations), rule, or similar material issued by VA, and to which such VA Mortgage Loan or the related Servicing Assets is or, at any relevant time, was subject, including the VA Lenders Handbook and the VA Servicer Handbook, as they may be amended from time to time.

Subsection 1.02.        General Interpretive Principles.

This Agreement shall be construed and interpreted as if both Parties jointly drafted each provision herein, without regard to any Law which may recommend or require a presumption against or in favor of any Party. The preamble, each recital, and each attachment, exhibit, and schedule hereto are incorporated by reference herein and made an integral part hereof. The heading of each provision herein is used for convenience of reference and shall not affect the construction or interpretation hereof. The use of any word in the plural form shall be construed and interpreted to include the singular form as well, and vice versa. The use of any word in the present tense shall be construed and interpreted to include the future tense as well, and vice versa. The use of any word in the masculine gender shall be construed and interpreted to include the feminine gender as well, and vice versa. The word "any" shall be construed and interpreted to mean "any or all," and the word "each" shall be construed and interpreted to mean "each and every." The words "hereby," "herein," "hereof," "hereto," "hereunder," and words of similar import shall be construed and interpreted to refer to this Agreement in its entirety. The word "including" and each variant thereof shall be construed and interpreted to mean "including without limitation" in the unrestricted sense. The word "may" shall be construed and interpreted to grant a permissive right rather than impose a mandatory obligation, and the words "shall" and "will" shall be construed and interpreted to impose a mandatory obligation rather than express a mere intention. The word "or" shall be construed and interpreted to mean "and/or" in the non-exclusive sense. Each reference to this Agreement or any other document shall be construed and interpreted to include each attachment, exhibit, rider, schedule, and supplement thereto, and each amendment, extension, modification, novation, and restatement thereof. Each reference to any Law shall be construed and interpreted to include each legislative amendment and replacement thereof, each administrative regulation and rule promulgated thereunder, each executive order and judicial decision

relating thereto. Each reference to a Party or any other Person shall be construed and interpreted to include each successor and permitted assign thereof.

SECTION 2.    PURCHASE TRANSACTION.

Subsection 2.01.    Transaction Terms.

On the terms and subject to the conditions set forth herein, (a) the Seller agrees to sell to the Purchaser, on and as of the Settlement Date, and on the terms and subject to the conditions set forth herein, all right, title, and interest, whether then owned or thereafter acquired by the Seller, in, to, and under the Servicing Assets related to each Mortgage Loan, and (b) the Purchaser agrees to purchase from the Seller, on and as of the Settlement Date, and on the terms and subject to the conditions set forth herein, all right, title, and interest, whether then owned or thereafter acquired by the Seller, in, to, and under the Servicing Assets related to each Mortgage Loan.

NOTWITHSTANDING THE FOREGOING OR ANY OTHER PROVISION IN THIS AGREEMENT, THIS AGREEMENT IS NOT INTENDED TO BE, AND SHALL NOT BE CONSTRUED AS, AN AGREEMENT TO PURCHASE, SELL, OR TRANSFER THE SERVICING ASSETS RELATED TO ANY MORTGAGE LOAN IN THE EVENT AND TO THE EXTENT EITHER PARTY'S CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED HEREBY WOULD CONSTITUTE A BREACH OF, DEFAULT UNDER, OR VIOLATION OF, APPLICABLE AGENCY REQUIREMENTS. ACCORDINGLY, AND AS FURTHER SET FORTH IN SUBSECTION 7.06, THE PURCHASE, SALE, AND TRANSFER OF THE SERVICING ASSETS PURSUANT TO THIS AGREEMENT IS CONDITIONED UPON AND SUBJECT TO RECEIPT OF ALL SERVICING AGREEMENT CONSENTS REQUIRED BY APPLICABLE AGENCY REQUIREMENTS FOR BOTH PARTIES TO CONSUMMATE THE TRANSACTIONS CONTEMPLATED HEREBY WITHOUT CONDITIONS OR RESTRICTIONS OF ANY KIND AND WITHOUT ADVERSE EFFECT UPON OR MODIFICATION TO THE PURCHASER'S RIGHTS, OBLIGATIONS, OR LIABILITIES WITH RESPECT TO THE SERVICING ASSETS OR THE RELATED MORTGAGE LOANS. IN ADDITION, THE PARTIES ACKNOWLEDGE AND AGREE THAT THEIR RESPECTIVE RIGHTS AND OBLIGATIONS UNDER THIS AGREEMENT ARE SUBJECT AND SUBORDINATE TO THE RIGHTS OF THE APPLICABLE AGENCY WITH RESPECT TO THE MORTGAGE LOANS, INCLUDING THE RIGHT OF SUCH AGENCY TO TERMINATE THE SERVICING THEREOF. THIS AGREEMENT IS SUBJECT AND SUBORDINATE IN ALL RESPECTS TO THE RIGHTS OF GINNIE MAE UNDER THE GNMA MBS GUIDE.

Subsection 2.02.    Asset Conveyance.

Immediately upon the Purchaser's remittance of the Settlement Payment in accordance with Subsection 3.01(a), and without any further action by or notice to any Party, (a) the Seller shall and hereby does assign, convey, deliver, grant, release, sell, and transfer unto the Purchaser, on and as of the Settlement Date, and on the terms and subject to the conditions set forth herein, all right, title, and interest, whether then owned or thereafter acquired by the Seller, in, to, and under the Servicing Assets related to each Mortgage Loan, and (b) the Purchaser shall be and hereby is, on and as of the Settlement Date, vested with beneficial, equitable, and legal ownership of all right, title, and interest, whether then owned or thereafter acquired by the Seller, in, to, and under the Servicing Assets related to each Mortgage Loan. Accordingly, all Mortgage Loan Proceeds, Mortgage Loan Documents, Loan Files, and other documents, materials, and proceeds that remain in or come into the Seller's possession, custody, or control with respect to any Mortgage Loan or the related Government Backstop at any time on or after the Settlement Date shall, to the extent not delivered to the Purchaser before the Settlement Date, be (a) held by the Seller in a fiduciary capacity on behalf of and in trust for the benefit of the Purchaser and the applicable Agency, and (b)

DocuSign Envelope ID: 4A838171-A7D5-4EB2-A699-FA56BA591856

delivered to the Purchaser or its designee not later than five (5) Business Days after the earlier of the Seller's receipt thereof or the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

Each Party acknowledges and agrees that the transactions contemplated by this Agreement are expressly intended to constitute, and shall be reported by such Party for accounting and tax purposes as, a purchase and sale of assets rather than a pledge of collateral to secure a debt.

SECTION 3.    PURCHASE CONSIDERATION.

Subsection 3.01.        Payment of Purchase Price.

(a)    Settlement Payment. Not later than one (1) Business Day before the Settlement Date, the Seller shall prepare and provide to the Purchaser for approval and counter-execution the Seller's executed counterpart of the Preliminary Funding Schedule with a complete Preliminary Mortgage Loan Schedule appended as Schedule D.2 thereto. Subject to the satisfaction or waiver of all conditions precedent set forth in Section 8, the Purchaser shall remit to the Seller on the Settlement Date, by wire transfer of immediately available funds to the account specified by the Seller in the fully executed Preliminary Funding Schedule, payment in an amount equal to ninety and 00/100 percent (90.00%) of the aggregate Estimated Purchase Price for the Servicing Assets related to all Mortgage Loans (the "Settlement Payment"), less any third-party fees and adjustments set forth in the Preliminary Funding Schedule.

(b)    Reconciliation Payment. Not later than five (5) Business Days after the Settlement Date (the "Reconciliation Date"), the Seller shall prepare and provide to the Purchaser for approval and counter-execution the Seller's executed counterpart of the Funding Schedule with a complete Mortgage Loan Schedule appended as Schedule D.4 thereto. If the aggregate Estimated Purchase Price for the Servicing Assets related to all Mortgage Loans exceeds the aggregate Purchase Price for the Servicing Assets related to all Mortgage Loans, then the Seller shall remit to the Purchaser on the Reconciliation Date, by wire transfer of immediately available funds to the account specified by the Purchaser in the Funding Schedule, payment in an amount equal to the excess (the "Seller Reconciliation Payment"). Alternatively, if the aggregate Purchase Price for the Servicing Assets related to all Mortgage Loans exceeds the aggregate Estimated Purchase Price for the Servicing Assets related to all Mortgage Loans, then the Purchaser shall remit to the Seller on the Reconciliation Date, by wire transfer of immediately available funds to the account specified by the Seller in the Preliminary Funding Schedule, payment in an amount equal to ninety and 00/100 percent (90.00%) of the excess (the "Purchaser Reconciliation Payment").

(c)    Transfer Payment. Not later than five (5) Business Days after the later of the Transfer Date or the date on which the Seller has satisfied all Transfer-Related Obligations with respect to all Mortgage Loans, the Purchaser shall remit to the Seller, by wire transfer of immediately available funds to the account specified by the Seller in the fully executed Preliminary Funding Schedule, payment in an amount equal to five and 00/100 percent (5.00%) of the aggregate Purchase Price for the Servicing Assets related to all Mortgage Loans (the "Transfer Payment").

(d)    Holdback Payments. The remaining amount of the aggregate Purchase Price for the Servicing Assets related to all Mortgage Loans (collectively, the "Holdback Funds") shall be withheld by the Purchaser and released to the Seller in accordance with this Subsection 3.01(d) as follows:

(i)    Not later than thirty (30) days after the Transfer Date, and on a monthly basis thereafter until the one (1) year anniversary of the Settlement Date (the "Holdback Surrender Date"), the Purchaser shall issue to the Seller one or more written reports that, collectively, identify all outstanding Document Exceptions associated with each Mortgage Loan (each, a "Document Exception Report"). Upon

DocuSign Envelope ID: 4A838174-A7D5-4EB2-A699-EA56BA591856

the Seller's receipt of each Document Exception Report, and at the Seller's sole cost and expense, the Seller shall use best efforts to promptly and fully cure all outstanding Document Exceptions identified in such Document Exception Report.

(ii)    Within thirty (30) days after the last day of the calendar month specified in Subsection 11.01(a), and on a monthly basis thereafter until the Holdback Surrender Date, the Purchaser shall release the Holdback Funds (less any portion thereof which has been subject to offset pursuant to this Agreement) to the Seller on a loan-level, pro rata basis—based upon the percentage (by principal balance rather than by loan count) of all Mortgage Loans for which the most recent Document Exception Report identifies no outstanding Document Exceptions—until the aggregate amount of Holdback Funds has been reduced to zero and 50/100 percent (00.50%) of the aggregate Purchase Price for the Servicing Assets related to all Mortgage Loans, at which point the Purchaser shall not release any further Holdback Funds until the issuance of a Document Exception Report that identifies no outstanding Document Exceptions with respect to all Mortgage Loans. The Purchaser shall issue the final Document Exception Report to the Seller not later than sixty (60) days after the Holdback Surrender Date and, if such final Document Exception Report identifies no outstanding Document Exceptions with respect to all Mortgage Loans, then the Purchaser shall release the remaining Holdback Funds (less any portion thereof which has been subject to offset pursuant to this Agreement) to the Seller within ten (10) Business Days.

(iii)    Notwithstanding the foregoing or any other provision in this Agreement:

(x)    If any Document Exceptions remain outstanding with respect to any of the Mortgage Loans on the date that is one hundred eighty (180) days after the Transfer Date, then the Purchaser may, at its election in its sole discretion, engage a third-party vendor at competitive market rates to cure such outstanding Document Exceptions and may offset all associated costs, expenses, and fees against any unreleased Holdback Funds. If the cost to cure all outstanding Document Exceptions exceeds the amount of all unreleased Holdback Funds at any time or from time to time, then the Seller shall pay to the Purchaser the amount of any shortfall not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

(y)    If any Document Exceptions remain outstanding with respect to any of the Mortgage Loans on the Holdback Surrender Date, then the Seller shall pay to the Purchaser the aggregate Servicing Assets Reimbursement Amount for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email) and shall, if requested by the Purchaser and permitted by the applicable Agency, simultaneously repurchase such Servicing Assets from the Purchaser.

(z)    If any breach by the Seller of any covenant, representation, warranty, or other provision in this Agreement has occurred and is continuing on any date on which any Holdback Funds are to be released to the Seller, then the Purchaser shall not release such Holdback Funds until such breach has been cured to the Purchaser's satisfaction, at which point the Purchaser shall release such Holdback Funds to the Seller within ten (10) Business Days thereafter.

Subsection 3.02.    In-Flight Modifications.

If any Mortgage Loan is subject to an In-Flight Modification on the Settlement Date or the Transfer Date and the modified Mortgage Loan cannot be delivered into a new Mortgage Pool at a price equal to or greater than par, then the Purchase Price for the related Servicing Assets shall be adjusted to a negative amount equal to the dollar discount to par that would result from delivering such Mortgage Loan into the highest possible front-month GN2 TBA coupon security as of the Settlement Date. The Seller shall pay to

the Purchaser all amounts due and payable pursuant to this Subsection 3.02 not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

<div align="center">Subsection 3.03.    <u>Correction of Errors.</u></div>

If any amount paid by or to either Party pursuant to this Section 3 is found to be in error, then the Parties shall mutually agree upon the appropriate reconciliation amount and any corrective documentation, and the Party benefiting from the error shall pay to the other Party the agreed upon reconciliation amount not later than five (5) Business Days after the Parties mutually agree upon such appropriate reconciliation amount and such corrective documentation.

SECTION 4.    <u>REPRESENTATIONS AND WARRANTIES REGARDING THE SELLER</u>.

As a material inducement for the Purchaser to enter into this Agreement, the Seller represents and warrants to the Purchaser, on and as of the Effective Date, the Settlement Date, the Transfer Date, and every date during the Interim Servicing Period, as follows:

(a)    this Agreement (i) has been duly authorized, executed, and delivered by the Seller, and (ii) constitutes a binding, enforceable, and valid obligation of the Seller, except as the enforceability hereof may be limited by (A) applicable bankruptcy, insolvency, liquidation, moratorium, receivership, reorganization, or similar Laws affecting the enforcement of creditors' rights, and (B) general principles of equity, whether enforcement is sought in a proceeding at law or in equity;

(b)    the Seller (i) is a limited liability company duly organized, in good standing, and validly existing in accordance with the Laws of the State of California, (ii) has all approvals, authorizations, and consents necessary for the Seller to execute, deliver, and perform this Agreement in accordance with all Applicable Requirements, (iii) is a sophisticated institutional investor that did, or had the opportunity to, consult with independent legal counsel in connection with the Seller's evaluation and negotiation of this Agreement, and (iv) has not engaged any agent, broker, finder, or salesperson to whom the Purchaser would be obligated to pay a commission or compensation upon the consummation of the transactions contemplated hereby, absent a separate written agreement between the Purchaser and such agent, broker, finder, or salesperson;

(c)    the Seller's execution, delivery, and performance of this Agreement does not and will not (i) conflict with or contravene any organizational or governing document of the Seller, (ii) constitute a breach of or default under any agreement, arrangement, or contract to which the Seller is a party, or (iii) violate any Law to which the Seller or its property is subject;

(d)    no oral or written agreement, inducement, or promise relating to the purchase or sale of any Servicing Assets — other than those which are expressly included or specifically incorporated herein — has been relied upon by the Seller or shall be binding upon the Purchaser;

(e)    the Seller has and, at all relevant times, had and will have, in each case without notice of possible impairment, revocation, suspension, or termination, all Permits (or exemptions therefrom) necessary for the Seller (i) to conduct business in each jurisdiction where any Mortgaged Property is located, and (ii) to originate, own, and service residential mortgage loans of the same type as the Mortgage Loans in each jurisdiction where any Mortgaged Property is located;

(f)    the Seller is and, at all relevant times, has been and will be, in each case without notice of possible impairment, revocation, suspension, or termination, (i) an approved seller and servicer in good standing for each Agency, an approved issuer and servicer in good standing with GNMA, and an approved

member in good standing of MERS, and no circumstance has occurred that, with or without notice or the lapse of time or both, does or reasonably could be expected to render the Seller ineligible, or otherwise unable to comply with applicable Agency Requirements or MERS Requirements necessary, to be an approved seller and servicer in good standing for each Agency, an approved issuer and servicer in good standing with GNMA, and an approved member in good standing of MERS, and (ii) in compliance with all Applicable Requirements in all material respects, and no circumstance has occurred that, with or without notice or the lapse of time or both, does or reasonably could be expected to result in the Seller's failure to be in compliance with Applicable Requirements in any material respects;

(g)      neither the Seller nor any of its directors, officers, or employees is or, during the five (5) year period immediately preceding the Effective Date, has been the subject of any (a) suspension, debarment, limited denial of participation, exclusionary list, outstanding order, decree, agreement, finding, memorandum of understanding or similar supervisory arrangement with, or a commitment letter or similar submission to, or extraordinary supervisory letter from, any Governmental Authority, or (b) an indictment, arraignment, or conviction for any fraudulent activity or any criminal offenses involving financial services, real estate, or corporate governance;

(h)      the Seller's (i) decision to originate the Mortgage Loans was made independent of the Purchaser's decision to purchase the related Servicing Assets, (ii) selection of the Mortgage Loans for which the related Servicing Assets have been offered for sale to the Purchaser was not intended to identify servicing assets that are less desirable than other servicing assets owned by the Seller, (iii) sale of the Servicing Assets is made in the ordinary course of the Seller's business and is not subject to any antitrust, bulk transfer, or similar Laws to which the Seller or its property is subject, and (iv) Servicing of the Mortgage Loans has complied with all Applicable Requirements;

(i)      the Seller (i) has not admitted in writing its inability to pay any indebtedness as it becomes due, or voluntarily suspended payment of any indebtedness that has become due, (ii) is not insolvent or engaged in any business or transaction for which any property remaining with the Seller is an unreasonably small capital, or operating subject to any formal or informal agreement, limitation, Order, or restriction mandated by any Governmental Authority, and (iii) does not intend to incur any indebtedness that would be beyond the ability of the Seller to pay upon maturity, or to hinder, delay, or defraud any Person to which the Seller is indebted;

(j)      there is no anticipated, pending, or threatened, (i) corporate resolution or other circumstance that does or reasonably could be expected to result in the dissolution, liquidation, reorganization, termination, or winding-up of the affairs of the Seller, (ii) Insolvency Proceeding relating to the Seller, or (iii) Action or Order or against the Seller (A) relating to any Mortgage Loan or the related Servicing Assets, or this Agreement or the transactions contemplated hereby, or (B) that, if adversely determined against the Seller, would or reasonably could be expected to have a Material Adverse Effect;

(k)      neither this Agreement or any representation or warranty made by the Seller herein, nor any information set forth in any data file or any certification, document, instrument, file, report, schedule, or statement furnished or to be furnished by or on behalf of the Seller, its Affiliates, or its or their respective Representatives to the Purchaser, its Affiliates, or its or their respective Representatives contains or will contain any inaccurate, incomplete, incorrect, or untrue statement of fact or omit to state any fact that is required to be stated therein or is necessary to make any other document, information, report, schedule, or statement not inaccurate, incomplete, incorrect, untrue, or otherwise not misleading; and

(l)      the Seller has performed and will perform all agreements, covenants, duties, obligations, responsibilities, and undertakings required to be performed by it pursuant to this Agreement in accordance with all Applicable Requirements, and no circumstance has occurred that, with or without notice or the

lapse of time or both, would or reasonably could be expected to have a Material Adverse Effect or constitute a breach of or default under this Agreement or the applicable Servicing Agreement.

SECTION 5.    REPRESENTATIONS AND WARRANTIES REGARDING THE SERVICING ASSETS.

As a material inducement for the Purchaser to enter into this Agreement, the Seller represents and warrants to the Purchaser, on and as of the Effective Date, the Settlement Date, and the Transfer Date, as follows with respect to each individual Mortgage Loan and the related Servicing Assets:

(a)    General Compliance. The Mortgage Loan is an Eligible Mortgage Loan and the related Servicing Assets are Eligible Servicing Assets. The solicitation, application, processing, underwriting, approval, documentation, settlement, insuring, pooling, securitization, Servicing, and sale of the Mortgage Loan and the related Servicing Assets has complied with all Applicable Requirements, and the Mortgagor has received all required disclosures and notices in connection with each of the foregoing. No accrued liabilities of any Covered Person will arise against the Purchaser as the Servicer of the Mortgage Loan or as the owner of the related Servicing Assets. No Covered Person has received notice from any Person alleging or asserting that the Mortgage Loan, the Mortgaged Property, or any action or inaction by any Person in connection with the Mortgage Loan or the Mortgaged Property, fails to comply with Applicable Requirements.

(b)    Validity and Enforceability. The indebtedness of the Mortgage Loan is evidenced by a legal, valid, and binding Mortgage Note, and is secured by a legal, valid, and binding Mortgage Instrument. The form and substance of each Mortgage Loan Document and other document required to be contained in the Collateral File or the Loan File complies with all Applicable Requirements, is complete, correct, and genuine in all respects, and includes each addendum, attachment, annex, exhibit, rider, schedule, and supplement thereto, and each amendment, extension, modification, novation, and restatement thereof. All parties to each Mortgage Loan Document and other document required to be contained in the Collateral File or the Loan File had legal capacity to execute such Mortgage Loan Document and other document, and each Mortgage Loan Document and other document required to be contained in the Collateral File or the Loan File has been duly executed by all such parties.

(c)    No Release or Defense. The Mortgage Loan has not been cancelled, discharged, rescinded, or satisfied, in whole or in part, and no document has been executed that would effect any such cancellation, discharge, rescission, or satisfaction, in whole or in part. The lien of the Mortgage Instrument has not been released, subordinated, or terminated, in whole or in part, and no document has been executed that would effect any such release, subordination, or termination, in whole or in part. Except in connection with an assumption agreement that has been approved by the applicable Agency and the Insurer of any policy of mortgage insurance relating to the Mortgage Loan, the Mortgagor has not been released from any liability or obligation under the Mortgage Loan Documents, in whole or in part, and no document has been executed that would effect any such release, in whole or in part. The Mortgage Loan is not subject to any counterclaim, defense (including the defense of usury or deceptive trade practices), or right of avoidance, nullification, reformation, rescission, setoff, or surcharge, and no such counterclaim, defense or right has been asserted. No Mortgage Loan Document or other document required to be contained in the Collateral File or the Loan File contains any term or provision that would or reasonably could be expected to render the Mortgage Loan or any Mortgage Loan Document unenforceable, void, or voidable, in whole or in part. The Mortgage Loan has not been paid in full prior to the Settlement Date and neither the Seller nor its servicer has received any request for a payoff statement relating to the Mortgage Loan.

(d)    Future Advances. The original principal amount of the Mortgage Loan (net of any discounts) has been fully advanced or disbursed to the Mortgagor, there is no requirement for future

DocuSign Envelope ID: 4A839171-A7D5-4EB2-A699-FA56BA591856

advances, and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any Escrow Funds therefor have been satisfied. All costs, fees, and expenses incurred in connection with the application, processing, underwriting, approval, documentation, settlement of the Mortgage Loan and the recording of the Mortgage Instrument and all assignments thereof have been paid in full and the Mortgagor is not entitled to a refund of any of the foregoing, in whole or in part. All future advances that were made in connection with the Mortgage Loan have been consolidated with the outstanding principal amount secured by the Mortgage Instrument, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan. The lien of the Mortgage Instrument securing the consolidated principal amount of the Mortgage Loan is expressly insured as having first-priority by a lender's policy of title insurance that satisfies the requirements set forth in clause (f) of this Section 5.

(e)    <u>Lien Priority</u>. The Mortgage Instrument and each assignment thereof has been duly executed, acknowledged, and recorded (or submitted to the applicable recording office for recording), and creates (or upon recording will create) a legal, valid, binding, and subsisting first-priority lien upon the Mortgaged Property, subject only to Permitted Encumbrances. The Mortgaged Property is not encumbered by any Encumbrance that is senior to or coordinate with the lien of the Mortgage Instrument, except for (i) liens for property taxes and special assessments not yet due and payable, and (ii) covenants, conditions easements, restrictions, rights of way, and other matters of public record that (A) are generally acceptable to the applicable Agency and prudent mortgage lending institutions and are specifically identified in the lender's policy of title insurance referenced in clause (f) of this Section 5, and (B) neither interfere with the benefits of the security intended to be provided by the Mortgage Instrument nor impair the habitability, marketability, use, or value of the Mortgaged Property (clauses (i) and (ii) collectively, "<u>Permitted Encumbrances</u>"). The Mortgaged Property is not encumbered by any homeowners' association liens, Home Energy Renovation Opportunity ("<u>HERO</u>") liens, involuntary liens, judgment liens, judicial liens, mechanic's liens, materialman's liens, municipal liens, non-consensual liens, Property Assessed Clean Energy ("<u>PACE</u>") liens, statutory liens, or similar Encumbrances. If the Mortgage Instrument is a deed of trust, then an authorized and duly qualified trustee has been properly designated and currently serves in such capacity, and no costs, expenses, or fees are or will become due or payable by the Purchaser to such trustee.

(f)    <u>Title Insurance</u>. A valid and enforceable lender's policy of title insurance has been issued and is in place with respect to the Mortgage Loan in accordance with all Applicable Requirements. The form and substance of such policy of insurance complies with all Applicable Requirements, is in full force and effect without any unpaid premiums or charges, has been issued by an Insurer that is acceptable to the applicable Agency, insures that the lien of the Mortgage Instrument is a valid first-priority lien on the Mortgaged Property therein described and that the Mortgaged Property is free and clear of all Encumbrances having priority over the lien of the Mortgage Instrument, and provides all coverages in all amounts that, in each case, are required by applicable Agency Requirements. No claims have been made under any such policy of insurance. There has been no error, action, inaction, misstatement, or omission by any Covered Person that reasonably could be expected to result in the cancellation, denial, impairment, revocation, or termination of coverage under any such policy of insurance, and no circumstance has occurred that, with or without notice or the lapse of time or both, reasonably could be expected to result in the cancellation, denial, impairment, revocation, or termination of coverage under any such policy of insurance. All conditions to the validity of each such policy of insurance have been continuously and properly satisfied. No Covered Person has received notice from any Person of the cancellation, reduction, modification, or termination of any policy of insurance. All provisions of each policy of insurance have been and are being complied with.

DocuSign Envelope ID: 4A830171-A7DE-4EB2-A699-FA58BA591856

(g)      Defaults and Waivers. No Default or Delinquency has occurred, and no circumstance has occurred that, with or without notice or the lapse of time or both, reasonably could be expected to result in a Default or Delinquency. No Mortgage Loan Document or other document required to be contained in the Collateral File or the Loan File contains any term or provision that has been altered, amended, extended, impaired, modified, or waived, in whole or in part, and no document has been executed that would effect any such alteration, amendment, extension, impairment, modification, or waiver, in whole or in part. No Covered Person has waived any Default or Delinquency, nor has any Covered Person waived any action or inaction by the Mortgagor if the failure of such action or inaction would cause a Default or Delinquency.

(h)      Custodial Accounts. All payments received by or on behalf of any Covered Person with respect to the Mortgage Loan have been and will be remitted and properly accounted for in accordance with all Applicable Requirements. All Custodial Accounts required to be maintained by any Covered Person have been and will be established and continuously maintained in accordance with all Applicable Requirements. All Custodial Funds received by or on behalf of any Covered Person have been and will be deposited in the appropriate Custodial Accounts in accordance with all Applicable Requirements and have been and will be maintained in and disbursed from such Custodial Accounts in accordance with all Applicable Requirements.

(i)      Hazard and Flood Insurance. A valid and enforceable policy of hazard insurance (and, if required pursuant to applicable Agency Requirements, flood insurance) has been issued and is in place with respect to the Mortgaged Property in accordance with all Applicable Requirements. The form and substance of each such policy of insurance complies with all Applicable Requirements, is in full force and effect without any unpaid premiums or charges, has been issued by an Insurer that is acceptable to the applicable Agency, insures against loss resulting from fire, hail, hurricane, windstorm, and all other casualties and perils against which applicable Agency Requirements require coverage, and provides all coverages in all amounts that, in each case, are required by applicable Agency Requirements. There has been no error, action, inaction, misstatement, or omission by any Covered Person that reasonably could be expected to result in the cancellation, denial, impairment, revocation, or termination of coverage under any such policy of insurance, and no circumstance has occurred that, with or without notice or the lapse of time or both, reasonably could be expected to result in the cancellation, denial, impairment, revocation, or termination of coverage under any such policy of insurance. All conditions to the validity of each such policy of insurance have been continuously and properly satisfied. No Covered Person has received notice from any Person of the cancellation, reduction, modification, or termination of any policy of insurance. All provisions of each policy of insurance have been and are being complied with.

(j)      Mortgaged Property. The Mortgaged Property (i) consists of a fee-simple estate in a single parcel or contiguous parcels of real property located in the conterminous United States, and (ii) is improved by a 1-4 family residential dwelling, the condition, construction, location, occupancy, type, and use of which complies with applicable Agency Requirements. The Mortgaged Property is in good repair and there is no physical damage to the Mortgaged Property, except to the extent such damage does not impair the habitability, marketability, use, or value of the Mortgaged Property. There is no pending or threatened Action or Claim relating to ownership, occupancy, or use of the Mortgaged Property or for the total or partial condemnation, possession, or taking of the Mortgaged Property. All of the improvements that were included for the purpose of determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of such Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property. The Mortgaged Property is not and has not been affected by the presence of, or used for the purpose of disposing, generating, releasing, storing, or treating, any "hazardous material," "hazardous substance," "hazardous waste," "solid waste," or "toxic substance," as those terms are defined pursuant to Applicable Law. No Covered Person has received notice from any Person alleging or asserting that any aspect of the Mortgaged Property fails to comply with Applicable Law or the terms of the Mortgage Loan Documents. The Mortgaged Property is not and, on the

DocuSign Envelope ID: 4A839171-A7DF-4EB2-A699-FA568A591856

Transfer Date, will not be located in a FEMA "Designated Area," as that term is defined pursuant to 44 C.F.R. § 206.2.

(k)     Collateral File and Loan File. The Collateral File and the Loan File each contains or, on or before the Transfer Date, will include all Mortgage Loan Documents and other documents that are (i) required to be included therein pursuant to Applicable Requirements, and (ii) necessary to foreclose upon the Mortgaged Property and to evidence the entire agreement of the parties to the Mortgage Loan. The complete Collateral File has been or, on or before the Transfer Date, will be delivered to the Document Custodian in accordance with all Applicable Requirements, and the complete Loan File has been delivered to the Purchaser in accordance with all Applicable Requirements. No Mortgage Loan Document or other document required to be contained in the Collateral File or the Loan File contains any inaccurate, incomplete, incorrect, or untrue statement of fact or omits to state any fact that is required to be stated therein or is necessary to make any other document, information, report, schedule, or statement not inaccurate, incomplete, incorrect, untrue, or otherwise not misleading.

(l)     Good Title. On and as of the Settlement Date, the Seller (i) is the sole beneficial, equitable, and legal owner and record holder of good, indefeasible, and marketable title — free and clear of any Encumbrances — to any and all right, title, and interest in, to, and under the Servicing Assets related to the Mortgage Loan, and (ii) has not previously assigned, conveyed, encumbered, hypothecated, pledged, sold, or otherwise transferred any right, title, or interest in, to, or under such Servicing Assets. The assignment, sale, and transfer by the Seller to the Purchaser of the Servicing Assets pursuant hereto is intended and effective to vest in the Purchaser good, indefeasible, and marketable title — free and clear of any Encumbrances — to all right, title, and interest in, to, and under such Servicing Assets. The Seller is not contractually or otherwise legally obligated to sell or offer to sell the Servicing Assets related to any Mortgage Loan to any Person other than the Purchaser, and the Seller is not contractually or otherwise legally prohibited from selling or offering to sell the Servicing Assets related to any Mortgage Loan to the Purchaser.

(m)     No Fraud. The Mortgage Loan is not, and at all times on and before the Transfer Date will not be, subject to or affected by (i) any error, fraud, identify theft, negligence, misconduct, misstatement, omission, violation of Applicable Requirements, or similar occurrence by any Covered Person, or (ii) any action or inaction by Covered Person that would or reasonably could be expected to impair the collectability, enforceability, transferability, validity, or value of the Mortgage Loan, the related Servicing Assets, or the Purchaser's interest therein. All of the documents and information submitted in connection with the origination, Servicing, and delivery of the Mortgage Loan, or the sale of the related Servicing Assets, were not altered or falsified, do not contain any inaccurate, incomplete, incorrect, or untrue statement of fact, and do not omit to state any fact that is required to be stated therein or is necessary to make any other document, information, report, schedule, or statement not inaccurate, incomplete, incorrect, untrue, or otherwise not misleading. No Covered Person has made any representations or statements to the Mortgagor that are inconsistent with the Mortgage Loan Documents. No Covered Person has received notice from any Person alleging or asserting any of the foregoing.

(n)     Escrow Items. If the Mortgage Loan Documents require an escrow account to be maintained by the Mortgagor for the payment of Escrow Items, then each Covered Person has (i) computed the amount of all Escrow Items and Escrow Funds in accordance with all Applicable Requirements, (ii) collected all Escrow Funds and disbursed all Escrow Items in accordance with all Applicable Requirements, and, when required by the applicable Servicing Agreement, has advanced its own funds to pay any Escrow Items for which the Escrow Funds were insufficient, and (iii) timely provided to the Mortgagor all required disclosures, notices, and statements relating to all Escrow Funds and disbursements in accordance with all Applicable Requirements. All undisbursed Escrow Funds are in the possession, custody, or control of the Seller. All Escrow Items that became due and payable on or before the Settlement Date, and that will

become due and payable within thirty (30) days after the Transfer Date, have been or will be timely and fully paid by the Mortgagor or advanced by the Seller in accordance with all Applicable Requirements. There are no deficiencies with respect to any Escrow Funds for which customary arrangements regarding the repayment thereof have not been made in accordance with all Applicable Requirements, and no Escrow Items or other amounts due or payable from the Mortgagor have been capitalized or added to the indebtedness evidenced by the Mortgage Note or secured by the Mortgage Instrument.

(o)    Seller Advances. All Seller Advances (i) have been and will be made in accordance with all Applicable Requirements, (ii) are valid and subsisting accounts owing to the Seller which are carried on its books at values determined in accordance with generally accepted accounting principles, (iii) are substantiated by customary documentation which has been or, promptly upon request by the Purchaser, will be provided to the Purchaser, and (iv) are allowable and eligible for reimbursement, without curtailment or reduction, from the applicable Agency pursuant to applicable Agency Requirements. No Seller Advance has been (i) recovered by or reimbursed to any Covered Person in whole or in part, (ii) denied or rejected for recovery by or reimbursement to any Covered Person in whole or in part, or (iii) subject to any Claim by or against any Covered Person.

(p)    Indorsements and Assignments. If the Mortgage Loan is a MERS Mortgage Loan, then the Mortgage Instrument (i) names MERS as the mortgagee in accordance with all Applicable Requirements, or (ii) has been duly and properly assigned to MERS in accordance with all Applicable Requirements. The Collateral File contains all documents necessary to evidence (i) a complete and unbroken chain of valid indorsements of the related Mortgage Note from the original payee to the applicable Agency or "in blank," and (ii) a complete and matching chain of recorded assignments of the related Mortgage Instrument from the original mortgagee to MERS. If the Mortgage Loan is a Non-MERS Mortgage Loan, then the Collateral File contains all documents necessary to evidence (i) a complete and unbroken chain of valid indorsements of the related Mortgage Note from the original payee to the applicable Agency or "in blank," and (ii) a complete and matching chain of recorded assignments of the related Mortgage Instrument from the original mortgagee to the applicable Agency or "in blank."

(q)    Accuracy of Data. All information set forth in the Loan File, the Preliminary Mortgage Loan Schedule, the Mortgage Loan Schedule, and any other data file or certification, document, instrument, file, report, schedule or statement furnished or to be furnished by or on behalf of the Seller, its Affiliates, or its or their respective Representatives to the Purchaser, its Affiliates, or its or their respective Representatives with respect to the Mortgage Loan or the related Servicing Assets (i) is and will be true, correct, and complete on and as of the date thereof, and (ii) does and will accurately reflect the information in the Seller's books and records and the Loan File on and as of the date of delivery. All representations and warranties set forth in this Agreement are true and correct on and as of each date such representations and warranties were made. All accounts, books, and records of each Covered Person relating to the Mortgage Loan and the related Servicing Assets are true, correct, complete, and maintained in accordance with applicable Agency Requirements and Accepted Servicing Practices.

(r)    Tax Contracts and Flood Determinations. The Mortgage Loan is subject to (i) a life-of-loan Tax Contract that is issued and monitored by Lereta, LLC with respect to the Mortgage Loan and the related Mortgaged Property, and (ii) a Flood Determination that is issued and certified by Lereta, LLC with respect to the Mortgage Loan and the related Mortgaged Property. Each such Tax Contract and Flood Determination (i) is valid, binding, enforceable, and in full force and effect without any unpaid premium or other amount due or payable, (ii) is fully paid by the Seller and freely transferrable to and by the Purchaser, (iii) will be transferred to the Purchaser on or before the Transfer Date, in each case in accordance with all Applicable Requirements and at no cost or expense to the Purchaser, and (iv) complies, in both form and substance, with all Applicable Requirements.

(s)    <u>Predatory Lending</u>. Regardless of whether the originator is exempted by means of federal preemption or otherwise, the Mortgage Loan (i) is not a "high-cost mortgage" for purposes of the Home Ownership and Equity Protection Act ("<u>HOEPA</u>") and does not have an "annual percentage rate" or total "points and fees," as those terms are defined pursuant to HOEPA, that equal or exceed the applicable thresholds imposed by HOEPA, (ii) is not categorized as "Covered" or "High Cost" pursuant to Appendix E of the Standard & Poor's LEVELS® Glossary and does not have characteristics that would or reasonably could be expected to result in the Mortgage Loan having a percentage listed under the Indicative Loss Severity Column in the Standard & Poor's Anti-Predatory Lending Law Update Table, and (iii) is not an "abusive," "covered," "high cost," "high risk," "predatory," "threshold," "unfair," or similarly classified loan for purposes of any Applicable Law that imposes heightened regulatory scrutiny or additional legal liability for residential mortgage loans which have high interest rates, points, or fees (collectively, "<u>Predatory Lending Laws</u>") and does not violate any Predatory Lending Laws. The Mortgage Loan complies with the anti-predatory lending eligibility requirements of the applicable Agency.

(t)    <u>Agency Matters</u>. The Preliminary Mortgage Loan Schedule and the Mortgage Loan Schedule each accurately identify the applicable Agency with respect to the Mortgage Loan. The Seller (i) has provided and will provide to the applicable Agency all documents, information, reports, statements, and other submissions required to be submitted by the Seller to such Agency in accordance with applicable Agency Requirements, (ii) has remitted and will remit to the applicable Agency all advances, charges, expenses, fees, payments, and other amounts required to be remitted by the Seller to such Agency in accordance with applicable Agency Requirements, and (iii) has disclosed and will disclose to the Purchaser in writing all variances, waivers, and other non-standard terms or provisions relating to the certification, recertification, or Servicing of the Mortgage Loan. The solicitation, application, processing, underwriting, approval, documentation, settlement, insuring, pooling, securitization, Servicing, and sale of the Mortgage Loan and the related Servicing Assets has complied with applicable Agency Requirements. The Mortgage Loan is not subject to any Recourse Obligation and no circumstance has occurred that, with or without notice or the lapse of time or both, does or reasonably could be expected to give rise to any Recourse Obligation. All representations and warranties made by any Covered Person to the applicable Agency with respect to the Mortgage Loan (i) were true and correct on and as of each date such representations and warranties were made and remain true and correct on and as of each date the representations and warranties in this Section 5 are made, and (ii) are incorporated by reference herein, made an integral part hereof, and restated by the Seller to and for the benefit of the Purchaser on and as of each date the representations and warranties in this Section 5 are made.

(u)    <u>Servicing Agreement</u>. The applicable Servicing Agreement is in full force and effect, and does not contain or is otherwise subject to any terms or provisions that impose upon the Servicer any duties, liabilities, obligations, or responsibilities other than those typically imposed by the applicable Agency upon a servicer of mortgage loans of the same type as the Mortgage Loan. No party to the applicable Servicing Agreement has provided notice to any other party declaring a breach thereof, noticing a default thereunder, or seeking to amend, modify, or terminate such Servicing Agreement or any party's rights or obligations thereunder. No portion of the Servicing Fee payable to the Servicer pursuant to the applicable Servicing Agreement has been assigned, conveyed, encumbered, hypothecated, pledged, sold, or otherwise transferred to any Person other than Purchaser. The Seller (a) has taken or caused to be taken all actions necessary to request all Servicing Agreement Consents required by applicable Agency Requirements for both Parties to consummate the transactions contemplated by this Agreement with respect to the Servicing Assets and the related Mortgage Loan, and (b) has received or, before the Transfer Date, will receive all Servicing Agreement Consents required by applicable Agency Requirements for both Parties to consummate the transactions contemplated by this Agreement with respect to such Servicing Assets and the related Mortgage Loan, in each case without conditions or restrictions of any kind and without adverse effect upon or modification to the Purchaser's rights, obligations, or liabilities with respect to such Servicing Assets or the related Mortgage Loan.

(v)     <u>Government Mortgage Loans</u>. The Mortgage Loan is a Government Mortgage Loan, then (i) the Mortgage Loan (A) is included in a "MBS Program Pool," as that term is defined pursuant to applicable GNMA Requirements, was delivered into the related Mortgage Pool in accordance with all applicable GNMA Requirements and all applicable FHA Requirements, USDA Requirements, or VA Requirements, and remains eligible for securitization into mortgage-backed securities guaranteed by GNMA, (B) has been underwritten, originated, and serviced in accordance with, and otherwise satisfies, all applicable GNMA Requirements and all applicable FHA Requirements, USDA Requirements, or VA Requirements, (C) is covered by a Government Backstop that (I) has been issued by FHA, USDA, or VA, (II) is in full force and effect without any unpaid fee, premium, or other amount due or payable to the applicable Agency, (III) covers the greatest extent of Losses in the maximum amounts permitted by the applicable Agency, and (IV) has not been tendered to or rejected by the applicable Agency for payment, and (D) is not a "Defective Mortgage," as that term is defined pursuant to applicable GNMA Requirements, and has not been affected by any error, action, inaction, misstatement, or omission by any Covered Person that reasonably could be expected to impair the benefits or coverage of the related Government Backstop or the eligibility of the Mortgage Loan for securitization into mortgage-backed securities guaranteed by GNMA, and (ii) the Collateral File (A) has been or, before the Transfer Date, will be delivered to the Document Custodian in accordance with all Applicable Requirements, and (B) includes or, before the Transfer Date, will include all Mortgage Loan Documents and other documents and instruments that are necessary for the related Mortgage Pool to receive "Final Certification" or "Recertification," as those terms are defined pursuant to applicable GNMA Requirements.

(w)     <u>Mortgage Pools</u>. The related Mortgage Pool is a "MBS Program Pool," as that term is defined pursuant to applicable GNMA Requirements, that (i) is properly balanced and fully funded, and was assembled, submitted, created, and administered in accordance with, and otherwise satisfies, all applicable GNMA Requirements, and (ii) either (A) has received "Initial Certification," as that term is defined pursuant to applicable GNMA Requirements, and will be eligible to receive "Final Certification," as that term is defined pursuant to applicable GNMA Requirements, on or before the one (1) year anniversary (or any shorter deadline imposed by applicable GNMA Requirements) of the related "Delivery Date," as that term is defined pursuant to applicable GNMA Requirements, or (B) has received "Final Certification," as that term is defined pursuant to applicable GNMA Requirements, and will be eligible to receive "Recertification," as that term is defined pursuant to applicable GNMA Requirements, on or before the one (1) year anniversary (or any shorter deadline imposed by applicable GNMA Requirements) of the Settlement Date. All Mortgage Loans and other mortgage loans included in the related Mortgage Pool satisfy all applicable Agency Requirements, and no Mortgage Loan or other mortgage loan included in the related Mortgage Pool is a "Defective Mortgage," as that term is defined pursuant to applicable GNMA Requirements.

(x)     <u>Enforceable Right of Foreclosure</u>. The Mortgage Instrument contains customary and enforceable provisions that entitle the mortgagee to accelerate payment of the indebtedness evidenced by the Mortgage Note and to realize (including by judicial foreclosure, non-judicial foreclosure, power of sale, or similar Action) against the Mortgaged Property all benefits of the lien of the Mortgage Instrument, upon the occurrence of (i) a monetary or non-monetary breach, default, event of acceleration, or event of default by the Mortgagor under the Mortgage Loan Documents, or (ii) a conveyance, Encumbrance, or other transfer by the Mortgagor of any right, title, or interest in, to, or under the Mortgaged Property without the mortgagee's prior written consent. There is no homestead or other exemption available to the Mortgagor or any other Person, nor any restriction on the mortgagee or any other Person, including any Applicable Law whether temporary or permanent in nature, that would or reasonably could be expected to delay, impair, or limit the ability or right of the Servicer to foreclose upon the Mortgage Instrument or to sell the Mortgaged Property. Upon the foreclosure of the Mortgage Instrument and sale of the Mortgaged Property pursuant to proper procedures, the Servicer of the Mortgage Loan will be able to deliver good and marketable title to the Mortgaged Property.

DocuSign Envelope ID: 4A839174-A7DE-4EB2-A699-FA56BA591856

(y)    No Adverse Events. The Mortgage Loan is not and has not been the subject of (i) any Action or Claim directly or indirectly relating to the Mortgage Loan or the related Servicing Assets, (ii) any grant of relief pursuant to the Homeowner Assistance Fund, the Home Affordable Modification Program, the Home Affordable Refinance Program, the Servicemembers Civil Relief Act, or any Loss Mitigation program, (iii) any determination by any Governmental Authority that an investment in the related Servicing Assets is or would be impermissible, unacceptable, unsafe, unsound, or require special classification, or (iv) any demand or request for cure, repurchase, indemnification, or any other monetary or non-monetary recourse, relief, or remedy (including any indemnification, make-whole, reimbursement, or repurchase alternative) by any Person. No circumstance has occurred that, with or without notice or the lapse of time or both, would or reasonably could be expected to result in any of the foregoing.

(z)    Mortgagor. The Mortgagor is (i) a natural person which (A) currently is a citizen of the United States and currently has a Social Security Number ("SSN") or Individual Taxpayer Identification Number ("ITIN"), or (B) currently is a lawful permanent resident or lawful non-permanent resident of the United States and currently has a SSN or ITIN as well as a verified immigration status that is evidenced by a valid employment authorization document ("EAD") or a Permanent Resident Card, a Temporary Work Visa, a Form I-551, or a I-551 Temporary Evidence Stamp, or (ii) a revocable inter-vivos trust which complies with applicable Agency Requirements. The Mortgagor (i) is not and has not been subject to, or is not and has not been identified as a "blocked person" or "specially designated national" for purposes of, Executive Order 13224 (the "Executive Order") and the regulations and rules promulgated by the United States Department of the Treasury Office of Foreign Assets Control (collectively, the "OFAC Regulations"), and (ii) is not the subject of any pending judicial foreclosure, non-judicial foreclosure, foreclosure alternative (e.g., compromise claim, deed-in-lieu of foreclosure, loan assumption, private sale, short sale, or similar foreclosure prevention program), or Insolvency Proceeding. The Mortgage Loan is not subject to nullification pursuant to the Executive Order or the OFAC Regulations.

(aa)    Originator. The Mortgage Loan was originated by the Seller or a mortgage lender that, on and as of the origination date, had each license, permit, qualification, and registration, or exemption from the foregoing, that was necessary for the Seller or such mortgage lender to originate, own, and service the Mortgage Loan in accordance with applicable Agency Requirements and Applicable Laws. Each Covered Person that holds, or has held and disposed of, any right, title, or interest in, to, or under the Mortgage Loan, whether as an assignee, mortgagee, pledgee, servicer, or otherwise, is or, during the period in which they held and disposed of such right, title, or interest, was in compliance with applicable Agency Requirements and Applicable Laws, including applicable licensure, permitting, qualification, registration, and other requirements of the jurisdiction where the Mortgaged Property is located.

SECTION 6.    REPRESENTATIONS AND WARRANTIES REGARDING THE PURCHASER.

As a material inducement to the Seller to enter into this Agreement, the Purchaser represents and warrants to the Seller, on and as of the Effective Date, the Settlement Date, and the Transfer Date:

(a)    this Agreement (i) has been duly authorized, executed, and delivered by the Purchaser, and (ii) constitutes a binding, enforceable, and valid obligation of the Purchaser, except as the enforceability hereof may be limited by (A) applicable bankruptcy, insolvency, liquidation, moratorium, receivership, reorganization, or similar Laws affecting the enforcement of creditors' rights, and (B) general principles of equity, whether enforcement is sought in a proceeding at law or in equity;

(b)    the Purchaser (i) is a limited liability company, duly organized, in good standing, and validly existing in accordance with the Laws of the State of Delaware, (ii) has all approvals, authorizations, and consents necessary for the Purchaser to execute, deliver, and perform this Agreement in accordance

DocuSign Envelope ID: 4A839174-A7DF-4EB2-A699-EA56BA591856

with all Applicable Requirements, and (iii) has not engaged any agent, broker, finder, or salesperson to whom the Seller would be obligated to pay a commission or compensation upon the consummation of the transactions contemplated hereby, absent a separate written agreement between the Purchaser and such agent, broker, finder, or salesperson;

(c)    the Purchaser's execution, delivery, and performance of this Agreement does not (i) conflict with or contravene any organizational or governing document of the Purchaser, (ii) constitute a breach of or default under any agreement, arrangement, or contract to which the Purchaser is a party, or (iii) violate any Law to which the Purchaser or its property is subject; and

(d)    no oral or written agreement, inducement, or promise relating to the purchase or sale of any Servicing Assets — other than those which are expressly included or specifically incorporated herein — has been relied upon by the Purchaser or shall be binding upon the Purchaser.

SECTION 7.    COVENANTS OF THE SELLER.

Subsection 7.01.    Document and Data Delivery.

(a)    Pre-Settlement Deliverables.

(i)    Agency Delivery File. Not later than five (5) Business Days before the Settlement Date, and at the Seller's sole cost and expense, the Seller shall deliver to the Purchaser or its designee a complete and correct Agency Delivery File for each Mortgage Loan in accordance with all Purchaser Requirements.

(ii)    Pre-Settlement Data File. Not later than one (1) Business Day before the Settlement Date, and at the Seller's sole cost and expense, the Seller shall transmit to the Purchaser or its designee a complete and correct Mortgage Loan Schedule in accordance with all Purchaser Requirements.

(b)    Post-Settlement Deliverables.

(i)    Collateral File. Not later than the Transfer Date, and at the Seller's sole cost and expense, the Seller shall deliver to the Document Custodian a complete Collateral File for each Mortgage Loan in accordance with all Applicable Requirements. If the Seller fails to timely and fully perform its obligations set forth in this Subsection 7.01(b)(i) with respect to any Mortgage Loan, then the Seller shall pay to the Purchaser an administrative fee of one hundred fifty and 00/100 dollars ($150.00) for each such Mortgage Loan not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

(ii)    Loan File. Not later than ten (10) days before the Transfer Date, and at the Seller's sole cost and expense, the Seller shall deliver to the Purchaser or its designee fully indexed digital images of a complete Loan File for each Mortgage Loan in accordance with all Purchaser Requirements. If the Seller fails to deliver a complete Loan File for any Mortgage Loan before the deadline set forth in the preceding sentence, then the Seller shall pay to the Purchaser an administrative fee of fifty and 00/100 dollars ($50.00) for each such Mortgage Loan not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email). If the Seller delivers any Loan File that does not contain a separately imaged *.pdf for each document required to be contained therein, then the Seller also shall pay to the Purchaser an additional administrative fee of twenty five and 00/100 dollars ($25.00) for each such Loan File not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

(iii)    Post-Settlement Data File. Not later than the second (2nd) Business Day of each calendar month following the Settlement Date through the first (1st) calendar month immediately following the Transfer Date, and at the Seller's sole cost and expense, the Seller shall transmit to the Purchaser or its designee a written schedule that includes, on a loan level basis as of the last calendar day of the prior calendar month, all information specified on Exhibit C hereto with respect to each Mortgage Loan (each, a "Post-Settlement Mortgage Loan Schedule"). The format, contents, and delivery method of each Post-Settlement Mortgage Loan Schedule shall be satisfactory to the Purchaser in its sole discretion.

(iv)    Property Inspection Reports. If any Mortgage Loan is located in a FEMA "Designated Area," as that term is defined pursuant to 44 C.F.R. § 206.2, on the Settlement Date or at any time during the Interim Servicing Period, then not later than the Transfer Date, and at the Seller's sole cost and expense, the Seller shall obtain and deliver to the Purchaser or its designee a current property inspection report for the Mortgaged Property (each, an "Inspection Report"). The form, substance, and provider of each Inspection Report shall be satisfactory to the Purchaser in its sole discretion. If (A) the Seller fails to timely and fully perform its obligations set forth in this Subsection 7.01(b)(iv) with respect to any Mortgage Loan, or (B) the Inspection Report for any Mortgage Loan identifies physical damage that has a Material Adverse Effect or impairs the habitability, marketability, use, or value of the Mortgaged Property then, in the case of (A) or (B), the Seller shall pay to the Purchaser the Servicing Assets Reimbursement Amount (without assessment of the administrative fee of one thousand five hundred and 00/100 dollars ($1,500.00)) for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email) and shall, if requested by the Purchaser and permitted by the applicable Agency, simultaneously repurchase such Servicing Assets from the Purchaser.

Subsection 7.02.        Transfer Notices and Reporting.

(a)    Agency Notices. If required pursuant to applicable Agency Requirements, then not later than the deadline required by applicable Agency Requirements, and at the Seller's sole cost and expense, the Seller shall prepare and dispatch with respect to each Mortgage Loan a written notice to the applicable Agency (i) informing that (A) the Servicing Assets related to such Mortgage Loan were sold by the Seller to the Purchaser on and as of the Settlement Date, and (B) the Servicing of such Mortgage Loan will be transferred by the Seller to the Purchaser or its designee on the Transfer Date, (ii) instructing that all correspondences, documents, invoices, notices, proceeds, and other items relating to such Mortgage Loan should be delivered to the Purchaser or its designee from and after the Transfer Date, and (iii) including any other information required pursuant to applicable Agency Requirements. Each such notice shall comply, in form, substance, and timing, with applicable Agency Requirements. Promptly upon the Purchaser's request, the Seller shall provide the Purchaser with a true and correct copy of each notice that is prepared or dispatched by or on behalf of the Seller pursuant to this Subsection 7.02(a).

(b)    Mortgagor Notices. If required pursuant to Applicable Law, then not later than the deadline required by Applicable Law, and at the Seller's sole cost and expense, the Seller shall prepare and dispatch with respect to each Mortgage Loan the written notice required to be provided by the transferor servicer pursuant to 12 C.F.R. 1024.33(b) in connection with the transfer of the Servicing of such Mortgage Loan. Each such notice shall comply, in form, substance, and timing, with applicable Agency Requirements. Promptly upon the Purchaser's request, the Seller shall provide the Purchaser with a true and correct copy of each notice that is prepared or dispatched by or on behalf of the Seller pursuant to this Subsection 7.02(b).

(c)    Insurer Notices. Not later than fifteen (15) days before the Transfer Date, and at the Seller's sole cost and expense, the Seller shall prepare and dispatch with respect to each Mortgage Loan a written notice to each Insurer (i) informing that the Servicing of such Mortgage Loan will be transferred to the Purchaser or its designee on the Transfer Date, and (ii) instructing that all correspondences, documents,

invoices, notices, proceeds, and other items relating to such Mortgage Loan should be delivered to the Purchaser or its designee from and after the Transfer Date. Each such notice to any Insurer also shall include an instruction (A) to change the mortgagee clause to "Village Capital Mortgage LLC ISAOA ATIMA, P.O. Box 29217, Phoenix, AZ 85038", and (B) to name the Purchaser and its successors and assigns as the sole insured and loss payee. Promptly upon the Purchaser's request, the Seller shall provide the Purchaser with a true and correct copy of each notice that is prepared or dispatched by or on behalf of the Seller pursuant to this Subsection 7.02(c).

(d)     Servicer Reporting. The Seller shall be solely responsible for preparing and filing, at the Seller's sole cost and expense, all reports, statements, and other submissions required to be filed with the Internal Revenue Service or any other Governmental Authority with respect to the Servicing of each Mortgage Loan during the period of time prior to the Transfer Date.

Subsection 7.03.     Escrow Items.

(a)     Escrow Payments. Not later than the Transfer Date, and at the Seller's sole cost and expense, the Seller shall pay (i) all unpaid Escrow Items, including all penalties and interest incurred as a result of the late payment or non-payment thereof, that were due and payable in connection with any Mortgage Loan prior to the Transfer Date, and (ii) all unpaid Escrow Items that will become due and payable in connection with any Mortgage Loan within thirty (30) days after the Transfer Date. If the Seller fails to timely and fully perform its obligations set forth in this Subsection 7.03(a) with respect to any Mortgage Loan, then the Seller shall pay to the Purchaser the amount of all late payment penalties imposed as a result of such failure not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

(b)     Escrow Interest. The Seller shall be solely responsible for calculating, in accordance with all Applicable Requirements and Accepted Servicing Practices, and shall be solely responsible for paying, at the Seller's sole cost and expense, all Escrow Interest that accrued in connection with each Mortgage Loan as of the Settlement Date. If the Purchaser becomes required to pay any Escrow Interest to a Mortgagor for any reason, then the Seller shall reimburse the Purchaser for all such amounts not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

Subsection 7.04.     Tax Contracts and Flood Determinations.

Not later than the Transfer Date, and at the Seller's sole cost and expense, the Seller shall transfer to the Purchaser in accordance with Applicable Requirements (i) a life-of-loan Tax Contract that is issued and monitored by Lereta, LLC, with respect to each Mortgage Loan and the related Mortgaged Property, and (ii) a life-of-loan Flood Determination that is issued and certified by Lereta, LLC, with respect to each Mortgage Loan and the related Mortgaged Property. Each such Tax Contract and Flood Determination shall be (i) valid, binding, enforceable, and in full force and effect without any unpaid premium or other amount due or payable, (ii) fully paid by the Seller and freely transferrable to and by the Purchaser, and (iii) comply, in both form and substance, with Applicable Requirements, including the representations and warranties set forth in clause (r) of Section 5. If the Seller fails to timely and fully perform its obligations set forth in this Subsection 7.04 with respect to any Tax Contract or Flood Determination, or if any Tax Contract or Flood Determination fails to comply with any Applicable Requirements, then, in each case, (i) the Purchaser may obtain a new Tax Contract or Flood Determination, as applicable, at the Seller's sole cost and expense, and (ii) the Seller shall reimburse the Purchaser for all such costs and expenses not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

Subsection 7.05.        Mortgage Assignments and MERS Registration.

(a)        Non-MERS Mortgage Loans. Not later than the Transfer Date, and at the Seller's sole cost and expense, the Seller shall (i) prepare and submit for recordation (A) all assignments necessary to assign to MERS each Mortgage Instrument related to each Non-MERS Mortgage Loan, and (B) all prior assignments necessary to evidence a complete and unbroken chain of recorded assignments of each Mortgage Instrument from the original mortgagee to MERS, (ii) designate Village Capital & Investment LLC DBA Village Home Mortgage (Org ID #1004919) as the "Servicer" on the MERS System with respect to each such Non-MERS Mortgage Loan, and (iii) remove each Person identified as an "Interim Funder" or "Warehouse Gestation Lender" on the MERS System with respect to the related Servicing Assets. The Seller shall deliver to the Purchaser or the Document Custodian copies of all such assignments not later than five (5) Business Days after the Seller's receipt thereof from the applicable recording office or otherwise.

(b)        MERS Mortgage Loans. Not later than the Transfer Date (but in no event later than any earlier deadline required by applicable MERS Requirements), and at the Seller's sole cost and expense, the Seller shall (i) designate Village Capital & Investment LLC DBA Village Home Mortgage (Org ID #1004919) as the "Servicer" on the MERS System with respect to each MERS Mortgage Loan and (ii) remove each Person identified as an "Interim Funder" or "Warehouse Gestation Lender" on the MERS System with respect to the related Servicing Assets.

Subsection 7.06.        Agency Consents and Pool Certifications.

(a)        Agency Consents. From and after the Effective Date, and at the Seller's sole cost and expense, the Seller shall use best efforts with time being of the essence to cooperate with the Purchaser and take or cause to be taken all actions that are appropriate, necessary, or requested by the applicable Agency or the Purchaser to request and receive all Servicing Agreement Consents required by applicable Agency Requirements for both Parties to consummate the transactions contemplated by this Agreement, in each case without conditions or restrictions of any kind and without adverse effect upon or modification to the Purchaser's rights, obligations, or liabilities with respect to any Mortgage Loan or the related Servicing Assets. If the Purchaser or the Seller fails to receive any such Servicing Agreement Consent before the Transfer Date (or any shorter deadline imposed by applicable Agency Requirements), then the Seller shall pay to the Purchaser the Servicing Assets Reimbursement Amount for all affected Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email) and shall, if requested by the Purchaser and permitted by the applicable Agency, simultaneously repurchase such Servicing Assets from the Purchaser.

(b)        Pool Certifications. From and after the Effective Date, and at the Seller's sole cost and expense, the Seller shall use best efforts with time being of the essence to cooperate with the Purchaser and take or cause to be taken all actions that are appropriate, necessary, or requested by the applicable Agency or the Purchaser to receive "Final Certification" or "Recertification," as those terms are defined pursuant to applicable GNMA Requirements, of each Mortgage Pool. If any Mortgage Pool fails to receive "Final Certification," as that term is defined pursuant to applicable GNMA Requirements, on or before the one (1) year anniversary (or any shorter deadline imposed by applicable GNMA Requirements) of the related "Delivery Date," as that term is defined pursuant to applicable GNMA Requirements, or if any Mortgage Pool fails to receive or "Recertification," as that term is defined pursuant to applicable GNMA Requirements, on or before the one (1) year anniversary (or any shorter deadline imposed by applicable GNMA Requirements) of the Settlement Date, then, in each case, such failure shall constitute a Defect and Recourse Obligation with respect to each Mortgage Loan included in such Mortgage Pool and the Seller shall, at the Purchaser's election in its sole discretion, either (i) post a letter of credit for the benefit of GNMA in accordance with applicable GNMA Requirements, or reimburse the Purchaser for all costs, fees,

and expenses incurred by the Purchaser in connection with its posting of such letter of credit, in each case not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email), or (ii) proceed in accordance with Subsection 11.02(c) with respect to each Mortgage Loan included in such Mortgage Pool, in each case not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

Subsection 7.07.    Further Assurances and Reporting.

(a)    Additional Actions. Promptly upon the Purchaser's request from time to time after the Effective Date, and at the Seller's sole cost and expense, the Seller shall cooperate with the Purchaser and its designees, shall take or cause to be taken all additional actions, and shall execute or cause to be executed all additional instruments, that are necessary or reasonably requested by the Purchaser or its designees to ensure the complete and timely consummation of the transactions contemplated hereby, including (i) the vesting of all right, title, and interest in, to, and under the Servicing Assets related to the Mortgage Loans, (ii) the transfer and performance of the Servicing of the Mortgage Loans, (iii) the "Initial Certification," "Final Certification," and "Recertification," as those terms are defined pursuant to applicable GNMA Requirements, of the Mortgage Loans and the related Mortgage Pools, and (iv) the investigation, prosecution, defense, or appeal of any Foreclosure Action, Insolvency Proceeding, Recourse Obligation, or other Action or Claim relating to any Mortgage Loan, Mortgaged Property, or Mortgagor.

(b)    Seller Records. Promptly upon the Purchaser's request from time to time after the Effective Date, and at the Seller's sole cost and expense, the Seller shall deliver to the Purchaser and its designees, or shall make available for inspection and copying by the Purchaser and its designees, all documents and information necessary or reasonably requested by the Purchaser and its designees to examine or evidence each Covered Person's compliance with all Applicable Requirements relating to any Mortgage Loan or the related Servicing Assets. Each such inspection shall be conducted upon reasonable advance notice and during normal business hours. In connection with each such inspection, the Seller shall, and shall cause its Representatives to, cooperate with the Purchaser and its designees and provide the Purchaser and its designees with reasonable access to the Seller's books and records, contractors and employees, properties and facilities, and information systems.

(c)    Supplementary Information. Promptly upon the Purchaser's request from time to time after the Effective Date, and at the Seller's sole cost and expense, the Seller shall deliver to the Purchaser such information relating to the Mortgage Loans and the Servicing Assets as is supplementary to the documents, information, reports, statements, and other submissions required to be provided by the Seller to the Purchaser pursuant to this Agreement.

(d)    Seller Reporting.

(i)    Material Events. Not later than five (5) Business Days after the Seller obtaining Knowledge of the occurrence of any of the following events at any time after the Effective Date, the Seller shall provide notice thereof to the Purchaser (A) any actual or suspected breach by the Seller of any covenant, representation, warranty, or other provision in this Agreement, (B) any anticipated, pending, or threatened (I) Action, Claim, or Order relating to any Mortgage Loan, the related Servicing Assets, this Agreement, or the transactions contemplated hereby, or the Seller's receipt of any demand, inquiry, notice, or request from any Governmental Authority relating to any of the foregoing, or (II) Insolvency Proceeding relating to the Seller, or (C) the occurrence of any circumstance that would or reasonably could be expected to (I) result in the dissolution, liquidation, reorganization, termination, or winding-up of the affairs of the Seller, or (II) have a Material Adverse Effect.

DocuSign Envelope ID: 4A839174-A7DE-4EB2-A699-FA56BA591856

(ii)     Government Requests. If the Purchaser receives any demand, inquiry, notice, or request from any Governmental Authority directly or indirectly relating to any Mortgage Loan or the related Servicing Assets, then, at the Seller's sole cost and expense, the Seller shall deliver all requested documents and information directly to such Governmental Authority (with a copy to the Purchaser) not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

(e)     Power of Attorney. The Seller hereby irrevocably appoints the Purchaser as the Seller's true and lawful attorney-in-fact, with full power of substitution, to take or cause to be taken, in the Seller's name and stead and on its behalf, all actions necessary to ensure the complete and timely consummation of the transactions contemplated hereby, including (i) the vesting of all right, title, and interest in, to, and under the Servicing Assets related to the Mortgage Loans, (ii) the transfer and performance of the Servicing of the Mortgage Loans, (iii) the "Initial Certification," "Final Certification," and "Recertification," as those terms are defined pursuant to applicable GNMA Requirements, of each Mortgage Loan and the related Mortgage Pool, and (iv) the investigation, prosecution, defense, or appeal of any Foreclosure Action, Insolvency Proceeding, Recourse Obligation, or other Action or Claim relating to any Mortgage Loan, Mortgaged Property, or Mortgagor. Promptly upon request by the Purchaser or any Subsequent Transferee, the Seller shall execute and deliver any requested number of Limited POAs in the form appended as Exhibit E hereto, which shall be in addition to the Limited POAs delivered by the Seller pursuant to Section 8.

Subsection 7.08.     Non-Solicitation.

From and after the Settlement Date, (i) the Seller shall not, and shall not cause, suffer, or permit its Affiliates or its or their respective Representatives to, directly or indirectly encourage, entice, or solicit any Mortgagor to pay off or refinance any Mortgage Loan, and (ii) the Seller shall use best efforts, including the exercise of any available contractual remedies, to cause its Affiliates and its and their respective Representatives to refrain from engaging in any solicitation that is prohibited pursuant to this Subsection 7.08. Notwithstanding the foregoing, (i) broadcast, online, and printed advertisements and promotions that are directed to the general public at large shall not constitute prohibited solicitation for purposes of this Subsection 7.08, and (ii) Mortgagors contacting the Seller directly without solicitation by the Seller or its Affiliates, or as otherwise approved by the Purchaser in writing, shall not constitute prohibited solicitation for purposes of this Subsection 7.08. If the Seller or its Affiliates refinances any Mortgage Loan (a) before the one (1) year anniversary of the Settlement Date, then the Seller shall pay to the Purchaser one hundred and 00/100 percent (100.00%) the Servicing Assets Reimbursement Amount (excluding the administrative fee of one thousand five hundred and 00/100 dollars ($1,500.00)) for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email), or (b) after the one (1) year anniversary of the Settlement Date but on or before the two (2) year anniversary of the Settlement Date, then the Seller shall pay to the Purchaser fifty and 00/100 percent (50.00%) of the Servicing Assets Reimbursement Amount (excluding the administrative fee of one thousand five hundred and 00/100 dollars ($1,500.00)) for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email). The Seller shall remit payment of all amounts due and payable to the Purchaser pursuant to this Subsection 7.08 not later than five (5) Business Days after the earlier of the closing date of such refinancing or the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

Subsection 7.09.     Interim Servicing; Servicing Advances; Servicing Transfer.

(a)     Interim Servicing. At all times during the Interim Servicing Period, and at the Seller's sole cost and expense, the Seller shall perform the Servicing of all Mortgage Loans on behalf and for the benefit of the Purchaser and the applicable Agency (i) in accordance with the terms of this Subsection 7.09 and

applicable Agency Requirements, Applicable Laws, and Accepted Servicing Practices, and (ii) with the same degree of care, diligence, prudence, and skill that the Seller uses when servicing for its own account mortgage loans of the same type as the Mortgage Loans. Specifically, and without limiting the generality of the foregoing, the Seller shall:

(i)       perform and transfer the Servicing of (A) each FHA Mortgage Loan in accordance with all FHA Requirements and all GNMA Requirements, (B) each USDA Mortgage Loan in accordance with all USDA Requirements and all GNMA Requirements, and (C) each VA Mortgage Loan in accordance with all VA Requirements and all GNMA Requirements;

(ii)      pursue the diligent collection and recovery of all Mortgage Loan Proceeds due and owing with respect to any Mortgage Loan when and as such Mortgage Loan Proceeds become due and payable;

(iii)     deposit into the Custodial Account, on a daily basis, all Mortgage Loan Proceeds collected or recovered by the Seller with respect to any Mortgage Loan, and maintain all such Mortgage Loan Proceeds in the Custodial Account until they are disbursed or remitted in accordance with this Subsection 7.09;

(iv)     make (A) all P&I Advances and other Servicing Advances that are required to be made pursuant to applicable Agency Requirements, and (B) all remittances and reporting that are required to be made to the applicable Agency in accordance with applicable Agency Requirements; and

(v)      perform such other duties and provide such other reports that are specifically requested or required by the Purchaser or any Governmental Authority, or that are customarily performed and provided by the Seller or prudent mortgage lenders in connection with the Servicing of residential mortgage loans of the same type as the Mortgage Loans.

Notwithstanding the foregoing or any other provision in this Agreement, the Seller shall not take, and shall not cause, suffer, or permit to be taken, any action in connection with any of the following events without the Purchaser's prior written consent, except to the extent expressly required by applicable Agency Requirements:

(i)       any request for Loss Mitigation relief with respect to any Mortgage Loan;

(ii)      any pending or threatened Foreclosure Action, Insolvency Proceeding, or other Action or Claim with respect to any Mortgage Loan or Mortgaged Property; or

(iii)     any disbursement of Seller Advances in excess of two thousand five hundred and 00/100 dollars ($2,500.00) with respect to any Mortgage Loan.

In performing its duties, obligations, and responsibilities under this Subsection 7.09, the Seller may delegate discrete Servicing functions to one or more subservicers or subcontractors; provided however, (x) the Seller shall not delegate any portion of the Servicing functions to any subservicer without the prior written approval of the Purchaser, and (y) the use by the Seller of any subservicer or subcontractor shall not release the Seller from any of its respective obligations hereunder, and the Seller shall remain liable hereunder for any error, action, inaction, misstatement, or omission by or on behalf of any subservicer, any subcontractor, or any of their respective Representatives.

(b)      <u>Seller Advances</u>. If the Seller desires to seek reimbursement from the Purchaser for any Seller Advance made by the Seller in connection with any of the Mortgage Loans, then, not later than thirty

DocuSign Envelope ID: 4A838171-A7DF-4EB2-A699-FA56BA591856

(30) days after the Transfer Date, the Seller shall transmit to the Purchaser or its designee a compressed *.zip file containing (i) a data file (each, a "Seller Advance Schedule") itemizing all such Seller Advances, including the loan number, payment date, payment amount, payment purpose, payment status, payor name, payee name, recovered/reimbursed amount (if any), recovery/reimbursement date (if applicable), recovery/reimbursement source, and any other information reasonably requested by the Purchaser relating to each such Seller Advance, and (ii) digital images of customary documentation which evidences, to the Purchaser's reasonable satisfaction, the accuracy of all information set forth in such Seller Advance Schedule. Within thirty (30) days after the Seller's compliance with the requirements set forth in the preceding sentence, the Purchaser shall reimburse the Seller for one hundred and 00/100 percent (100.00%) of each such Seller Advance that the Purchaser reasonably determines constitutes a Reimbursable Seller Advance; provided however, if any breach by the Seller of any covenant, representation, warranty, or other provision in this Agreement has occurred and is continuing on any date on which any Reimbursable Seller Advance is to be reimbursed to the Seller, then the Purchaser shall not reimburse such Reimbursable Seller Advance until such breach has been cured to the Purchaser's satisfaction, at which point the Purchaser shall reimburse such Reimbursable Seller Advance to the Seller within ten (10) Business Days thereafter. In the event the Seller subsequently recovers or is reimbursed for all or part of any Seller Advance that was previously paid or reimbursed by or on behalf of the Purchaser pursuant to this Agreement, the Seller shall remit to the Purchaser the entire amount of such subsequent recovery or reimbursement not later than two (2) Business Days after the Seller's receipt thereof or the Purchaser's written demand (which may be delivered solely by email).

Notwithstanding the Purchaser's preliminary determination to the contrary, if the Purchaser or the applicable Agency subsequently determines that any Seller Advance which was previously paid or reimbursed by or on behalf of the Purchaser pursuant to this Agreement does not constitute a Reimbursable Seller Advance in whole or in part, or if the Purchaser fails to recover or be reimbursed for any Seller Advance within one (1) year following the Settlement Date, then the Seller shall remit to the Purchaser the amount of such Seller Advance (plus accrued interest thereon, at an annual rate (compounded daily, based upon a 30/360 convention, until the entire amount of the payment is paid in full) equal to the Purchaser Funds Rate (as defined in Subsection 11.04)) not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

(c)    Servicing Reporting and Remittance.

(i)    Agency Reporting and Remittance. Not later than the deadline required by applicable Agency Requirements during each calendar month of the Interim Servicing Period, the Seller shall (A) provide to the applicable Agency all documents, information, reports, statements, and other submissions required to be submitted by the Seller to such Agency in accordance with applicable Agency Requirements, and (B) remit to the applicable Agency all advances, charges, expenses, fees, payments, and other amounts required to be remitted by the Seller to such Agency in accordance with applicable Agency Requirements.

(ii)    Purchaser Reporting and Remittance. Not later than the fifth (5th) Business Day of each calendar month during the Interim Servicing Period (each, a "Remittance Date"), the Seller shall (A) deliver to the Purchaser, by email transmitted to the Representative designated by the Purchaser in writing, (I) a written report that details all collections, disbursements, recoveries, and other Servicing activities relating to the Mortgage Loans during the prior calendar month of the Interim Servicing Period, and (II) a copy of all documents, information, reports, statements, and other submissions required to be submitted by the Seller to the applicable Agency pursuant to Subsection 7.09(c)(i)(A), and (B) remit to the Purchaser, by wire transfer of immediately available funds to the depository account designated by the Purchaser in writing, all previously unremitted Servicing Fees, Ancillary Income, and other amounts payable to the Servicer pursuant to the applicable Servicing Agreement from the Settlement Date through

the last day of the prior calendar month of the Interim Servicing Period, net of all Interim Servicing Fees payable to the Seller for the prior calendar month of the Interim Servicing Period.

(d) <u>Servicing Compensation</u>. The Seller acknowledges and agrees that, from and after the Settlement Date, the Purchaser shall be entitled to receive all Servicing Fees, Ancillary Income, and other compensation payable to the Servicer under the applicable Servicing Agreement notwithstanding that Seller may continue to service the Mortgage Loans or report to the Agency during the Interim Servicing Period. As consideration for the Seller's performance of the Servicing of each Mortgage Loan during the Interim Servicing Period in accordance with this Subsection 7.09, the Seller shall be entitled to receive an interim servicing fee of seven and fifty/100 dollars ($7.50) per Mortgage Loan for each full calendar month of the Interim Servicing Period, prorated for any partial month based upon a 30/360 convention (the "<u>Interim Servicing Fee</u>").

(e) <u>Servicing Transfer</u>.

(i) <u>Servicing Data</u>. Not later than the fifteenth (15th) day of the calendar month immediately preceding the Transfer Date, the Seller shall transmit to the Purchaser or its designee in accordance with the Transfer Instructions and all other Purchaser Requirements, a preliminary conversion file and all other data and information requested by the Purchaser or its designee to onboard the Servicing of the Mortgage Loans. Not later than one (1) Business Day after the Transfer Date, the Seller shall transmit to the Purchaser or its designee in accordance with the Transfer Instructions and all other Purchaser Requirements, a final conversion file and all other data and information requested by the Purchaser or its designee to onboard the Servicing of the Mortgage Loans. The format, contents, and delivery method of all such conversion files, data, and information shall be satisfactory to the Purchaser in its sole discretion.

(ii) <u>Transfer Procedure</u>. On the Transfer Date, and at the Seller's sole cost and expense, the Seller shall (A) transfer to the Purchaser or its designee, in accordance with the Transfer Instructions and Accepted Servicing Practices, the Servicing of all Mortgage Loans, and (B) deliver to the Purchaser or its designee, in accordance with the Transfer Instructions and Accepted Servicing Practices, a complete Servicing File for each Mortgage Loan, including all other documents, instruments, and information requested or required to be delivered with respect to the Mortgage Loans pursuant to Applicable Requirements. Not later than one (1) Business Day after the Transfer Date, and at the Seller's sole cost and expense, the Seller shall remit to the Purchaser, by wire transfer of immediately available funds to the depository account designated by the Purchaser in writing, all Custodial Funds (including all Escrow Funds) that are in the possession, custody, or control of the Seller or its Representatives with respect to the Mortgage Loans. Notwithstanding the foregoing or any other provision in this Agreement, the Purchaser shall not be obligated to accept the Servicing of any Mortgage Loan for which the Purchaser has not received all Custodial Funds and Escrow Funds from the Seller.

(f) <u>Trailing Payments and Deliverables</u>. During the one (1) year period following the Transfer Date, and at the Seller's sole cost and expense, the Seller shall (i) remit to the Purchaser, by wire transfer of immediately available funds not later than one (1) Business Day after the Seller's receipt thereof, all Mortgage Loan Proceeds received by the Seller in connection with any Mortgage Loan, and (ii) forward to the Purchaser, by overnight courier not later than one (1) Business Day after the Seller's receipt thereof, all bills, correspondences, documents, invoices, inquiries, notices, payments, and other materials received by the Seller in connection with any Mortgage Loan. From and after the expiration of such one (1) year period, and at the Seller's sole cost and expense, the Seller shall return to the sender, by first class mail, all such items received by the Seller in connection with any Mortgage Loan, together with a written notice advising the sender that the Servicing of such Mortgage Loan has been transferred to the Purchaser.

SECTION 8.    CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER.

The obligations of the Purchaser to purchase the Servicing Assets on the Settlement Date and to remit payment of the Settlement Payment are subject to the satisfaction (or waiver by the Purchaser) of the following conditions:

(a)    all representations and warranties made by the Seller in this Agreement shall be true and correct in all material respects on and as of the Settlement Date;

(b)    all agreements, covenants, duties, obligations, responsibilities, and undertakings required to be performed by the Seller pursuant to this Agreement before the Settlement Date shall have been duly performed and satisfied in all material respects on and as of the Settlement Date; and

(c)    the Purchaser shall have received from the Seller on or before the Settlement Date—

(i)    an electronic copy of the Seller's executed counterpart of this Agreement,

(ii)    an electronic copy of the Seller's executed counterpart of the Purchase Confirmation, together with the Seller's executed counterpart of the Preliminary Funding Schedule appended as Schedule D.1 thereto and the Preliminary Mortgage Loan Schedule appended as Schedule D.2 thereto,

(iii)    an electronic copy of the Seller's completed and executed Officer's Certificate,

(iv)    twenty (20) wet-ink originals of the Seller's executed, notarized, and witnessed Limited POA, and

(v)    all other documents required to be delivered by the Seller to the Purchaser pursuant to this Agreement on or before the Settlement Date.

SECTION 9.    CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER.

The obligations of the Seller to sell the Servicing Assets on the Settlement Date are subject to the satisfaction (or waiver by the Seller) of the following conditions:

(a)    all representations and warranties made by the Purchaser in this Agreement shall be true and correct in all material respects on and as of the Settlement Date, except where such failure has not and would not, individually or in the aggregate, have or reasonably be expected to have a Material Adverse Effect;

(b)    all agreements, covenants, duties, obligations, responsibilities, or undertakings required to be performed by the Purchaser pursuant to this Agreement before the Settlement Date shall have been duly performed and satisfied in all material respects on and as of the Settlement Date, except where such failure has not and would not, individually or in the aggregate, have or reasonably be expected to have a Material Adverse Effect; and

(c)    the Seller shall have received from the Purchaser on or before the Settlement Date—

(i)    an electronic copy of the Purchaser's executed counterpart of this Agreement, and

(ii)    an electronic copy of the Purchaser's executed counterpart of the Preliminary Funding Schedule appended as Schedule D.1 to the Purchase Confirmation.

SECTION 10.  TERMINATION AND SURVIVAL.

Subsection 10.01.  Termination.

This Agreement may be terminated on or before the Settlement Date (a) by the mutual written agreement of both Parties, or (b) by the Purchaser upon written notice to the Seller (i) in the event any Governmental Authority whose approval or non-objection is required in connection with the performance of this Agreement or the consummation of the transactions contemplated hereby, (A) takes any action that declines to grant all required approvals and non-objections of this Agreement and the transactions contemplated hereby, or (B) states that it will not issue all required approvals or non-objections of this Agreement and the transactions contemplated hereby, or (ii) in the event any court of competent jurisdiction or other Governmental Authority issues any Order enjoining or restraining the performance of this Agreement or the consummation of the transactions contemplated hereby, or (iii) upon the occurrence of any Market Change Event. This Agreement may not be terminated by any Party after the Settlement Date.

Subsection 10.02.  Effect of Termination.

The effective date of any termination of this Agreement shall be the date on which the non-terminating Party receives written notice of termination from the terminating Party in accordance with Subsection 10.01 (the "Termination Date"). Notwithstanding the foregoing or any other provision in this Agreement, (a) the termination of this Agreement shall not affect the liability of any Party for its breach of any representation, warranty, covenant, or other provision herein on or before the Termination Date, and (b) the provisions of Section 10, Section 11, and Section 12 shall survive notwithstanding the termination of this Agreement.

Subsection 10.03.  Survival.

Except as otherwise provided in Subsection 10.02, all covenants, representations, warranties, and other provisions herein (including all of the Seller's cure, repurchase, and indemnification obligations hereunder) shall survive the delivery and sale of the Servicing Assets at all times from and after the Settlement Date notwithstanding the restrictive indorsement of any Mortgage Loan Document, the subsequent sale, securitization, or repurchase of any Mortgage Loan or the related Servicing Assets, the foreclosure or other liquidation of any Mortgaged Property, or the assignment or termination of this Agreement.

SECTION 11.  RIGHTS AND REMEDIES.

Subsection 11.01.  Reimbursement.

(a)  Prepaid Mortgage Loans. If any Mortgage Loan is paid in full on or before the last day of the fourth (4th) full calendar month following the Settlement Date, then the Seller shall pay to the Purchaser the Servicing Assets Reimbursement Amount (without assessment of the administrative fee of one thousand five hundred and 00/100 dollars ($1,500.00)) for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

(b)  Delinquent Mortgage Loans. If any Mortgage Loan that is fifty-nine (59) days or less Delinquent on the Settlement Date becomes sixty (60) days or more Delinquent with respect to the first (1st), second (2nd), third (3rd), or fourth (4th) scheduled Monthly Payment following the Settlement Date, then, in each case, the Seller shall pay to the Purchaser the Servicing Assets Reimbursement Amount for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's

written demand (which may be delivered solely by email), unless the Seller has already paid the Servicing Assets Reimbursement Amount for such Servicing Assets pursuant to Subsection 11.01(c).

(c)     Loss Mitigation Loans. If any Mortgage Loan is subject to Loss Mitigation on the Settlement Date or becomes subject to Loss Mitigation on or before the last day of the sixth (6th) full calendar month following the Settlement Date, and either (i) the Mortgagor fails to timely and fully perform such Loss Mitigation in accordance with its terms or (ii) such Mortgage Loan becomes subject to any Foreclosure Action or Insolvency Proceeding before, or within one hundred eighty (180) days after, the completion of such Loss Mitigation, then, in the case of (i) or (ii), the Seller shall pay to the Purchaser the Servicing Assets Reimbursement Amount for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email), unless the Seller has already paid the Servicing Assets Reimbursement Amount for such Servicing Assets pursuant to Subsection 11.01(b).

(d)     VA Mortgage Loans. The Seller shall reimburse the Purchaser for all Losses (including amounts curtailed or deducted by VA from the unpaid principal balance or any Government Backstop proceeds) incurred or sustained by the Purchaser as a result of, in connection with, or relating to, in whole or in part, any VA Mortgage Loan that (i) is subject to (A) a First Notice Or Filing which was made before the two (2) year anniversary of the Settlement Date, (B) a Foreclosure Alternative which was offered before the two (2) year anniversary of the Settlement Date, or (C) an Insolvency Proceeding which was commenced before the two (2) year anniversary of the Settlement Date, or (ii) is ninety (90) days or more Delinquent on the two (2) year anniversary of the Settlement Date. The Seller shall pay all such Losses to the Purchaser not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email).

Subsection 11.02.     Repurchase.

(a)     Defective Mortgage Loans. If any Party discovers any Defect with respect to any Mortgage Loan or any Servicing Assets, then (i) such Party shall promptly provide written notice thereof (which may be delivered solely by email) to the other Party, and (ii) the Seller shall use best efforts to cure such Defect within thirty (30) days after receipt of notice thereof (the "Cure Period"). If the Seller fails to cure such Defect before the expiration of the Cure Period and the Purchaser determines, in its sole but good faith and reasonable discretion, that such Defect is a Material Defect, then the Seller shall pay to the Purchaser the Servicing Assets Reimbursement Amount for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email) and shall, if requested by the Purchaser and permitted by the applicable Agency, simultaneously repurchase such Servicing Assets from the Purchaser.

(b)     Excluded Mortgage Loans. The Seller acknowledges and agrees that, notwithstanding any other provision in this Agreement, the Purchaser does not intend to pay any consideration for any Excluded Servicing Assets. If any Party discovers that the Purchaser has paid any consideration for any Excluded Servicing Assets pursuant hereto, then (i) such Party shall promptly provide written notice thereof (which may be delivered solely by email) to the other Party, and (ii) the Seller shall pay to the Purchaser the Servicing Assets Reimbursement Amount for such Excluded Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email) and shall, if requested by the Purchaser and permitted by the applicable Agency, simultaneously repurchase such Excluded Servicing Assets from the Purchaser.

(c)     Recourse Mortgage Loans. If any Mortgage Loan is subject to any Recourse Obligation on the Settlement Date, or if any Mortgage Loan becomes subject to any Recourse Obligation at any time following the Settlement Date, then, in each case, at the Purchaser's election in its sole discretion, either (i)

the Seller shall pay to the Purchaser the Mortgage Loan Repurchase Price for such Mortgage Loan not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email) and shall simultaneously repurchase such Mortgage Loan and the related Servicing Assets from the Purchaser, or (ii) the Seller shall (A) pay to the Purchaser the Servicing Assets Reimbursement Amount for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email) and shall, if requested by the Purchaser and permitted by the applicable Agency, simultaneously repurchase such Servicing Assets from the Purchaser, and (B) repurchase such Mortgage Loan directly from the applicable Agency or buyout such Mortgage Loan directly from the related Mortgage Pool in accordance with applicable Agency Requirements not later than the date on which the Purchaser would have been required to repurchase such Mortgage Loan from the applicable Agency or buyout such Mortgage Loan from the related Mortgage Pool in accordance with applicable Agency Requirements.

<div style="text-align:center">Subsection 11.03.    <u>Indemnification</u>.</div>

(a)    <u>Indemnification by the Seller</u>. In addition to the cure, reimbursement, repurchase, and other rights and remedies conferred upon the Purchaser pursuant to this Agreement or otherwise available to the Purchaser at law or in equity, the Seller also shall indemnify and hold harmless the Purchaser, its Affiliates, and its and their respective Representatives (each, a "<u>Purchaser Indemnitee</u>") against all Losses (including attorneys' fees attributable to the enforcement of the Seller's indemnification and other obligations hereunder) incurred or sustained by any Purchaser Indemnitee (collectively, "<u>Indemnified Purchaser Losses</u>") as a result of, in connection with, or relating to (a) any breach or asserted breach by the Seller of any covenant, representation, warranty, or other provision herein, in each case without regard to any knowledge or materiality qualification thereof, (b) any error, fraud, negligence, misconduct, misstatement, omission, violation of Applicable Requirements, or similar occurrence on the part of any Covered Person in connection with any Mortgage Loan or the performance of any duty, obligation, responsibility, or undertaking of the Seller hereunder, (c) any Defect or Document Exception that is not cured by the Seller within thirty (30) days after the earlier of the Seller's discovery thereof or receipt of the Purchaser's notice thereof, or (d) the Purchaser's (i) performance or satisfaction of any Recourse Obligation with respect to any Mortgage Loan or the related Servicing Assets and based, in whole or in part, upon any facts or circumstances that occurred on or before the Transfer Date, or (ii) investigation, prosecution, defense, or appeal of any Action or Claim relating to any Mortgage Loan or the related Servicing Assets and based, in whole or in part, upon any facts or circumstances that occurred on or before the Transfer Date. The Seller shall pay to the Purchaser all Indemnified Purchaser Losses due and payable pursuant to this Subsection 11.03(a) not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email). The indemnification obligations set forth in this Subsection 11.03(a) apply to Claims between the Parties as well as Claims by and against third-parties, and each Purchaser Indemnitee that is not Party is an intended third-party beneficiary of this Subsection 11.03(a).

(b)    <u>Indemnification by the Purchaser</u>. The Purchaser shall indemnify and hold harmless the Seller against all Losses (including attorneys' fees attributable to the enforcement of the Purchaser's indemnification and other obligations hereunder) that a court of competent jurisdiction determines, in a final non-appealable order, were incurred or sustained by the Seller (collectively, "<u>Indemnified Seller Losses</u>") directly and solely as a result of, in connection with, or relating to any failure by the Purchaser to perform the Servicing of any Mortgage Loan in accordance with Applicable Law or applicable Agency Requirements, unless such failure by the Purchaser results from any facts or circumstances for which the Seller would be obligated to indemnify any Purchaser Indemnitee pursuant to Subsection 11.03(a) had such Purchaser Indemnitee suffered Losses. The indemnification obligations set forth in this Subsection 11.03 apply to Claims between the Parties as well as Claims by and against third-parties.

Subsection 11.04.    <u>Delayed Performance</u>.

The Seller acknowledges and agrees that time is of the essence with respect to the payment and performance of its respective obligations hereunder. If the Purchaser fails to receive payment in full of any amount due or payable by the Seller pursuant hereto within thirty (30) days after the date such payment was due, then the entire amount of the payment shall accrue interest at an annual rate (compounded daily, based upon a 30/360 convention, until the entire amount of the payment is paid in full) equal to (a) the prime lending rate published in the Wall Street Journal on the date such payment was due, plus (b) five and 00/100 percent (5.00%) (the sum of (a) and (b), the "<u>Purchaser Funds Rate</u>"); provided however, the Seller shall not be required to pay the Purchaser Funds Rate on indemnification payments that are due and payable pursuant to Subsection 11.03(a) and are subject to a good faith dispute by the Seller.

Subsection 11.05.    <u>Recoupment and Setoff</u>.

The Seller hereby authorizes the Purchaser to apply, appropriate, offset, recoup, and setoff, from time to time with notice (which may be delivered solely by email), (a) all amounts now or hereafter owing by the Seller to the Purchaser pursuant to this Agreement, against (b) all amounts, balances, credits, deposits, Holdback Funds, indebtedness, and monetary obligations now or hereafter owing by the Purchaser to the Seller pursuant to this Agreement.

Subsection 11.06.    <u>Exercise of Remedies</u>.

The Seller acknowledges and agrees that each representation and warranty made by the Seller in this Agreement is a material inducement for the Purchaser to enter into this Agreement and shall survive the sale and delivery of the Servicing Assets. Accordingly, the Seller further acknowledges and agrees that (a) any knowledge or materiality qualification of any representation or warranty made by the Seller in this Agreement has been included in the interest of full and fair disclosure but without the intent of impairing or prejudicing any rights or remedies conferred upon the Purchaser pursuant to this Agreement or otherwise available to the Purchaser at law or in equity, and (b) if the factual substance of any representation or warranty made by the Seller in this Agreement was inaccurate on or as of any date such representation or warranty was made, then such inaccuracy shall constitute a Defect as well as a breach of such representation or warranty for all purposes hereof irrespective of any knowledge or materiality qualification of such representation or warranty.

The Seller acknowledges and agrees that (a) no rights or remedies conferred upon the Purchaser pursuant to this Agreement or otherwise available to the Purchaser at law or in equity shall be impaired, limited, or prejudiced as a result of its performance, non-performance, or partial performance of any pre- or post-purchase audit, diligence, examination, inquiry, or investigation relating to any Mortgage Loan or the related Servicing Assets, (b) all rights and remedies conferred upon the Purchaser pursuant to this Agreement are non-exclusive and cumulative of all other rights and remedies otherwise available to the Purchaser at law or in equity, any or all of which may be exercised by the Purchaser at any time and in any order determined by the Purchaser in its sole discretion, (c) each cause of action based upon the Seller's failure to perform any obligation pursuant to this Section 11 is intended and shall be deemed to be separate and distinct from any other cause of action based upon the underlying breach which gave rise to such obligation, and (d) each cause of action based upon the Seller's breach of any covenant, representation, warranty, or other provision herein shall be deemed to accrue upon the latest of (i) the Purchaser's discovery of such breach or receipt of notice thereof from the Seller, (ii) the Seller's subsequent failure to cure such breach, to indemnify all Purchaser Indemnitees therefor, and to repurchase all Mortgage Loans or related Servicing Assets affected thereby, and (iii) the Purchaser's subsequent demand upon the Seller for compliance herewith.

Subsection 11.07.    <u>Dispute Resolution</u>.

Any Action in which any Party, its Affiliates, or its or their respective Representatives, does or reasonably could be expected to assert against the other Party, its Affiliates, or its or their respective Representatives, any Claim arising under or relating to this Agreement or the transactions contemplated hereby (each, a "<u>Covered Action</u>") shall be commenced, heard, and determined exclusively in any state or federal court located in Clark County in the State of Nevada. Each Party (a) covenants not to commence any Covered Action except in such courts, (b) submits, for itself and its property, to the personal jurisdiction of such courts for purposes of each Covered Action, (c) waives, to the fullest extent permissible by Applicable Law, all objections that such courts are an inconvenient forum or improper venue for any Covered Action, and (d) agrees that the prevailing Party in each Covered Action shall be entitled to recover from the other Party all costs, expenses, and fees (including attorneys' fees) incurred by the prevailing Party in connection with the investigation, prosecution, defense, or appeal of each Covered Action. EACH PARTY EXPRESSLY, IRREVOCABLY, AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, ALL RIGHTS TO A TRIAL BY JURY IN CONNECTION WITH EACH COVERED ACTION.

SECTION 12.    <u>MISCELLANEOUS</u>.

Subsection 12.01.    <u>Notices</u>.

Any approval, consent, demand, notice, request, or other communication desired, permitted, or required to be provided by or to any Party pursuant hereto (a) may be provided by the noticing Party or its counsel, and (b) shall be made in writing, sent by certified mail (with postage prepaid and return receipt requested) or by a nationally-recognized overnight courier (with postage prepaid for signature-confirmed delivery the next Business Day), and addressed to the following recipient(s) specified by the receiving Party in this Subsection 12.01 or to any other recipient(s) designated by the receiving Party in accordance with this Subsection 12.01:

| | |
|---|---|
| If to the Purchaser: | Village Capital & Investment LLC<br>2550 Paseo Verde Parkway, Suite 100<br>Henderson, NV 89074<br>Attention: Legal |
| | With a copy to:    jotimpson@villagecapital.com<br>and<br>jason@goldsmithpllc.com |
| If to the Seller: | Change Lending, LLC d/b/a Change Home Mortgage<br>175 N. Riverview Drive, Suite C<br>Anaheim, CA 92808<br>Attention: Legal |
| | With a copy to:    jshirreffs@changemtg.com<br>and<br>notices@changemtg.com |

Any notice provided in strict accordance with this Subsection 12.01 shall conclusively be deemed to have been received three (3) Business Days after the date of dispatch (if sent by certified mail), or one (1) Business Day after dispatch (if sent by overnight courier), irrespective of whether the carrier delivers the notice and irrespective of whether the receiving Party accepts delivery thereof.

Subsection 12.02.    Payments, Shipments, and Costs.

(a)    Method of Payments. Except to the extent otherwise agreed upon by the Parties in writing, all payments desired, permitted, or required to be made by any Party to the other Party pursuant to this Agreement or in connection with the transactions contemplated hereby shall be made by wire transfer of immediately available funds in United States dollars to the depository account designated by the receiving Party in writing.

(b)    Shipment of Documents. All Mortgage Loan Documents shipped by or on behalf of the Seller or any Representative thereof to the Purchaser or any Representative thereof, including the Document Custodian, shall be (i) packaged and shipped at the Seller's sole cost and expense and risk of loss during transit, (ii) accompanied by an itemized manifest specifying the number of boxes included within the shipment, and an itemized inventory identifying each Mortgage Loan Document included within each box, and (iii) sent by a nationally-recognized overnight courier (with postage prepaid for signature-confirmed delivery the next Business Day) to the recipient(s) designated by the Purchaser in writing.

(c)    Costs and Expenses. Except as otherwise expressly provided herein, the Seller shall be solely responsible (and shall reimburse the Purchaser) for all out-of-pocket costs, expenses, fees, and other amounts incurred or sustained in connection with (i) the transfer of the Servicing of the Mortgage Loans, including all deboarding, onboarding, and conversion charges, (ii) the delivery of the Collateral Files and the delivery, imaging, indexing of the Loan Files, as well as the cure of all Document Exceptions, (iii) the preparation and recording of the Mortgage Loan Documents, (iv) the registration and transfer of the Mortgage Loans on the MERS System, (v) the "Initial Certification," "Final Certification," and "Recertification," as those terms are defined pursuant to applicable GNMA Requirements, of the Mortgage Loans and the related Mortgage Pools, (vi) the repurchase or buyout of the Mortgage Loans or the related Servicing Assets, (vii) the payment of all guaranty fees and other amounts that are payable to GNMA with respect to the period of time prior to the Settlement Date, including the guaranty fee that is attributable to the calendar month in which the Settlement Date occurs and is payable in the calendar month immediately following the calendar month in which the Settlement Date occurs, and (viii) the performance or enforcement of the Seller's respective duties, obligations, or responsibilities under this Agreement or any other Applicable Requirement. Except as otherwise expressly provided herein, the Purchaser shall be solely responsible for all out-of-pocket costs, expenses, fees, and other amounts (i) due or payable to the Document Custodian, except to the extent of any incremental charges attributable to any Document Exception or the Seller's failure to comply with Applicable Requirements, or (ii) incurred or sustained by the Purchaser in connection with the performance of its respective duties, obligations, or responsibilities under this Agreement or any other Applicable Requirement. Notwithstanding any provision herein, each Party shall be solely responsible for all commissions and compensation due to its own agents, brokers, finders, and salespersons.

Subsection 12.03.    Integration and Severability.

This Agreement (a) comprises the complete and final agreement by and between the Parties relating to the purchase and sale of the Servicing Assets, and (b) supersedes any prior or contemporaneous oral or written agreements by or between the Parties relating thereto, all of which shall be deemed to have merged herewith. The express terms of this Agreement shall control notwithstanding any inconsistent course of dealing or course of performance by the Parties.

Each Party expressly, irrevocably, and unconditionally waives, to the fullest extent permissible by Applicable Law, all objections that any provision herein is invalid or unenforceable as a matter of law or at equity. If any provision herein is declared invalid or unenforceable for any reason irrespective of the foregoing waiver, then the invalidity or unenforceability shall not affect the validity or enforceability of any other part of the same or any other provision. If the invalidity of any provision herein deprives any Party of the economic benefits intended to be conferred hereby, then the Parties shall use best efforts in good faith to negotiate any revisions or restructurings that are appropriate or necessary to confer substantially similar economic benefits without regard to such invalidity.

Subsection 12.04.    Amendment and Waiver.

No amendment or waiver of any provision in this Agreement, and no consent to any departure therefrom or default thereunder, (a) shall be effective unless it is made in writing, expressly recites that it is intended to amend or waive a specified provision herein, and is signed by both Parties, or (b) shall constitute or be construed as an amendment or waiver of any other provision herein or as consent to any other departure therefrom or default thereunder.

Subsection 12.05.    Assignment and Reconstitution.

This Agreement shall be binding upon, enforceable by, and inure to the benefit of, each Party and its respective successors and permitted assigns, notwithstanding the restrictive indorsement of any Mortgage Loan Document, the subsequent sale, securitization, or repurchase of any Mortgage Loan or the related Servicing Assets, or the assignment or termination of this Agreement; provided however, the Seller shall not assign, delegate, encumber, or otherwise transfer any of its respective rights or obligations hereunder without the Purchaser's prior written consent (which consent may be conditioned or withheld in the Purchaser's sole discretion), and any purported assignment, delegation, Encumbrance, or other transfer thereof without the Purchaser's prior written consent shall be null and void. This Agreement does not, is not intended to, and shall not be construed to, confer upon any Person (other than each Party and its respective successors and permitted assigns) any benefits, rights, or remedies hereunder, including the right to rely upon the representations and warranties set forth herein; provided however, the Seller acknowledges and agrees that each Purchaser Indemnitee is an intended third-party beneficiary of Subsection 11.03(a), and shall be entitled to enforce its or any other Purchaser Indemnitee's rights thereunder directly against the Seller.

From time to time, and without prior notice to or consent from the Seller, the Purchaser may assign this Agreement, in whole or in part, to one or more Subsequent Transferees in connection with one or more Reconstitutions relating to one or more Mortgage Loans or the related Servicing Assets. The Seller acknowledges and agrees that, effective immediately upon the Purchaser's assignment of this Agreement to any Subsequent Transferee in connection with the Reconstitution of any Mortgage Loan or the related Servicing Assets, (a) such Subsequent Transferee shall succeed to all rights and obligations of the "Purchaser" hereunder solely to the extent of and solely with respect to such Mortgage Loan or such Servicing Assets, (b) each reference to the "Purchaser" herein shall be deemed a reference to such Subsequent Transferee solely to the extent of and solely with respect to such Mortgage Loan or such Servicing Assets, and (c) this Agreement shall be deemed to be (i) a separate and distinct agreement by and between the Seller and such Subsequent Transferee solely to the extent of and solely with respect to such Mortgage Loan or such Servicing Assets, and (ii) a separate and distinct agreement by and between the Seller and each other purchaser to the extent of and with respect to its respective Mortgage Loans or Servicing Assets.

DocuSign Envelope ID: 4A838174-A7DE-4EB2-A699-EA56BA591856

Subsection 12.06.        Confidentiality and Safeguards.

(a)        Confidential Information. Each Party shall employ commercially reasonable procedures and take commercially reasonable efforts designed to preserve the confidentiality of this Agreement and the terms hereof, except to the extent the disclosure of which is made (i) to any Representative of such Party who reasonably needs to know the contents of this Agreement in connection with such Party's evaluation, performance, or enforcement of this Agreement or the transactions contemplated hereby, (ii) by such Party based upon a reasonable belief that such disclosure is required pursuant to any Applicable Law to which such Party or its property is subject, or (iii) by the Purchaser or any Subsequent Transferee in connection with a proposed, pending, or completed Reconstitution of any Mortgage Loan or the related Servicing Assets.

(b)        Consumer Information. The Seller shall strictly comply with all Privacy Laws applicable to any Consumer Information, and shall not disclose or use any Consumer Information in a manner inconsistent with any Privacy Law. Accordingly, the Seller covenants, represents, and warrants that it (i) has and shall maintain adequate administrative, physical, and technical safeguards designed to protect Consumer Information against unauthorized access, disclosure, and use, in a manner consistent with all Applicable Laws, and (ii) has and shall immediately notify the Purchaser of any actual or suspected access, disclosure, or use of any Consumer Information that reasonably could be expected to have a material and adverse effect upon the Purchaser.

Subsection 12.07.        Governing Law.

Except to the extent preempted by federal Law, this Agreement, each Party's respective rights and obligations hereunder, and all Claims arising hereunder or relating to the transactions contemplated hereby, shall be governed by the Laws of the State of New York without regard to any Applicable Law (other than Sections 5-1401 and 5-1402 of the New York General Obligations Law, which shall govern) that may recommend or require application of the Laws of any other state.

Subsection 12.08.        Execution and Counterparts.

The Parties may execute this Agreement in one or more counterparts, each of which shall be deemed an original and all of which shall constitute a single instrument. Each Party, to the fullest extent permitted by Applicable Law, including the federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, and any other federal, state, or local Law based upon on the Uniform Electronic Transactions Act or the Uniform Commercial Code (collectively, the "Electronic Signature Laws"), expressly, irrevocably, and unconditionally (a) consents to each Party's execution and delivery of this Agreement by electronic means, (b) intends for the Electronic Signature Laws to validate each Party's execution and delivery of this Agreement by electronic means, (c) waives all objections that this Agreement is invalid or unenforceable solely on the basis that it was executed or delivered by electronic means, and (d) agrees that all electronic signatures hereon or logically associated herewith shall have the same legal effect and validity as a manually executed signature, and that all electronic, photographic, and other reproductions hereof shall be binding, enforceable, and admissible as evidence to the same extent as an original irrespective of whether an original exists or is in the possession of the introducing Party.

[SIGNATURE PAGE FOLLOWS]

      IN WITNESS WHEREOF, the Purchaser and the Seller each has caused this Mortgage Servicing Rights Purchase and Sale Agreement to be duly executed and delivered on and as of the Effective Date first written above.

VILLAGE CAPITAL & INVESTMENT LLC,
as the Purchaser

By: _____

Name: Allen Knudson

Title: President

CHANGE LENDING, LLC DBA CHANGE HOME
MORTGAGE, as the Seller

By: _____

Name: Thedora Nickel

Title: Executive Director

EXHIBIT A
EXCLUDED MORTGAGE LOANS

For purposed hereof, each Mortgage Loan that satisfies any of the following criteria as of the Settlement Date shall constitute an Excluded Mortgage Loan; provided however, that the determination of whether a Mortgage Loan is a Delinquent Mortgage Loan shall be made as of June 30, 2023:

- Bankruptcy Loans: Any Mortgage Loan that is subject to any pending Insolvency Proceeding.

- Defaulted Loans: Any Mortgage Loan that (a) is sixty (60) days or more Delinquent as of June 30, 2023 ("Delinquent Mortgage Loan"), or (b) is subject to any continuing Default.

- Foreclosure Loans: Any Mortgage Loan that is subject to any pending or scheduled Foreclosure Action or has proceeded beyond the First Notice Or Filing.

- Litigation Loans: Any Mortgage Loan that is subject to any pending Action or Claim.

- Loss Mitigation Loans: Any Mortgage Loan that is subject to any pending Loss Mitigation activity or any pending request for Loss Mitigation relief.

- Recourse Loans: Any Mortgage Loan that is (a) subject to any outstanding Recourse Obligation, or (b) a "Defective Mortgage," as that term is defined pursuant to applicable GNMA Requirements.

- Special Feature Loans: Any Mortgage Loan that (a) is a construction loan, rehabilitation loan, renovation loan, or similar type of mortgage loan, (b) has a holdback or reserve or is not otherwise fully disbursed, (c) is a reverse mortgage loan or is not a closed-end mortgage loan, (d) has a negative amortization or does not have a stated maturity, (e) includes bi-weekly payment features, contingent interest features, cross-collateralization or cross-default provisions, dispute arbitration provisions, graduated payment features, interest-only features, prepayment penalty provisions, shared appreciation features, tying features, or other atypical loan features, or (f) is an "eMortgage," as that term is defined pursuant to applicable GNMA Requirements.

- Special Property Loans: Any Mortgage Loan that is secured by (a) real property which is (i) abandoned, condemned, unimproved, vacant, or subject to a demolition notice, or (ii) located outside the contiguous United States, (b) a ground lease, a leasehold interest, or any collateral other than a fee-simple interest in real property, or (c) a condotel, cooperative unit, family farm, geodesic dome, log home, mobile home, manufactured home for which the title policy referenced in clause (f) of Section 5 does not include an ALTA 7 endorsement, or other unique property type.

- Subordinate Loans: Any Mortgage Loan that is secured by a Mortgaged Property which is subject to any Encumbrance (other than Permitted Encumbrances) that is senior to or coordinate with the lien of the Mortgage Instrument.

- Subsidized Loans. Any Mortgage Loan that is (a) originated under or guaranteed, insured, or subsidized by (i) any federal, state, or local bond program or affordable housing, community lending, down payment assistance, loan guaranty, mortgage insurance, or similar loan program available from any Governmental Authority other than the applicable Agency, or (ii) the Section 184 Indian Home Loan Guarantee Program, the Section 184A Native Hawaiian Housing Guarantee Program, or the VA Vendee Loan Program, or (b) subject to right for relief under the Homeowner Assistance Fund, the Servicemembers Civil Relief Act, or any other financial assistance, hardship assistance, or similar loan program available from any Governmental Authority.

EXHIBIT B
LOAN FILE CONTENTS

For purposes hereof, the compilation of all documents specified below shall constitute a complete Loan File with respect to each Mortgage Loan:

1. An electronic copy of (a) the loan application, (b) the underwriting report, (c) the closing statement, and (d) each other application form, borrower correspondence, commitment letter, credit memorandum, disclosure statement, fee estimate, settlement statement, and other document relating to the application, underwriting, approval, or closing of the Mortgage Loan.

2. An electronic copy of (a) each bank statement, credit report, tax return, tax transcript, verification of assets, verification of employment, verification of income, and other document relating to the Mortgagor, and (b) documentation necessary to verify compliance with the ability to repay standards set forth in 12 C.F.R. § 1026.43(c) and 12 C.F.R. § 1026.43(e) is contained in the Loan File.

3. An electronic copy of (a) a photograph of the Mortgaged Property, (b) an appraisal report of the Mortgaged Property, (c) a title report relating to the Mortgaged Property, and (d) each certificate of occupancy, contract of sale, engineer report, environmental report, land survey, property photograph, site inspection, and other document relating to the Mortgaged Property.

4. An electronic copy of documentation necessary to verify that the discount points, escrow impounds, interest prepayments, origination fees, and other amounts paid by the Mortgagor in connection with the origination of the Mortgage Loan comply with all Applicable Requirements.

5. An electronic copy of each policy of hazard insurance, flood insurance, mortgage insurance, pool insurance, title insurance, and other policy of insurance relating to the Mortgage Loan, the Mortgage Instrument, or the Mortgaged Property.

6. An electronic copy of each Flood Determination and Tax Contract relating to the Mortgage Loan, including documentation necessary to verify that such Flood Determination and such Tax Contract have been assigned to the Purchaser.

7. If the Mortgagor is not a natural person, an electronic copy of each organizational and governing document of the Mortgagor, including documentation necessary to verify the Mortgagor's corporate authority to acquire and encumber the Mortgaged Property and to execute the Mortgage Loan Documents.

8. An electronic copy of each other document required to be held by the Purchaser pursuant to applicable Agency Requirements or necessary for the Purchaser to perform the Servicing of the Mortgage Loan in accordance with Applicable Requirements.

9. An electronic copy of (a) the complete Collateral File, and (b) the complete Servicing File.

EXHIBIT C
MORTGAGE LOAN SCHEDULE FIELDS

The Mortgage Loan Schedule shall set forth, on a loan-level basis, all of the following information with respect to each Mortgage Loan.

| | | | | |
|---|---|---|---|---|
| 1 | Loan # | | 44 | Current Index |
| 2 | Agency | | 45 | Margin |
| 3 | Product Program | | 46 | Margin Range |
| 4 | Note Rate | | 47 | Rate Chg Freq |
| 5 | Original Loan Amount | | 48 | Next Rate Chg Date |
| 6 | Current Balance | | 49 | First Rate Chg Date |
| 7 | P & I | | 50 | Initial Period |
| 8 | M & I | | 51 | P&I Chg Freq |
| 9 | T & I | | 52 | Next P&I Chg Date |
| 10 | Total Pmt | | 53 | First P&I Chg Date |
| 11 | Original Term | | 54 | Initial PI Chg Period |
| 12 | Stated Remaining Term | | 55 | Initial Cap |
| 13 | Closing Date | | 56 | Periodic Cap Inc |
| 14 | First Pmt Date | | 57 | Periodic Cap Dec |
| 15 | Next Due Date | | 58 | Life Of Loan Cap Inc |
| 16 | Maturity Date | | 59 | Life of Loan Cap Dec |
| 17 | Escrow Balance | | 60 | Maximum Rate |
| 18 | Esc Bal Orig | | 61 | Minimum Rate |
| 19 | PI Advances | | 62 | Bankrupt |
| 20 | UpFront MIP | | 63 | Foreclose |
| 21 | Escrow Payment | | 64 | REO Flag |
| 22 | Original LTV | | 65 | Litigation Flag |
| 23 | Current LTV | | 66 | Modified |
| 24 | CLTV | | 67 | Modified Date |
| 25 | DTI (both Front End and Bank End) | | 68 | Buydown Flag |
| 26 | Appraised Value | | 69 | Balloon Flag |
| 27 | Sale Price | | 70 | Int Only |
| 28 | No Units | | 71 | FHA_Insured_Date |
| 29 | MI Company | | 72 | HARP_Flag |
| 30 | MI Coverage | | 73 | FHA_Streamline_Flag |
| 31 | Loan Type | | 74 | VA_IRRRL_Flag |
| 32 | Property Type | | 75 | 203K_Flag |
| 33 | Loan Purpose | | 76 | Int Method |
| 34 | Occupancy | | 77 | Term Group |
| 35 | Lien Position | | 78 | Prepay Pen Term |
| 36 | Address | | 79 | Prepay Pen Indicator |
| 37 | City | | 80 | Prepay Penalty Description |
| 38 | State | | 81 | FICO Score |
| 39 | Zip | | 82 | Doc Type |
| 40 | Agency Code | | 83 | Payment History |
| 41 | Pool Number | | 84 | Primary Borrower Name |
| 42 | Orig P&I | | 85 | Secondary Borrower Name |
| 43 | Index Code | | 86 | Property Address |

| 87 | Mailing Address |
|-----|-----|
| 88 | Home Phone Number |
| 89 | Cell Phone Number (all on file – including co-borrower) |
| 90 | Work Phone Number |
| 91 | Primary Email (all on file – including co-borrower) |
| 92 | Secondary Email (all on file – including co-borrower) |
| 93 | Social Security # |
| 94 | Principle |
| 95 | Taxes |
| 96 | Insurance |
| 97 | FHA Case Number |
| 98 | VA Funding Fee |
| 99 | Inquired Payoff date |
| 100 | Requested Payoff date |
| 101 | Accrued Late Charges |
| 102 | Known Escrow Shortages |
| 103 | Gross Servicing Fee Rate (as a percentage) |
| 104 | Guaranty Fee Rate (as a percentage) |
| 105 | Escrow Advance Balance |
| 106 | Recoverable Advance Balance |
| 107 | Remittance Type |
| 108 | Express Consent – ACH Data Element (flag) |
| 109 | Express Consent – Automated Dialing Data Element (flag) |
| 110 | Veteran Status |
| 111 | Year Built |
| 112 | Title Will Be Held By |
| 113 | Manner Held |
| 114 | Year Lot Acquired |
| 115 | Original Cost |
| 116 | Date Of Birth |
| 117 | Marital Status |
| 118 | Years in School |
| 119 | No. of Dependents (Not listed by co-borrower) |
| 120 | Age of Dependents |
| 121 | Employer Name |
| 122 | Position |
| 123 | Years on Job |
| 124 | Years in Profession |
| 125 | Employer Street Number (Employer Street Address) |
| 126 | Employer Street Name (Employer Street Address) |

| 127 | Employer City |
|-----|-----|
| 128 | Employer State |
| 129 | Employer Zip |
| 130 | Work Phone |
| 131 | Self Employed |
| 132 | Base Income (Monthly Income) |
| 133 | Overtime (Monthly Income) |
| 134 | Bonuses (Monthly Income) |
| 135 | Commissions (Monthly Income) |
| 136 | Dividends/Interest (Monthly Income) |
| 137 | Other (Monthly Income) |
| 138 | Net Rental Income |

EXHIBIT D
FORM OF PURCHASE CONFIRMATION


This PURCHASE CONFIRMATION (this "Confirmation") is executed and delivered on June 29, 2023 (the "Settlement Date"), by CHANGE LENDING, LLC DBA CHANGE HOME MORTGAGE, a limited liability company organized pursuant to the laws of the State of California (together with its successors and permitted assigns collectively, the "Seller"), pursuant to that certain Mortgage Servicing Rights Purchase and Sale Agreement, dated as of June 29, 2023 (the "Purchase Agreement"), by and between the Seller and VILLAGE CAPITAL & INVESTMENT LLC, a limited liability company organized pursuant to the laws of the State of Delaware (together with its successors and permitted assigns collectively, the "Purchaser"). Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Purchase Agreement.

NOW, THEREFORE, in consideration of the mutual premises and agreements set forth in the Purchase Agreement and herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller hereby assigns, conveys, delivers, grants, releases, sells, and transfers unto the Purchaser, on and as of the Settlement Date, and subject to the terms and provisions set forth in this Confirmation and the Purchase Agreement, all right, title, and interest, whether then owned or thereafter acquired by the Seller, in, to, and under the Servicing Assets related to each Mortgage Loan identified in the Preliminary Mortgage Loan Schedule appended as Schedule D.2 hereto, as it may be amended by the Mortgage Loan Schedule appended as Schedule D.4 hereto (collectively, the "Conveyed Assets").

TO HAVE AND TO HOLD the Conveyed Assets unto the Purchaser and its successors and assigns forever, and the Seller does hereby bind itself and its successors and assigns TO WARRANT AND TO FOREVER DEFEND all and singular title in, to, and under the Conveyed Assets unto the Purchaser and its successors and assigns against every Person whomsoever or whenever claims any right, title, or interest in, to, or under the same.

IN WITNESS WHEREOF, the Seller has caused this Purchase Confirmation to be duly executed and delivered on and as of the Settlement Date first written above.


CHANGE LENDING, LLC DBA CHANGE HOME MORTGAGE, as the Seller


By:_____
Name:
Title:

SCHEDULE D.1
FORM OF PRELIMINARY FUNDING SCHEDULE

| | |
|---|---|
| Calculation Date: | June 27, 2023 |
| Settlement Date: | June 29, 2023 |
| Transfer Date: | August 2, 2023 |

| | |
|---|---|
| Number of Mortgage Loans as of the Calculation Date: | # |
| Aggregate unpaid principal balance of all Mortgage Loans as of the Calculation Date: | $ |
| Purchase Price Percentage: | x |
| Aggregate Estimated Purchase Price for the Servicing Assets related to all Mortgage Loans: | = |
| | x                    90.00% |
| Settlement Payment: | = |
| Third-Party Fees & Adjustments: | − |
| Net Funding Amount: | = |

| Seller Wire Instructions | |
|---|---|
| Institution Name: | |
| ABA Number: | |
| Account Name: | |
| Account Number: | |
| Reference: | |

APPROVED BY

CHANGE LENDING, LLC DBA CHANGE
HOME MORTGAGE, as the Seller

APPROVED BY

VILLAGE CAPITAL & INVESTMENT
LLC, as the Purchaser

By: _____

Name: _____

Title: _____

Date: _____

By: _____

Name: _____

Title: _____

Date: _____

SCHEDULE D.2
PRELIMINARY MORTGAGE LOAN SCHEDULE


[ATTACHED ELECTRONICALLY]

SCHEDULE D.3
FORM OF FUNDING SCHEDULE

| | |
|---|---|
| Calculation Date: | June 27, 2023 |
| Settlement Date: | June 29, 2023 |
| Reconciliation Date: | |
| Transfer Date: | August 2, 2023 |

| | |
|---|---|
| Number of Mortgage Loans as of the Settlement Date: | # |
| Aggregate unpaid principal balance of all Mortgage Loans as of the Settlement Date: | $ |
| Purchase Price Percentage: | x |
| Aggregate Purchase Price for the Servicing Assets related to all Mortgage Loans: | = |
| | x                       90.00% |
| Reconciled Settlement Payment: | = |
| Settlement Payment, as set forth in the Preliminary Funding Schedule: | +/- |
| Reconciliation Payment: | = |

| Purchaser Wire Instructions | |
|---|---|
| Institution Name: | |
| ABA Number: | |
| Account Name: | |
| Account Number: | |
| Reference: | |

APPROVED BY

CHANGE LENDING, LLC DBA CHANGE
HOME MORTGAGE, as the Seller

By: _____

Name: _____

Title: _____

Date: _____

APPROVED BY

VILLAGE CAPITAL & INVESTMENT
LLC, as the Purchaser

By: _____

Name: _____

Title: _____

Date: _____

SCHEDULE D.4
<u>MORTGAGE LOAN SCHEDULE</u>


[ATTACHED ELECTRONICALLY]

DocuSign Envelope ID: 4A838174-A7DE-4EB2-A699-FA56BA591856

EXHIBIT E
FORM OF LIMITED POWER OF ATTORNEY

PREPARED BY AND RETURN TO:
VILLAGE CAPITAL & INVESTMENT LLC
2550 PASEO VERDE PARKWAY, SUITE 100
HENDERSON, NEVADA 89074
ATTENTION: LOAN OPERATIONS

KNOW ALL PERSONS BY THESE PRESENTS:

This LIMITED POWER OF ATTORNEY (this "Limited POA") is executed and delivered on June _____, 2023 (the "Effective Date"), by CHANGE LENDING, LLC DBA CHANGE HOME MORTGAGE, having an office at 175 N. Riverview Drive, Suite C, Anaheim, CA 92808, a limited liability company organized pursuant to the laws of the State of California (the "Principal"), pursuant to that certain Mortgage Servicing Rights Purchase and Sale Agreement, dated as of June 29, 2023 (the "Purchase Agreement"), by and between VILLAGE CAPITAL & INVESTMENT LLC, having an office at 2550 Paseo Verde Parkway, Suite 100, Henderson, NV 89074, a limited liability company organized pursuant to the laws of the State of Delaware (the "Agent") and the Principal. The Principal acknowledges and agrees that this Limited POA and all authorities and powers granted hereby are given for a business or commercial purpose and are irrevocable and coupled with an interest.

1.      The Principal hereby irrevocably appoints the Agent as the Principal's lawful agent and attorney-in-fact, with full power of substitution, and hereby grants the Agent all authorities and powers for the purpose of taking all actions and executing all documents — in each case, on the Principal's behalf and in the Principal's name, place, and stead through the Agent's duly appointed agents and authorized officers — deemed appropriate or necessary by the Agent to effectuate any and all transactions directly or indirectly relating to any mortgage loan for which the related servicing rights were sold by the Principal and purchased by the Agent pursuant to the Purchase Agreement (each, a "Mortgage Loan"). Specifically, and without limiting the generality of the foregoing, this appointment shall include the actual authority and full power:

(a)      to prepare, execute, deliver, and record any credit agreement, guaranty agreement, loan agreement, or other document or instrument that evidences or secures the monetary or non-monetary obligations of any mortgagor, guarantor, or other obligor with respect to any Mortgage Loan (each of the foregoing, a "Loan Document"), including without limitation any promissory note or other document or instrument that evidences the indebtedness of any Mortgage Loan (each of the foregoing, a "Mortgage Note"), and any deed of trust, financing statement, mortgage, security agreement, vendors lien, or other document or instrument that evidences or secures the indebtedness of any Mortgage Loan (each of the foregoing, a "Mortgage Instrument");

(b)      to prepare, execute, deliver, and record any document or instrument that (i) amends, assumes, consolidates, extends, modifies, releases, rescinds, satisfies, subordinates, or terminates, in whole or in part, any Mortgage Loan or Loan Document (each of the foregoing, a "Restructuring Document"), or (ii) assigns, conveys, encumbers, grants, or transfers, in whole or in part, any right, title, or interest in, to, or under any Mortgage Loan or Loan Document (each of the foregoing, a "Transfer Document");

(c)      to prepare, execute, deliver, and record any quitclaim deed, title instrument, warranty deed, or other document or instrument that evidences or assigns, conveys, encumbers, grants, or transfers, in whole or in part, any right, title, or, interest in to or under any mortgaged property which

secures or secured any Mortgage Loan and which will be or has been acquired by any compromise claim, deed-in-lieu of foreclosure, judicial foreclosure, non-judicial foreclosure, short sale, trustee sale, or otherwise (each of the foregoing, a "Title Document");

(d)     to prepare, execute, deliver, and submit any claim or notice with respect to (i) any policy of flood insurance, hazard insurance, mortgage insurance, pool insurance, title insurance, or other type of insurance relating to any Mortgage Loan or the related mortgaged property (each of the forgoing, an "Insurance Claim"), (ii) any loan guaranty or mortgage insurance available from or issued by any federal, state, or local governmental agency or government-sponsored enterprise with respect to any Mortgage Loan (each of the foregoing, an "Agency Claim"), including the (A) the Consumer Financial Protection Bureau ("CFPB"), (B) the Federal Housing Administration ("FHA"), a division of HUD, (C) the Government National Mortgage Association ("GNMA"), also known as Ginnie Mae, (D) Rural Development ("RD") and the Rural Housing Service ("RHS"), each a mission of USDA, (E) the United States Department of Housing and Urban Development ("HUD"), (F) the United States Department of Agriculture ("USDA"), and (G) the United States Department of Veterans Affairs ("VA") (each of the foregoing, an "Agency"), or (iii) any request by or requirement of any Agency or other federal, state, or local governmental authority or government-sponsored enterprise relating to any Mortgage Loan;

(e)     to prepare, execute, deliver, and file any motion, notice, pleading, or other submission (each of the foregoing, a "Litigation Document") in connection with any bankruptcy case, foreclosure action, or other administrative, judicial, or legal proceeding relating to any Mortgage Loan or the related mortgagor or mortgaged property (each of the foregoing, a "Litigation Matter");

(f)     to prepare, execute, deliver, and indorse any check, draft, note, or other document or instrument that evidences the payment of money which is due, payable, or received on account of, in connection with, or otherwise relating to any Mortgage Loan or any related Insurance Claim, Agency Claim, or Litigation Matter (each of the foregoing, a "Payment Document"); and

(g)     to take or cause to be taken any action, and to execute or cause to be executed any document, deemed appropriate or necessary by the Agent (i) to correct any error, complete any omission, and cure any defect contained in any document or instrument of the type referenced herein or otherwise relating to any Mortgage Loan or the related mortgaged property, or (ii) to exercise, enforce, or transfer any right or remedy available at law or in equity to the lender, mortgagee, or servicer with respect to (A) any document or instrument of the type referenced herein or otherwise relating to any Mortgage Loan or the related mortgaged property, or (B) any authority or power granted to the Agent pursuant to this Limited POA or incidental thereto.

2.     The Principal acknowledges and agrees that this Limited POA does not impose upon the Agent (a) any obligation to take or cause to be taken any action, or to execute or cause to be executed any document or instrument, in connection with any Mortgage Loan or otherwise, (b) any liability for failing to take or cause to be taken any action, or for failing to execute or cause to be executed any document or instrument, in connection with any Mortgage Loan or otherwise, or (c) any confidential, fiduciary, or other type of duty, obligation, or responsibility with respect to the Principal or its successors or assigns.

3.     This Limited POA and all authorities and powers granted hereby shall be (a) exercisable, enforceable, and transferrable by the Agent and its successors and assigns without notice to or consent of the Principal, and (b) governed by the laws of the State of New York without regard to any applicable law (other than Section 5-1512 of the New York General Obligations Law, which shall govern) that may recommend or require application of the laws of any other state.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Principal has caused this Limited Power of Attorney to be duly executed and delivered as of the Effective Date first written above.

<div style="margin-left: 50%;">

CHANGE LENDING, LLC DBA CHANGE HOME MORTGAGE, as the Principal

By:_____
Name:
Title:

WITNESSED BY:

By:_____
Name:

By:_____
Name:

</div>

STATE OF _____

COUNTY OF _____

On this day, _____ personally appeared before me, was personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed on behalf of the Principal named herein, and acknowledged to me that he/she executed this Limited Power of Attorney with actual authority to do so and for the purpose expressed herein.

Given under my hand and seal of office this _____ day of _____ , 20 ___.

_____
Notary Public

EXHIBIT F
FORM OF OFFICER'S CERTIFICATE

      This OFFICER'S CERTIFICATE (this "Certificate") is executed and delivered on June 29, 2023 (the "Certification Date"), by the undersigned person pursuant to that certain Mortgage Servicing Rights Purchase and Sale Agreement (the "Purchase Agreement"), dated June 29, 2023, by and between CHANGE LENDING, LLC DBA CHANGE HOME MORTGAGE (together with its successors and permitted assigns collectively, the "Seller"), and VILLAGE CAPITAL & INVESTMENT LLC (together with its successors and permitted assigns collectively, the "Purchaser"). Each capitalized term used but not defined in this Certificate shall have the meaning ascribed thereto in the Purchase Agreement.

      I, _____ (the "Officer") hereby declare, on and as of the Certification Date, as follows:

      1.    I am the duly appointed and acting (check one) ☐ Chief Executive Officer, ☐ Chief Operating Officer, ☐ Chief Financial Officer, ☐ Chief Credit/Investment/Lending Officer, ☐ Chief Compliance Officer, or ☐ General Counsel of the Seller, and I have actual authority as well as actual knowledge sufficient to make each declaration herein.

      2.    The Seller is a limited liability company that is duly organized, currently existing, and in good standing pursuant to and in accordance with the laws of State of _____ (the "Seller Jurisdiction"). The principal place of business of the Seller is located at _____ in the City of _____ in the County of _____ in the State of _____. No action or proceeding looking toward bankruptcy, dissolution, liquidation, merger, or a sale of all or substantially all of the assets of the Seller is pending, threatened, or contemplated on the Certification Date.

      3.    Appended as Annex I hereto is a true, correct, and complete copy of the by-laws, operating agreement, or similar governing document (the "Governing Document") of the Seller, which Governing Document (a) was duly adopted by the board of directors or other governing body (the "Governing Body") of the Seller and remains in full force and effect on the Certification Date, and (b) includes true, correct, and complete copies of all exhibits, schedules, and supplements thereto, and all amendments, modifications, and restatements thereof. No event has occurred and is continuing on the Certification Date that reasonably could be expected to amend, annul, modify, revoke, restate, or otherwise affect the Governing Document or the corporate governance of the Seller.

      4.    Appended as Annex II hereto is a true, correct, and complete copy of the consent or resolutions of the Governing Body of the Seller authorizing and ratifying the execution, delivery, performance by the Seller of the Purchase Agreement and all transactions contemplated thereby (the "Authorizing Resolutions"), which Authorizing Resolutions (a) were duly adopted by the Governing Body of the Seller and remain in full force and effect on the Certification Date, and (b) includes true, correct, and complete copies of all exhibits, schedules, and supplements thereto, and all amendments, modifications, and restatements thereof. No event has occurred and is continuing on the Certification Date that reasonably could be expected to amend, annul, modify, revoke, restate, or otherwise affect the Authorizing Resolutions or the authorities and ratifications granted thereby.

      5.    The Person who executed and delivered the Purchase Agreement on behalf of the Seller (the "Signatory") was, on the date of such execution and delivery, a duly appointed and acting (check one)

DocuSign Envelope ID: 4A838171-A7D5-4E82-A699-EA56BA591856

☐ President, ☐ Executive Vice President, or ☐ Senior Vice President of the Seller, and he/she had actual authority to execute and deliver the Purchase Agreement on behalf of the Seller. In addition, the Signatory and each other Person identified below has and, unless and until the Seller provides a written revocation to the Purchaser, will have actual authority to bind the Seller and to deliver any instruction, to execute any document, and to take any action on behalf of the Seller in connection with its execution and performance of the Purchase Agreement and its consummation of each transaction contemplated thereby:

| Name | Title | Specimen Signature |
|------|-------|--------------------|
|      |       |                    |
|      |       |                    |
|      |       |                    |
|      |       |                    |
|      |       |                    |

6.       I have conducted a diligent inquiry of the Seller's books and records, and hereby confirm that all representations and warranties made by the Seller in the Purchase Agreement are true and correct on and as of the Certification Date and were true and correct on and as of each prior date on which such representations and warranties were made.

IN WITNESS WHEREOF, the Officer hereby declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct on and as of the Certification Date first written above.

By:_____
Name:_____
Title:_____

ANNEX I TO OFFICER'S CERTIFICATE
<u>GOVERNING DOCUMENT</u>

[ATTACHED]

ANNEX II TO OFFICER'S CERTIFICATE
<u>AUTHORIZING RESOLUTIONS</u>

[ATTACHED]