Karyna M. Armstrong (NSBN 16044)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
karmstrong@mcdonaldcarano.com

*Attorneys for Village Capital & Investment LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHANGE LENDING, LLC DBA CHANGE HOME MORTGAGE, <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE CAPITAL & INVESTMENT LLC; DOE INDIVIDUALS I-X, inclusive; and ROE CORPORATIONS I-X, inclusive, <br><br> Defendant(s). | CASE NO.:    2:25-cv-01600-GMN-EJY <br><br> **VILLAGE CAPITAL & INVESTMENT LLC'S ANSWER TO COMPLAINT** <br><br> **AND** <br><br> **COUNTERCLAIM** |

Defendant Village Capital & Investment LLC ("Village Capital"), by and through its undersigned counsel of record, as and for its Answer to the Complaint ("Complaint") filed by Plaintiff Change Lending, LLC dba Change Home Mortgage ("Plaintiff"), admits, denies and responds as follows, with the following numbered paragraphs corresponding to the numbers of the paragraphs of the Complaint under the headings used in the Complaint:

**NATURE OF THE ACTION**

1.      Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 1 and, on that basis, denies the allegations of Paragraph 1.

2.      Village Capital admits that Village Capital services mortgage loans on behalf of the Government National Mortgage Association ("Ginnie Mae").

3.      Village Capital admits that Plaintiff agreed to sell to Village Capital its servicing rights in respect to a pool of mortgage loans specified in the Mortgage Servicing Rights

1

Purchase and Sale Agreement (Government Mortgage Loans) ("PSA"). Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the remaining matters alleged in Paragraph 3 and, on that basis, denies the remaining allegations of Paragraph 3.

4. Village Capital denies the allegations of Paragraph 4.

**THE PARTIES, JURISDICTION, VENUE, AND CHOICE OF LAW**

5. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 5 and, on that basis, denies the allegations of Paragraph 5.

6. Village Capital admits it is a limited liability company organized under the laws of Delaware, with its principal place of business in Nevada. Village Capital denies the remaining allegations of Paragraph 6.

7. Paragraph 7 states legal conclusions to which no response is required. To the extent a response is required, Village Capital denies the allegations of Paragraph 7.

8. Paragraph 8 states legal conclusions to which no response is required. To the extent a response is required, Village Capital denies the allegations of Paragraph 8.

9. Village Capital admits that subject matter jurisdiction is proper in this Court. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the remaining matters alleged in Paragraph 9 and, on that basis, denies the remaining allegations of Paragraph 9.

10. Village Capital admits the allegations of Paragraph 10.

11. Village Capital admits the allegations of Paragraph 11.

12. Village Capital admits the allegations of Paragraph 12.

**GENERAL ALLEGATIONS**

**A. The Parties' Relationship with Ginnie Mae**

13. Village Capital admits Ginnie Mae guarantees securities backed by pools of mortgages and that the subject mortgage pool was guaranteed by Ginnie Mae. The balance of the paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Village Capital denies the remaining allegations of Paragraph 13.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

14. Village Capital admits Ginnie Mae's MBS programs are governed by, and subject to, terms and requirements set forth in a guide published by Ginnie Mae. Village Capital alleges and avers that the guide is dynamic and there is a possibility that some pools were issued under earlier versions of the guide. The balance of the paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Village Capital denies the remaining allegations of Paragraph 14.

15. Paragraph 15 consists of legal conclusions and purported recitations of the Ginnie Mae guide, which do not require a response. To the extent a response is required, Village Capital denies the allegations of Paragraph 15.

16. Paragraph 16 consists of legal conclusions and purported recitations of the Ginnie Mae guide, which do not require a response. To the extent a response is required, Village Capital denies the allegations of Paragraph 16.

17. Paragraph 17 consists of legal conclusions and purported recitations of the Ginnie Mae guide, which do not require a response. To the extent a response is required, Village Capital denies the allegations of Paragraph 17.

**B.    The Mortgage Servicing Rights Purchase and Sale Agreement**

18. Paragraph 18 consists of legal conclusions and purported recitations of the Ginnie Mae guide, which do not require a response. To the extent a response is required, Village Capital admits the allegations of Paragraph 18.

19. Village Capital admits the allegations of Paragraph 19.

20. Village Capital admits that the PSA provides for an interim servicing period. As to the balance of the matters alleged in Paragraph 20, the document speaks for itself, and Village Capital denies the remaining allegations of Paragraph 20.

**C.    Village Capital Failed to Pay Amounts Advanced to Ginnie Mae**

21. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 21 and, on that basis, denies the allegations of Paragraph 21.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

22.    Village Capital admits that Plaintiff demanded that Village Capital remit payment to Plaintiff for the alleged outstanding balance owed to Ginnie Mae. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the remaining matters alleged in Paragraph 22 and, on that basis, denies the remaining allegations of Paragraph 22.

23.    Village Capital denies the allegations of Paragraph 23.

24.    Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 24 and, on that basis, denies the allegations of Paragraph 24.

25.    Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 25 and, on that basis, denies the allegations of Paragraph 25.

26.    Village Capital admits that Plaintiff made a written demand to Village Capital on or about September 21, 2023. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the remaining matters alleged in Paragraph 26 and, on that basis, denies the remaining allegations of Paragraph 26.

27.    Village Capital admits that it sent correspondence to Change Lending explaining why it was not required to tender payment of principal and interest advances in the amount of $659,464.25. The correspondence speaks for itself. Village Capital denies the remaining allegations of Paragraph 27.

28.    Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 28 and, on that basis, denies the allegations of Paragraph 28.

29.    Paragraph 29 consists of legal conclusions and purported recitations of the Ginnie Mae guide, which do not require a response. To the extent a response is required, Village Capital denies the allegations of Paragraph 29.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

30. Village Capital admits that the PSA contains an indemnification provision and avers that the document speaks for itself. Village Capital denies the remaining allegations of Paragraph 30.

31. Village Capital denies the allegations of Paragraph 31.

32. Village Capital denies the allegations of Paragraph 32.

33. Village Capital denies the allegations of Paragraph 33.

34. Village Capital denies the allegations of Paragraph 34.

**D. Village Capital Failed to Pay Amounts Due for its Purchase of Servicing Assets**

35. Village Capital admits that the PSA sets forth requirements regarding the purchase price and avers that the document speaks for itself. Village Capital denies the remaining allegations of Paragraph 35.

36. Village Capital admits that the PSA sets forth requirements regarding the purchase price and avers that the document speaks for itself. Village Capital denies the remaining allegations of Paragraph 36.

37. Village Capital denies the allegations of Paragraph 37.

38. Village Capital denies the allegations of Paragraph 38.

39. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 39 and, on that basis, denies the allegations of Paragraph 39.

40. Village Capital alleges and avers that it paid substantial amounts to Plaintiff pursuant to the PSA and denies the remaining allegations of Paragraph 40.

41. Village Capital admits it did not pay Holdback Funds totaling $321,352.42, and alleges and avers it was not obligated to do so due to failure of condition precedent. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the remaining matters alleged in Paragraph 41 and, on that basis, denies the remaining allegations of Paragraph 41.

42.    Village Capital admits that the PSA sets forth requirements regarding the Holdback Funds and avers that the document speaks for itself. Village Capital denies the remaining allegations of Paragraph 42.

43.    Village Capital denies the allegations of Paragraph 43.

44.    Village Capital admits that Plaintiff made a written demand to Village Capital on or about September 21, 2023 and denies the remaining allegations of Paragraph 44.

45.    Village Capital admits that it sent a written response to Plaintiff dated October 4, 2023, explaining why it did not owe the funds to Plaintiff. Village Capital denies the remaining allegations of Paragraph 45.

46.    Village Capital denies the allegations of Paragraph 46.

47.    Village Capital denies the allegations of Paragraph 47.

48.    Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 48 and, on that basis, denies the allegations of Paragraph 48.

49.    Village Capital denies the allegations of Paragraph 49.

**E.    Village Capital Failed to Reimburse Additional Advances to the FHA**

50.    Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 50 and, on that basis, denies the allegations of Paragraph 50.

51.    Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 51 and, on that basis, denies the allegations of Paragraph 51.

52.    Village Capital admits that it received funds via wire from the FHA on or about November 8, 2023. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the remaining matters alleged in Paragraph 52 and, on that basis, denies the remaining allegations of Paragraph 52.

53.    Village Capital admits that it acknowledged receipt of funds from the FHA on or about November 30, 2023. Village Capital lacks knowledge or information sufficient to form a

belief as to the truth of the remaining matters alleged in Paragraph 53 and, on that basis, denies the remaining allegations of Paragraph 53.

54. Village Capital admits Plaintiff provided it with wire instructions and denies the remaining allegations of Paragraph 54.

55. Village Capital denies the allegations of Paragraph 55.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

56. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 56 and, on that basis, denies the allegations of Paragraph 56.

57. Village Capital admits the allegations of Paragraph 57.

58. Village Capital denies the allegations of Paragraph 58.

59. Village Capital denies the allegations of Paragraph 59.

60. Village Capital denies the allegations of Paragraph 60.

61. Village Capital denies the allegations of Paragraph 61.

62. Village Capital denies the allegations of Paragraph 62.

**SECOND CLAIM FOR RELIEF**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Pled in the Alternative)**

63. Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 63 and, on that basis, denies the allegations of Paragraph 63.

64. Paragraph 64 consists of legal conclusions, which do not require a response. To the extent a response is required, Village Capital denies the allegations of Paragraph 64.

65. Paragraph 65 consists of legal conclusions, which do not require a response. To the extent a response is required, Village Capital denies the allegations of Paragraph 65.

66. Village Capital denies the allegations of Paragraph 66.

67. Village Capital denies the allegations of Paragraph 67.

68.    Village Capital admits that Village Capital and Plaintiff entered into the PSA. Village Capital denies the remaining allegations of Paragraph 68.

69.    Village Capital admits that Village Capital and Plaintiff entered into the PSA. Village Capital denies the remaining allegations of Paragraph 69.

70.    Village Capital denies the allegations of Paragraph 70.

71.    Village Capital denies the allegations of Paragraph 71.

72.    Village Capital denies the allegations of Paragraph 72.

73.    Village Capital denies the allegations of Paragraph 73.

74.    Village Capital denies the allegations of Paragraph 74.

75.    Village Capital denies the allegations of Paragraph 75.

76.    Village Capital denies the allegations of Paragraph 76.

**THIRD CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(Pled in the Alternative)**

77.    Village Capital lacks knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 77 and, on that basis, denies the allegations of Paragraph 77.

78.    Village Capital denies the allegations of Paragraph 78.

79.    Village Capital denies the allegations of Paragraph 79.

80.    Village Capital denies the allegations of Paragraph 80.

81.    Village Capital denies the allegations of Paragraph 81.

**PRAYER FOR RELIEF**

Village Capital denies that Plaintiff is entitled to any of the relief requested or that it is entitled to any relief at all.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

1.    Plaintiff's Complaint and each of its claims for relief fail to state facts sufficient to constitute a claim upon which relief can be granted.

8

**SECOND AFFIRMATIVE DEFENSE**

2.      Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, because Plaintiff failed to take reasonable steps to mitigate its alleged damages.

**THIRD AFFIRMATIVE DEFENSE**

3.      Any loss, injury, damage or detriment actually suffered or sustained by Plaintiff was directly and proximately caused and contributed to by the conduct, acts, omissions, activities, carelessness, recklessness, negligence, fraudulent and/or intentional misconduct or actions of parties other than Village Capital.

**FOURTH AFFIRMATIVE DEFENSE**

4.      To the extent that Plaintiff suffered any detriment, such detriment was caused or contributed to by Plaintiff's conduct, acts, omissions, activities, carelessness, recklessness, negligence, fraudulent and/or intentional misconduct, and Plaintiff's damages, if any, should be reduced in direct proportion to its fault.

**FIFTH AFFIRMATIVE DEFENSE**

5.      Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by acquiescence or the doctrine of implied acquiescence because Plaintiff impliedly or explicitly, directly or indirectly, authorized, licensed, consented to, or acquiesced to Village Capital's allegedly wrongful conduct.

**SIXTH AFFIRMATIVE DEFENSE**

6.      Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by the doctrine of waiver.

**SEVENTH AFFIRMATIVE DEFENSE**

7.      Village Capital is informed and believes that it is not legally responsible in any way for any of the damages and/or injuries, if any, claimed by Plaintiff in the Complaint; however, if Village Capital is subjected to any liability to Plaintiff, it will be due, in whole or in part, to the acts, omissions, activities, carelessness, recklessness, and negligence of others. Any recovery obtained by Plaintiff against Village Capital should be reduced in proportion to the entities, their agents, servants, and employees who contributed to and/or caused any such injury

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

and/or damages, in accordance with the law of comparative liability. The liability of Village Capital, if any, is limited in direct proportion to the percentage of fault, if any, actually attributed to Village Capital.

## EIGHTH AFFIRMATIVE DEFENSE

8.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

9.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, because Plaintiff failed to act in a commercially reasonable manner.

## TENTH AFFIRMATIVE DEFENSE

10.    To the extent that Plaintiff has or will incur any damages by reason of Village Capital's conduct arising out of this case, then Village Capital has the right to offset any amounts owed to Plaintiff by Village Capital against monies owed by Plaintiff to Village Capital.

## ELEVENTH AFFIRMATIVE DEFENSE

11.    The conduct, if any, which is the subject of Plaintiff's Complaint, was absolutely and/or conditionally legally privileged, and/or justified. Further, Village Capital's actions were in good faith and reasonable.

## TWELFTH AFFIRMATIVE DEFENSE

12.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, due to the failure of a condition precedent.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, due to contractual ambiguity.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by the applicable statutes of limitations.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD ⚖ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**FIFTEENTH AFFIRMATIVE DEFENSE**

15.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by the doctrine of laches.

**SIXTEENTH AFFIRMATIVE DEFENSE**

16.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by the doctrines of unconscionability.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

17.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by the statute of frauds.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

18.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by the doctrines of impossibility or impracticability.

**NINETEENTH AFFIRMATIVE DEFENSE**

19.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, due to unilateral or mutual mistake of the parties.

**TWENTIETH AFFIRMATIVE DEFENSE**

20.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, by the doctrine of estoppel.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

21.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, due to fraudulent inducement.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

22.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, due to the failure of consideration, lack of consideration, and/or frustration of purpose.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

23.    Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, due to an accord and satisfaction.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

24.     Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, because Village Capital's performance was excused.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

25.     Plaintiff's Complaint and each of its claims for relief are barred, in whole or in part, because Village Capital's nonperformance was legally justified.

**RESERVATION OF RIGHTS**

Village Capital states that other defenses may exist as to Plaintiff's Complaint, and that Village Capital does not waive, but rather reserves the right to assert such defenses.

**WHEREFORE**, having fully answered or otherwise responded to the allegations set forth in Plaintiff's Complaint, Village Capital demands judgment as follows:

1.     That Plaintiff take nothing by virtue of its Complaint and that this action be dismissed with prejudice in its entirety;

2.     That judgment be rendered in favor of Village Capital;

3.     That attorneys' fees and costs incurred in this Action be awarded to Village Capital to the greatest extent permitted by applicable law; and

4.     That Village Capital be awarded such further or other relief in its favor as this Court may deem just and proper.

**COUNTERCLAIM**

Defendant and Counter-claimant Village Capital & Investment LLC ("Village Capital" or "Purchaser"), asserts the following Counterclaims against Plaintiff and Counter-defendant Change Lending, LLC dba Change Home Mortgage ("Change" or "Seller").

**THE PARTIES, JURISDICTION, VENUE, AND CHOICE OF LAW**

1.     Village Capital is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Nevada.  Its members are citizens of the states of Nevada. For jurisdictional purposes, Village Capital is a citizen of Delaware and Nevada.

12

2. Change Lending is a limited liability company organized and existing under the laws of California. Change's members are citizens of California, New Jersey, and Texas. For jurisdictional purposes, Change is a citizen of California, New Jersey, and Texas.

3. This Court has jurisdiction over the subject matter of the action under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because there is diversity of citizenship between the parties.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the actions that gave rise to this action occurred in this District.

5. New York law governs in this action given that the PSA that is the subject of this dispute provides that "all Claims arising hereunder or relating to the transactions contemplated hereby, shall be governed by the Laws of the State of New York." PSA at § 12.07.

**FACTS**

6. The parties entered into a Mortgage Servicing Rights Purchase and Sale Agreement, dated June 29, 2023 ("PSA"). A true and correct copy of the PSA is attached to the Complaint as Exhibit 1.

7. Change's claims and this action are predicated on its contentions that Village Capital is required to (1) indemnify Change as the Seller under the PSA for $659,464.25 of P&I Advances that Seller remitted to GNMA "to cover [the] Purchaser's [purportedly] deficient P&I remittance to GNMA" on August 21, 2023 (the "Aug-23 Remittance Date"); (2) pay Change $321,352.42 that it contends it "is entitled to [for] the Transfer Payment" because it purportedly has "satisfied all Transfer-Related Obligations"; (3) pay Change $321,352.42 in Holdback Funds that Change contends it is entitled to receive because it purportedly has "satisfied all conditions precedent for receiving the funds"; and (4) pay Change $18,170.61 that it advanced to the Federal Housing Administration during the interim servicing period.

8. Change's position on all these items, and more, is fundamentally flawed and its claims lack support in both law and fact.

9. The express terms of the PSA provide that Purchaser is neither obligated to pay any P&I Advances to Change nor obligated to pay the Transfer Payment to Change.

10.     Moreover, on the contrary, Change is in continuing breach of numerous Transfer-Related Obligations under the PSA.  Purchaser has demanded that Change cure all such breaches immediately and by not later than the Cure Deadline.  It has failed and refused to cure its breaches and remains in breach under the parties' agreement.

11.     As an initial matter, Change's contention that Village Capital purportedly "failed to timely remit" certain P&I Advances to GNMA on the Aug-23 Remittance Date is based upon an implied and mistaken premise that Village Capital had an obligation to remit those P&I Advances to GNMA in the first instance. It did not.

12.     Subsection 7.09(a)(iv) of the PSA provides that "the Seller shall . . . make (A) all P&I Advances and other Servicing Advances that are required to be made pursuant to applicable Agency Requirements, and (B) all remittances and reporting that are required to be made to the applicable Agency in accordance with applicable Agency Requirements." Therefore, the Seller (as opposed to the Purchaser) had the contractual obligation to remit all P&I Advances to GNMA on the Aug-23 Remittance Date.

13.     Even if Purchaser had an obligation to remit P&I Advances to GNMA in the first instance but did not, it still would not be obligated to indemnify Seller for any such P&I Advances under the PSA.

14.     Subsection 11.03(b) of the PSA is the only provision that gives rise to any indemnification obligation on the part of the Purchaser.  It specifies that Purchaser would only be required to indemnify Seller for Losses "that a court of competent jurisdiction determines, in a final non-appealable order, were incurred or sustained by the Seller . . . directly and solely as a result of, in connection with, or relating to any failure by the Purchaser to perform the Servicing of any Mortgage Loan in accordance with Applicable Law or applicable Agency Requirements, . . . ."

15.     No such determination has been made.

16.     Moreover, it was Change's contractual obligation to remit all P&I Advances to GNMA on the Aug-23 Remittance Date, not Village Capital.

14

17. Consequently, Village Capital's failure to remit the P&I Advances in question to GNMA on the Aug-23 Remittance Date did not constitute a failure by the Village Capital to perform the Servicing of the Mortgage Loans in accordance with Applicable Law or applicable Agency Requirements.

18. Accordingly, the indemnification provision under Subsection 11.03(b) of the PSA does not apply to Village Capital or to the P&I Advances.

19. Subsection 7.09(b) of the PSA entitles the Seller to seek reimbursement from the Purchaser for certain Seller Advances that the Seller made in connection with the Mortgage Loans. Any P&I Advances that Seller may have remitted to GNMA (whether as a result of the Purchaser's failure to do so or otherwise) would also not be eligible for reimbursement pursuant to Subsection 7.09(b) for two reasons.

20. First, Subsection 7.09(b) expressly provides that any request for reimbursement of Seller Advances must be submitted to Purchaser within thirty (30) days after the Transfer Date and must be accompanied by a data file itemizing all such Seller Advances as well as digital images of customary documentation which evidences the accuracy of all information set forth in such data file. Seller did not submit any such data file or customary documentation to Purchaser on or before September 1, 2023 (i.e., thirty (30) days after the Transfer Date). Thus, its right to request reimbursement for any Seller Advances pursuant to Subsection 7.09(b) expired.

21. Second, Subsection 7.09(b) only obligates Purchaser to reimburse Seller for "Reimbursable Seller Advance[s]," which is defined to expressly exclude all P&I Advances. Consequently, any P&I Advances that Seller may have remitted to GNMA (whether as a result of Purchaser's failure to do so or otherwise) would not be eligible for reimbursement pursuant to Subsection 7.09(b) even if Seller had submitted the necessary data file and customary documentation to Purchaser on or before September 1, 2023.

22. Village Capital is also not obligated to pay the Transfer Payment to Change because Change did not satisfy "all Transfer-Related Obligations."

23. Subsection 3.01(c) of the PSA provides that Purchaser is not obligated to pay the Transfer Payment to Seller until "the later of the Transfer Date or the date on which the Seller has satisfied all Transfer-Related Obligations with respect to all Mortgage Loans."

24. The term "Transfer-Related Obligations," in turn, is defined to mean, "any agreement, covenant, duty, obligation, responsibility, or undertaking of the Seller that this Agreement or the Transfer Instructions requires to be performed on the Transfer Date, within a specified number of days before or after the Transfer Date, or otherwise in connection with the transfer of the Servicing of such Mortgage Loan to the Purchaser."

25. Change has failed to perform any of the following Transfer-Related Obligations, which excuses Village Capital's performance and disentitles it from earning any Transfer Payment:

26. First, Seller has not provided any Post-Settlement Mortgage Loan Schedules, which Subsection 7.01(b)(iii) of the PSA required Seller to have provided Purchaser not later than the second business day of each calendar month following the Settlement Date through the first calendar month immediately following the Transfer Date.

27. Second, Seller has not provided an Inspection Report with respect to approximately two hundred (200) Mortgage Loans, which Subsection 7.01(b)(iv) of the Agreement required Seller to have provided Purchaser not later than the Transfer Date.

28. Third, Seller has not transferred a life-of-loan Flood Determination with respect to any Mortgage Loan, which Subsection 7.04 of the Agreement required Seller to have transferred to Purchaser not later than the Transfer Date.

29. Fourth, Seller has not transferred a life-of-loan Tax Contract to Purchaser with respect to any Mortgage Loan, which Subsection 7.04 of the Agreement required Seller to have transferred not later than the Transfer Date.

30. Fifth, Seller has not provided copies of all recorded assignments to Purchaser necessary to evidence that each Non-MERS Mortgage Loan has been assigned to MERS, which Subsection 7.05 of the Agreement required Seller to have submitted for recordation not later

16

than the Transfer Date and further required Seller to have provided to Purchaser not later than five business days after Seller's receipt from the applicable recording office.

31. Sixth, Seller has not provided any interim servicing reports to Purchaser, which Subsection 7.09(c) of the Agreement required Seller to have provided not later than the fifth business day of each calendar month during the Interim Servicing Period.

32. Seventh, Seller has not provided any interim servicing remittances to Purchaser, which Subsection 7.09(c) of the Agreement required Seller to have provided not later than the fifth business day of each calendar month during the Interim Servicing Period.

33. Eighth, Seller improperly offset certain Servicing Advances from its transfer-related remittance of Custodial Funds and Escrow Funds. Thus, Seller has not yet remitted all Custodial Funds and Escrow Funds, which Subsection 7.09(e)(ii) of the PSA required Seller to have remitted not later than one business day after the Transfer Date.

34. All of these failures by Change constitute breaches of its obligations to Village Capital under the PSA and excuse Village Capital's performance under the agreement. They also constitute failures of conditions precedent to Village Capital's performance.

35. Seller's failure to timely provide Inspection Reports not only resulted in Purchaser not being obligated to pay the Transfer Payment pursuant to Subsection 3.01(c) of the PSA, but it also gives rise to an obligation on the part of Seller to pay the Servicing Assets Reimbursement Amount for the Servicing Assets related to each Mortgage Loan for which the Seller failed to timely provide an Inspection Report. See § 7.01(b)(iv) ("If . . . the Seller fails to timely and fully perform its obligations set forth in this Subsection 7.01(b)(iv) with respect to any Mortgage Loan, . . . then . . . the Seller shall pay to the Purchaser the Servicing Assets Reimbursement Amount (without assessment of the administrative fee of one thousand five hundred and 00/100 dollars ($1,500.00)) for the related Servicing Assets not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email) . . . .").

36. Seller's failure to timely transfer Flood Determinations not only resulted in Purchaser not being obligated to pay the Transfer Payment pursuant to Subsection 3.01(c) of the

17

Agreement, but it also gives rise to an obligation on the part of Seller to reimburse Purchaser for all costs and expenses it incurs to obtain a new Flood Determination for each Mortgage Loan for which the Seller failed to timely transfer a Flood Determination. See § 7.04 ("If the Seller fails to timely and fully perform its obligations set forth in this Subsection 7.04 with respect to any . . . Flood Determination, . . . then . . . (i) the Purchaser may obtain a new . . . Flood Determination . . . at the Seller's sole cost and expense, and (ii) the Seller shall reimburse the Purchaser for all such costs and expenses not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email)").

37.    Seller's failure to timely transfer Tax Contracts not only resulted in Purchaser not being obligated to pay the Transfer Payment pursuant to Subsection 3.01(c) of the Agreement, but it also gives rise to an obligation on the part of Seller to reimburse Purchaser for all costs and expenses it incurs to obtain a new Tax Contract for each Mortgage Loan for which the Seller failed to timely transfer a Tax Contract. See § 7.04 ("If the Seller fails to timely and fully perform its obligations set forth in this Subsection 7.04 with respect to any Tax Contract . . . , . . . then . . . (i) the Purchaser may obtain a new Tax Contract . . . at the Seller's sole cost and expense, and (ii) the Seller shall reimburse the Purchaser for all such costs and expenses not later than five (5) Business Days after the Seller's receipt of the Purchaser's written demand (which may be delivered solely by email)").

38.    Subsection 7.09(b) of the PSA set forth a specific process that Change is required to follow—as well as several conditions precedent that it was required to satisfy—in the event it desires to seek reimbursement for any Seller Advances.  It did not do so.  Change was not authorized to exercise the self-help remedy of offsetting Seller Advances from Custodial Funds or Escrow Funds that are required to be remitted to Purchaser.

39.    Change's actions in doing so constituted the failure of a condition precedent to Village Capital.

40.    Change has failed to perform at least eight of its Transfer-Related Obligations, as listed above.   Each of these failures constitutes an independent and continuing breach by

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

18

Change of its agreements, covenants, duties, obligations, responsibilities, and/or undertakings under the PSA.

41.     Change is not entitled to any Holdback Funds as defined by Section 3.01(d) of the PSA.  The PSA authorizes Purchaser to withhold Holdback Funds under the following circumstances, which apply here:

- If any Document Exceptions remained outstanding with respect to any of the Mortgage Loans on the Holdback Surrender Date, then Seller was required to pay to Purchaser the aggregate Servicing Assets Reimbursement Amount for the related Servicing Assets not later than five business days after Seller's receipt of the Purchaser's written demand.  Section 3.01(d)(iii)(y).  Seller breached its obligations to Purchaser under this provision.

- "If any breach by the Seller of any covenant, representation, warranty, or other provision in this Agreement has occurred and is continuing on any date on which any Holdback Funds are to be released to the Seller, then the Purchaser shall not release such Holdback Funds until such breach has been cured to the Purchaser's satisfaction, at which point the Purchaser shall release such Holdback Funds to the Seller within ten (10) Business Days thereafter."  Section 3.01(d)(iii)(z).

- There was and is a continuing dispute between the parties and Village Capital contends that Change was and remains in breach and default of performance of its obligations under the PSA.  Thus, Village Capital is entitled to retain the Holdback Funds.  Section 3.01(d)(iii)(z).

42.     These breaches and failures by Change constitute breaches of its contractual obligations to Village Capital, constitute failures of essential conditions precedent to Village Capital's performance, and excuse and justify Village Capital's non-performance of the obligations that are the subject of Change's Complaint.

43.     Additionally, the PSA calls for Servicing Assets Reimbursement Amounts to be paid by Seller to Purchaser:

- when a loan becomes subject to Loss Mitigation on or before the last day of the sixth full calendar month following the Settlement Date, pursuant to 11.01(c). Village Capital has realized losses of at least $70,621.60 due to Loss Mitigation.

- for VA Mortgage Loan losses triggered by events occurring before the two year anniversary of the Settlement Date pursuant to 11.01(d). Village Capital has realized losses of at least $66,477.18 to date with other loans that were triggered by the terms of the agreement but without final resolutions that have anticipated reimbursable losses of approximately $90,000.

- for Early Payoff loans pursuant to 11.01(a). Village Capital is entitled to the Servicing Assets Reimbursement Amount of at least $55,830.30 to date for Prepaid Mortgage Loans for which it is entitled to reimbursement from Change.

- Early Payment Default / Delinquent Mortgage Loans pursuant to 11.01(b). Village Capital has realized losses and is due Servicing Assets Reimbursement Amounts from Change pursuant to the agreement of at least $485,089.11 for Delinquent Mortgage Loans for which it is entitled to reimbursement from Change.

44.    The PSA states at Section 7.09(d) that the Purchaser, Village Capital, is entitled to all Servicing Fees, Ancillary Income, and other servicer compensation during the Interim Servicing Period less an Interim Servicing Fee payable to the Seller, Change, at $7.50 per loan per full month, prorated.  "The Seller acknowledges and agrees that, from and after the Settlement Date, the Purchaser shall be entitled to receive all Servicing Fees, Ancillary Income, and other compensation payable to the Servicer under the applicable Servicing Agreement notwithstanding that Seller may continue to service the Mortgage Loans or report to the Agency during the Interim Servicing Period. As consideration for the Seller's performance of the Servicing of each Mortgage Loan during the Interim Servicing Period in accordance with this Subsection 7.09, the Seller shall be entitled to receive an interim servicing fee of seven and fifty/100 dollars ($7.50) per Mortgage Loan for each full calendar month of the Interim

20

Servicing Period, prorated for any partial month based upon a 30/360 convention (the 'Interim Servicing Fee')."

45.    On information and belief, Village Capital is owed at least $190,001.24 for Servicing Fees, which amount is net of the $7.50 per loan Interim Servicing Fee.

46.    Change has not provided documentation on Ancillary Fees received by its subservicer during the Interim Servicing Period, which amounts are also due to Village Capital. However, Village Capital was able to identify late fees from transferred servicing records that amount to $4,616.98 and other claims not applied at the loan-level of $4,700 which Village Capital is entitled to receive pursuant to the PSA Section 7.09(d).

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

47.    Village Capital incorporates by this reference all of the foregoing allegations in this Counterclaim as though set forth fully herein.

48.    Village Capital and Change entered into the PSA, which obligated Change to perform numerous actions as a condition to indemnification, repayment, and Village Capital's performance.

49.    Village Capital has fully performed all of its obligations under the PSA save for those obligations it was prevented from performing due to Change's breaches of the agreement.

50.    Village Capital is also entitled to Servicing Assets Reimbursement Amounts and other amounts listed above from Change.  The full extent of the amounts it is owed are continuing and will be determined at the time of trial.

51.    Change breached the PSA with Village Capital in numerous ways as delineated herein.

52.    As a direct and proximate result of Change's breaches of the PSA, Village Capital has been harmed and has suffered damages in an amount to be proven at trial.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO

## SECOND CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

53.   Village Capital incorporates by this reference all of the foregoing allegations in this Counterclaim as though set forth fully herein.

54.   Village Capital and Change entered into the PSA, which obligated Change to perform numerous actions as a condition to indemnification, repayment, and Village Capital's performance.

55.   The PSA contains an implied covenant of good faith and fair dealing.

56.   Change breached the implied covenant of good faith and fair dealing in the parties' agreement by depriving Village Capital of the benefits of the agreement in numerous ways as delineated herein and by failing to pay sums owed to Village Capital as Servicing Assets Reimbursement Amounts and substantial other reimbursements and amounts that Change was contractually obligated to pay under the PSA.

57.   As a direct and proximate result of Change's breaches of the PSA and breach of the implied covenant of good faith and fair dealing to Village Capital, Village Capital has been harmed and has suffered damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Village Capital prays for Judgment as against each Counter-Defendant as follows:

1.   That judgment be rendered in favor of Village Capital;

2.   For damages in an amount to be determined at trial;

3.   For attorney's fees and costs to the extent authorized by contract, including Subsection 11.07 of the PSA and by law;

/ / /

/ / /

/ / /

/ / /

/ / /

4.      For costs of suit incurred herein; and

5.      For such other and further relief as the Court deems just and proper.

DATED this 25th day of September, 2025.

McDONALD CARANO LLP

By:  */s/ Karyna M. Armstrong*
        Karyna M. Armstrong (NSBN 16044)
        2300 West Sahara Avenue, Suite 1200
        Las Vegas, NV  89102
        karmstrong@mcdonaldcarano.com

*Attorneys for Village Capital & Investment LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on the 25th day of September, 2025, a true and correct copy of the foregoing **VILLAGE CAPITAL & INVESTMENT LLC'S ANSWER TO COMPLAINT AND COUNTERCLAIM** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

/s/   *Shilah Bettinger*
An employee of McDonald Carano LLP

24